UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK HAYNES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 08 C 4834 |
| | ) | |
| vs. | ) | Honorable Judge |
| | ) | Suzanne Conlon |
| THOMAS DART et al., | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

NOW COME Defendants Thomas Dart, Sheriff of Cook County, Salvador Godinez, M. Figliulo, Chester Plaxico, John Mueller, David Fagus, John Manos, Victor Thomas, Thomas Snooks and Cook County through their attorney ANITA ALVAREZ, State's Attorney of Cook County, through her assistant, Assistant State's Attorney KEVIN FREY, and pursuant to Federal Rule of Civil Procedure 23, submit the attached response to Plaintiffs' Motion to certify as a Class Action.

Dated June 25, 2009

ANITA ALVAREZ
STATE'S ATTORNEY OF COOK COUNTY

Kevin Frey
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-6189

## INTRODUCTION

The Plaintiffs have brought claims under 42 U.S.C. § 1983, federal law and the Illinois Constitution and now seek certification to proceed as a class action pursuant to Federal Rule of Civil Procedure 23. The Plaintiffs have broken down their Second Amended Complaint into three general categories: 1) Failure to provide adequate mental health treatment; 2) Inhumane Conditions of Confinement; and 3) Interfering with the grievance process and obstructing access to the courts. (Pl. Memo. of Law P. 3-4)[1] The Plaintiffs have brought these claims under various legal theories, but the majority of their claims, Counts 1-6, 9-11, were brought under a deliberate indifference theory. The Plaintiffs have brought discrimination claims under the Americans with Disabilities Act and the Rehabilitation Act. The Plaintiffs have also alleged some state law claims. In the present case, a brief inquiry beyond the Plaintiffs' Second Amended Complaint shows that it fails to satisfy the requirements established by Rule 23.

## LEGAL STANDARDS

A District Court may certify a class if the putative class of plaintiffs satisfies all four requirements of Rule 23(a), numerosity, commonality, typicality and adequacy and one of the three requirements of Rule 23(b). Federal Rule of Civil Procedure Rule 23; *Oshana v. Coca-Cola, Co.,* 472 F.3d 506, 513 (7th Cir. 2006).

## ARGUMENT

**A.    Plaintiffs' have not sufficiently defined the class**

---

[1] It should be noted that the counts in Plaintiffs' Second Amended Complaint that relate to an alleged interference with the grievance procedures, Counts 15 and 16 were dismissed on March 6, 2009. Therefore, any allegations or arguments concerning the grievance procedures are not relevant to the Plaintiffs' Motion to Certify a Class.

The Plaintiffs must show that the class is identifiable as a class. *Oshana v. Coca-Cola, Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Before addressing the requirements under Rule 23(a), there are two implied prerequisites that must be satisfied first. "First, the class must be sufficiently defined so that the class is identifiable. Second, the named representatives must fall within the proposed class." *Guillory v. The American Tobacco Company*, 2001 U.S. Dist. LEXIS 3353 at * 8 (N. D. Ill. March 20, 2001)(Guzman J.) The Plaintiffs have failed to adequately define a class under Rule 23. The proposed class the Plaintiffs seek to represent has been defined as:

> All current, former, and future pretrial detainees housed at CCJ suffering from mental illnesses who have been deprived of necessary mental health treatment after August 25, 2006.

The Plaintiffs are also seeking to represent a subclass of:

> All pretrial detainees suffering from mental illnesses who were housed in the Residential Treatment Unit ("RTU") of Division Eight of the Cook County Jail ("CCJ") and who were transferred to Division Ten or Division Two (or any other Division) when the RTU was closed in 2008.

The Plaintiffs definition of the class of pretrial detainees they wish to represent, those "suffering from mental illnesses," is very vague. "A class must be clearly defined so that a Court can determine whether a particular individual is a member of the proposed class." *Guillory*, 2001 U.S. Dist. LEXIS 3353 at * 8. "However, the description must not be so broad as to include individuals who are without standing to maintain the action on their own behalf." *Id*. at *9. "Plaintiffs must propose definitions containing definite and objective criteria." *Butler v. Illinois Bell Telephone Co.*, 2008 U.S. Dist. LEXIS 11901 at * 12 (N.D. Ill. February 14, 2008)(Hart, J.).

Because mental illness covers a wide range of definitions, ailments, maladies, and treatments, it is a very individualized diagnosis. There is a "difficulty of identifying class members whose membership in the class depends on each individual's state of mind." *Simer v. Rios*, 661 F.2d

655, 669 (7th Cir. 1981). The Plaintiffs are not seeking to certify a class that is definite such as a class of people who need crutches or a class of people who were charged an improper bank fee. Plaintiffs' class definition raises more questions than it answers; i.e. whether this definition includes detainees who suffer from substance dependency, mild depression, anxiety disorders or full blown dementia, and which doctor's diagnosis is reliable. Moreover, the Plaintiffs definition fails to take into account pretrial detainees who may be suffering from a mental illness that has yet to manifest itself.

In addition, Plaintiffs' want future pretrial detainees to be part of the class and have stated that the class could number into the thousands. (Plaintiff's Memorandum of Law, "Pl. Memo. of Law", P. 5) In *Guillory*, the plaintiffs proposed a class that included smokers who started smoking as a minor. 2001 U.S. Dist. LEXIS 3353 at * 9. Judge Guzman noted that there were problems with the definition and noted that the "potential for a massive quantity of future members in this class makes it unmanageable." *Id*. This is applicable to the present case. Individuals are entering the CCJ on a daily basis and as long as this case is going on, the class will continue to grow. Plaintiff Fred Rogers verified as much in his deposition. (Deposition of Fred Rogers, Exhibit A, 155: 19-24) Because the Plaintiffs' class definition is not clearly defined, their Motion to Certify a Class should be denied.

Plaintiffs' definition also fails because they have picked the date of August 20, 2006 as the cutoff. At the earliest the Plaintiffs were moved from the RTU to Division 10 on May 20, 2008. (Pl. Sec. Amend. Comp. ¶ 32) Each Plaintiff testified that the mental health treatment they received at the RTU was sufficient. (Exhibit A, 215: 15-21; Deposition of Charles Hill, Exhibit B, P. 184: 5-8; Deposition of Derrick Haynes, Exhibit C, 64:8-18, 70:22-24, 82:7-11, 96:10-13; Deposition of Thomas Perconti, Exhibit D, 95:10-12, 106:1-13, 173:12-15, 178:3-17) Moreover, Plaintiffs Haynes

and Hill each stated that if they had not been moved from the RTU, they would not have filed a lawsuit. (Exhibit B, 177: 13-16; Exhibit C, 120: 15-21) Each Plaintiff also indicated that they did not have any problems with the conditions of confinement at the RTU. (Exhibit A, 82: 5-7, 148: 3-21, 149: 4-5, 156: 18-21, 159: 9-15, 161:1-4, 19-22; Exhibit B, 205: 8-10, 206: 5-11, 19-21; Exhibit C, 131:19-22, 133:1-3, 15-23, 181: 11-22; Exhibit D, 97: 4-20, 166:17-24, 167:1-2, 169: 16-19, 172: 13-15) Therefore, the Plaintiffs' definition of the timeframe for the class is inadequate and overbroad.

B.　**The Plaintiffs Have Failed to Satisfy the Requirements of Rule 23(a)**

Rule 23 does not authorize a preliminary hearing on the merits as part of a determination whether a suit may be maintained as a class action; but rather inquiries whether the elements of Rule 23 are met. However, the Seventh Circuit has established that the district court must pierce the pleadings to determine if a legitimate cause of action exists as part of the Rule 23 process. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-676 (7th Cir. 2001)

**(1) Numerosity**

A "party supporting the class cannot rely on 'mere speculation' or 'conclusory allegations' as to the size of the putative class to prove that joinder is impracticable for numerosity purposes." *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008). All the Plaintiffs have offered to demonstrate numerosity in their memorandum of law is a conclusory statement that "[t]he RTU subclass contains at least 200 to 300 members, and the class as a whole will number into the thousands." (Pl. Memo of Law P. 5) In ¶¶ 97-99 of their Second Amended Complaint, Plaintiffs fail to set forth any kind of evidence that the Plaintiffs satisfy the numerosity requirement under Rule 23(a).

**(2) Commonality and (3) Typicality**

"Commonality exists if the class members share common questions of law or fact. The requirement is usually satisfied when a common nucleus of operative facts unites a class." *Block v. Abbot Laboratories*, 2002 U.S. Dist. LEXIS 5453 at *8 (N. D. Ill. March 29, 2002)(Anderson, J.); *citing Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "The typicality requirement of Rule 23(a)(3) is closely related to the commonality requirement of Rule 23(a)(2)." *Block*, 2002 U.S. DIST LEXIS 5453 at *8-9; *citing Ruiz v. Stewart Assoc. Inc.*, 171 F.R.D. 238, 242 (N.D. Ill. March 28, 1997)(Keys, J.) However, "'if proof of [plaintiff's] claims would not necessarily prove all of the proposed class members' claims,' she fails the typicality prong of Rule 23(a)." *Block*, 2002 U.S. Dist. LEXIS 5453 at *9; *citing Williams v. Ford Motor Co.*, 192 F.R.D. 580, 586 (N.D. Ill. 2000).

In this case, the Plaintiffs are specifically seeking monetary damages in the form of compensatory and punitive damages, in addition to injunctive and declaratory relief. "The commonality and typicality requirements are also more easily met when the class members only seek injunctive relief, rather than monetary damages. In class actions where the relief sought is chiefly monetary, resolution of the class claims will depend "on the intangible, subjective differences of each class member's circumstances," and "entail complex individualized determinations." *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir. 1998).

When the Plaintiffs filed their complaint, they were pretrial detainees at the CCJ, therefore their claims of deliberate indifference to their mental health needs and conditions of confinement are to be analyzed under the due process clause of the Fourteenth Amendment, which forbids punishment of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) The crucial inquiry in determining if a Fourteenth Amendment violation has occurred is whether the defendants' actions toward the plaintiffs constitutes punishment. *Potter v. Clark*, 497 F. 2d 1206, 1208 (7th Cir. 1974). As the Seventh Circuit held in *Salazar v. City of Chicago*, 940 F.2d 233, 239 (7th Cir. 1991),

"Punishment, in its normal meaning, implies intent; it is 'a deliberate act intended to chastise or deter.' . . . It follows that an act done with any state of mind less than intent, no matter how "gross" that state of mind, is not punishment." In the present case, the requisite analysis will require individualized analysis of deliberate indifference.

The question of whether Defendants' mental health treatment policies amounted to deliberate indifference is a fact bound inquiry that requires the Plaintiffs to show that they had an 1) "objectively" serious medical need, and that 2) Defendants acted with a "sufficiently culpable state of mind" in maintaining a policy that, on its face, intentionally interfered with the detainee's mental health needs. *Smith v. Sheriff of Cook County*, 2008 U.S. Dist. LEXIS 36884 at *5; *citing Johnson v. Doughty*, 433 F. 3d 1001 (7th Cir. 2006).

In order for the Plaintiffs to prove their deliberate indifference claims, they would first have to show that they had a condition that required mental health treatment; second, that they did not receive adequate mental health treatment; third that each one suffered significant injury or harm; and fourth that the injury or harm was causally related to the inadequate care. *Smith*, 2008 U.S. Dist. LEXIS 36884 at *5. First it would have to be established that each class member has a seriously objective condition. As was discussed *supra*, the Plaintiffs have failed to identify in their class definition what a mental illness is and who would qualify a detainee's ailments as a mental illness.

The Plaintiffs have different diagnoses and receive different medications. (Pl. Sec. Am. Comp. ¶ 75-78; Exhibit A, 13: 23-24; Exhibit B, 16: 22-23; Exhibit C, 8: 12-24, 9: 1-3; Exhibit D, 8:11-17) Moreover, there are changes made to an individual's treatment plan throughout the course of an individual's treatment. (Exhibit D, 29: 1-24; 30: 1-9; 44: 19-24; 45: 1-2) It is reasonable to acknowledge that each of the proposed class members will have different diagnoses, prognoses,

6

varying treatment plans rates of recovery. These are but a few of the issues that would have to be investigated for each individual class member. All of these issues do not even take into account a detainee's reaction to services and medications or lack thereof.

The Plaintiffs argue that because they were exposed to the same standardized conduct and uniform policies and practices, they have met the commonality and typicality requirements of Rule 23. (Pl. Memo. of Law P. 6) However, the Plaintiffs have ignored that in light of the necessary, but highly individualized inquiries, each plaintiff's case would necessarily be different and no case would be typical. The Seventh Circuit has made it clear that courts "must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs." *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997).

The issues of causation and damages will likely encompass the vast majority of the time and resources necessary to judge the plaintiffs' claims. Cases involving personal injury and inadequate medical or mental health care are particularly fact specific. Each of the Plaintiffs would have to provide some form of expert testimony as to their mental illness, causation and the injury suffered from the alleged constitutional deprivations. This same individualized analysis will be necessary for the allegations of discrimination and state law claims made under counts 7, 8, 12, 13, 14 and 19.

The Plaintiffs also cannot prove that the conditions of confinement that their proposed class or subclass was allegedly exposed to are common and or typical. Again, there are going to have to be highly individualized assessments. For example, Fred Rogers alleges he has a chronic back condition. (Pl. Sec. Amend. Comp. ¶ 61) He claims that as a result of being housed in Division 10, his back condition has worsened. (Pl. Sec. Amend. Comp. ¶ 61) There will have to be an individual assessment and expert testimony concerning whether his back condition was aggravated by being housed in Division 10. The Second Amended Complaint only makes reference to the conditions of

Division 10, however, there are pre-trail detainees diagnosed with a mental illness who are housed in Division 2 which is a dormitory setting and thus, those detainees were not exposed to the conditions in Division 10. (Exhibit E, P. 2-3; Exhibit F, P. 56)

These same arguments apply to the Plaintiffs' cause of action concerning their access to the courts. Inmates have a constitutional right of access to the courts, which in turn requires prisons to provide inmates with reasonable access to law libraries and persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, in order to state a "law library" claim under Section 1983, an inmate must show some injury resulting from denial of access. *Stewart v. McGinnis*, 800 F. Supp. 604, 618 (N.D. Ill. 1992), *aff'd* 5 F.3d 1031 (7th Cir. 1993). The *Stewart* court stated, "to state a claim [a plaintiff] must present evidence of court dates missed, inability to make timely filings, denial of legal assistance to which he was entitled or loss of a case that he could otherwise have won." *Id*., at 618. Thomas Perconti admits that not every criminal case is the same and the adequacy of representation is different. (Exhibit D, 211: 22-24; 212: 1-8) It makes sense that a person charged with capital murder, like Charles Hill, will have a more difficult case than a detainee who is charged with Possession of a Controlled Substance. So again, individual determinations would have to be made as to the complexity of the criminal case and the harm that was caused by the alleged denial of access to the courts.

The Plaintiffs assert in their typicality argument that they are not subject to any unique defenses. (Pl. Memo of Law, P. 6) However, the state law claims, counts 9, 10, 11, 14, 8 and 19, are subject to the immunities under the Illinois Local Governmental and Governmental Employees Tort Immunity Act. Specifically, 745 ILCS 10/4-103 states "[n]either a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities within."

The Defendants qualify as either a public employee or as a public entity because they are defined as such under the Tort Immunity Act. (See 745 ILCS 10/1-101, et. seq.,) Therefore, Plaintiffs state law claims are subject to a unique defense. Thus, based on the above arguments, the Plaintiffs' have failed to establish commonality and typicality.

### (4) Adequacy

The Plaintiffs argue that they are adequate because they will protect the interests of all class members. However, because the Plaintiffs are seeking compensatory and punitive damages they have not demonstrated that when push comes to shove that they will do what is right for the class as opposed to making sure they maximize any monetary award for themselves. The Supreme Court held in *Amchem v. Windsor*, 521 U.S. 591, 616-17 (1997), where the Court discussed how individual Plaintiffs may have an individual stake in when to settle a case or how to prosecute a case that is different from the class as a whole.

**C.     The Plaintiffs Have Failed to Satisfy the Requirements of Rule 23 (b)(1) and (2)**

Plaintiffs have not satisfied the requirements of 23(b)(1) and (2). The Plaintiffs argue that "[s]eparate injunctive and declaratory actions maintained by individual members of the class would, therefore, create a risk of inconsistent or varying adjudications with respect to individual members of the class, thereby, establishing incompatible standards of conduct for Defendants." (Pl. Memo. of Law. P. 13) However, if a Rule 23(b)(1) or (2) class is granted it would create the very situation which the Plaintiffs argue would occur without a class. All three categories the Plaintiffs seek injunctive and declaratory relief for, inadequate mental health treatment, inhumane conditions of confinement and obstructing access to the courts are currently monitored by the Federal Courts via the *Harrington and Duran* consent decree which are dass actions that the Plaintiffs are members of and which are still in full effect. (*See* Exhibits E-J)

Counts 1, 3, 7, 9, 10, 12, 13, 14 and 19 of Plaintiffs' Second Amended Complaint seek equitable relief due to the Defendants' allegedly failing to provide the Plaintiffs with adequate mental health treatment. These claims are covered by the *Harrington* Consent Decree. The *Harrington* consent decree includes all present and future pre-trial detainees who require mental health treatment at the CCJ. (Exhibit G, P. 1) The Plaintiffs clearly fall within in the Harrington Consent Decree as they are pre-trial detainees who require mental health treatment. (Pl. Sec. Am. Comp. ¶ 10-13, 26) The goals of the *Harrington* Consent Decree include providing adequate mental health treatment to pre-trial detainees. *Bolden v. Stronger*, 306 F. Supp 2d 792, 794 (N.D. Ill. March 2, 2004)(Bucklo J.).

The *Harrington* Consent Decree specifically addresses non-hospital residential mental health treatment units and space for mental health treatment programs, like the RTU, which covers Counts 3, 10, 12 and 13 of Plaintiffs' Second Amended Complaint. (Exhibit G, P. 6-7) This consent decree also addresses the actual mental health treatment of the detainees which covers Counts 1 and 9 of Plaintiff' Second Amended Complaint. (Exhibit G, P. 4-5, 13) Finally, Count 7 of Plaintiffs' Second Amended Complaint seeks equitable relief against Thomas Dart, Salvador Godinez, David Fagus and Cook County for a failure to train and supervise their employees "as to how to properly respond to interact with detainees with serious mental health needs." (Pl. Am. Comp. ¶147) Once again the *Harrington* Consent Decree applies as it states "[p]resent security staff member will receive . . . special training in the identification, evaluation and custodial care of persons in need of mental health treatment." (Exhibit G, P. 13, ¶7)

The *Duran* Court has also monitored many of the issues set forth as to the mental health treatment of the Plaintiffs. Specifically, the issue of the Plaintiffs move from the RTU to Division 10 was addressed by the *Duran* Court. On May 27, 2008, counsel for the certified class of pre-trial

10

detainees, which included the Plaintiffs and their proposed class, filed an Emergency Motion requesting that a hearing be held concerning the movement of the pre-trial detainees from the RTU to Division 10. (Exhibit E) The Honorable Judge Virginia Kendall held multiple hearings concerning the move and the requirements to house the mental health detainees in Division 10. (Exhibits I and J)

Counts 5 and 11 allege that the Plaintiffs were not given adequate cleaning or hygiene supplies and the environmental conditions are inhumane. (Pl. Sec. Am. Comp. ¶ 142-152, 173-185) Paragraph 5 of the Duran Consent Decree states the pre-trial detainees "shall be provided with those items necessary for maintenance of personal hygiene, including soap, toothpaste, towel, clothing, bedding, etc." and that these items are to be replenished and cleaned as necessary. (Exhibit H, ¶ 5) Paragraph 10 of the decree addresses the environmental health of pre-trial detainees and states "[a]ll areas of the Cook County Department of Corrections shall be properly and regularly inspected, cleaned and sanitized as necessary." (Exhibit H, ¶ 10)

Further proof that the *Duran Consent Decree* controls the Plaintiffs' claims is found in reports submitted by the *Duran* Court Monitor, the John Howard Association.[2] For example, in the report dated August 14, 2008, the environmental conditions of all of the divisions, including Divisions 2 and 10 are discussed. (Exhibit F, P. 55-62) This report also specifically addresses the allegations in Plaintiffs' Second Amended Complaint regarding sanitation and maintenance in Divisions 2 and 10. (Exhibit F, P. 55-64) The Plaintiffs allege that they did not receive clean towels, undergarments or sheets. (Pl. Sec. Am. Comp. ¶ 63) The Report addresses these allegations relating to the Plaintiffs receiving such items as toothpaste, soap, towels, and linens. (Exhibit F, P. 65-67)

---

[2] The Defendants do not address the veracity of the contents of the Report, but refer to the report to demonstrate that the Plaintiffs claims are addressed by the *Duran* Court.

In Counts 17 and 18, the Plaintiffs allege that they have been denied access to the courts by only being given one hour of law library time. Access to the law library is covered under Paragraph 6(a) of the consent decree where it states each pre-trial detainee is allowed at least one hour a week of law library time which can be increased if they are litigating their own cases. (Exhibit H, ¶ 6(a)) Once again this issue is addressed in the John Howard Association's report dated August 14, 2008. (Exhibit G, P. 83-86) The evidence is clear that the Plaintiffs already are members of class actions that address the allegations set forth in their Second Amended Complaint.

Plaintiff's Motion to certify a class under Rule 23 (b)(1) and (2) based on conditions of confinement and access to the courts also fails because of how the Plaintiffs define their class and subclass. The Plaintiffs only seek to represent mental health detainees, but there are more than just mental health detainees housed in Division 10. There are general population detainees, detainees with medical issues and mental health detainees. (Pl. Memo of Law, Exhibit 3) In addition not all of the RTU mental health detainees went to Division 10. There were also detainees with mental health diagnoses that went to Division 2, which is a dormitory setting, just like the RTU. (Exhibit E, P. 2-3; Exhibit F, P. 56)

If a (b)(1) or (2) class is created just for mental health detainees a situation would be would created where there would be pre-trial detainees in Division 10 who would not be covered and would have to file their own lawsuit to garner the same relief sought by the Plaintiffs in this case. In addition, because there are members of the Plaintiff's class who were moved to Division 2, there would be pre-trial detainees in Division 2 who would not be covered and would have to file their own lawsuit to garner the same relief sought by the Plaintiffs in this case. Moreover, all of the allegations as to the conditions of confinement are in reference to Division 10. (*See Generally* Plaintiff's Second Amended Complaint) Because Division 2 is a dormitory setting, like the RTU,

and the Plaintiffs have made no allegations as to the conditions of confinement at the RTU, it is clear that a Rule 23(b)(1) or (2) class would be inappropriate. Therefore, as demonstrated above, Plaintiffs' Motion to certify a class pursuant to Rule 23(b)(1) or (2) should be denied.

### D.     The Plaintiffs Have Failed to Satisfy the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), Plaintiff seeking class certification must prove that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and that a class action is superior to other forms of adjudication. FRCP 23(b)(3).

**(1) Predominance and (2) Superiority**

Assuming *arguendo* that Plaintiffs has met the requirements of Rule 23(a), they fail to satisfy the predominance and superiority requirements of Rule 23 (b)(3). The Supreme Court has taught that "even if Rule 23(a)'s commonality requirement may be satisfied . . .the predominance criterion [of Rule 23(b)(3)] is far more demanding." *Amchem,* 521 U.S. at 623-24 (1997). In addition, the predominance requirement of Rule 23(b)(3) does not allow plaintiffs to identify a "single common issue' while disregarding the individualized issues that will dominate the resolution of the class members claims. *Hyderi v. Wash. Mutual Bank, FA*, 235 F.R.D. 390, 398; 2006 U.S. Dist LEXIS 13781 at *22-23 (N.D. Ill. 2006) (J. Filip); *cited by Smith*, 2008 U.S. Dist. LEXIS 60248 at *6. "Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper." *Ramirez* 250 F.R.D. 366 at *19. "The standard is met when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis, obviating the need to examine each class member's individual position." *Id*.

Individual, not common, issues predominate the present case in terms of the mental health treatment given to the Plaintiffs. In the present case, as in *Smith*, this Court will have to examine the

13

condition of each detainee to determine if mental health treatment was required; second, address whether each detainee did not receive adequate mental health treatment; third determine if each pretrial detainee suffered a significant injury or harm due to an alleged lack of adequate care; and fourth that the injury or harm was causally related to the inadequate care. *Smith*, 2008 U.S. Dist. LEXIS 36884 at *5. Each individual may have a different mental illness. The treatment given to each individual is different. A determination has to be made as to whether any physical injuries were suffered as a result of any policy, custom or practice. Some detainees were treated with just medications and some were treated with medications and services.

The Plaintiffs argue that there are numerous common issues among the Plaintiffs. Moreover they argue that, because the claims of deliberate indifference will focus on the Defendants' actions and not that of the class members, the claims of the Plaintiffs will be established by generalized evidence. (Pl. Memo. of Law P. 10-11) As has been demonstrated *supra*, this could not be further from the truth. Individual questions of fact will predominate over any common question of law or fact that faces the proposed class. In addition, none of the cases cited by the Plaintiff involve certifying a class for damages based on claims of deliberate indifference. In addition, the arguments made *supra* about the individualized assessments as it relates to the allegations of inhumane conditions of confinement and the denial of access to the courts, apply to the predominance requirement as well.

The Plaintiffs' arguments concerning superiority fail as well. The Plaintiff cites to the factors courts consider in determining whether the superiority requirement has been met. (Pl. Memo. of Law P. 12) The Plaintiffs argue that one of the factors, interest of members of the class in individually controlling the prosecution or defense of separate actions, because few or none of the proposed class members could afford their own attorneys or may not be aware of their

constitutional rights. (Pl. Memo. of Law P. 12) The Supreme Court held that "the Policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products*, 521 U.S. at 617 (1997), *quoting Mace v. Van Ru Credit Corp.,* 109 F. 3d 338, 344 (7th Cir. 1997).

The Plaintiffs in this action are asking for compensatory and punitive damages. (*See Generally* Plaintiff's Second Amended Class Action Complaint) When one considers the individualized nature of each Plaintiff's claims along with the fact that the Plaintiffs' are seeking compensatory and punitive damages, there is a concern that one of the Plaintiff's will want to control his own case at the possible detriment of that of the class as a whole.

The Plaintiffs also argue that the "Defendants have not demonstrated that any other cases have been filed or are pending that raise the identical claims based upon the identical facts presented in this action." (Pl. Memo. of Law P. 12) This statement by the Plaintiffs could not be further from the truth. As is addressed *supra*, many of the issues raised by the Plaintiffs in their Second Amended Class Action Complaint are covered by the *Duran* and *Harrington* Consent decrees. There is no need to go into the exhaustive details once again, but it is clear that these identical issues have been raised in other class actions which the Plaintiffs are a part of.

The Plaintiffs contend "that it is unlikely any significant manageability issues will be presented in this case given the high degree of predominating common issues as discussed above." (Pl. Memo. of Law, P. 12-13) As addressed in detail *supra*, Plaintiffs yet again ignore the fact that their claims involve highly individualized assessments. Thus, the Plaintiffs have failed to satisfy the superiority prong of Rule 23(b)(2).

## **CONCLUSION**

WHEREFORE, the Defendants Thomas Dart, Sheriff of Cook County, Salvador Godinez, M. Figliulo, Chester Plaxico, John Mueller, David Fagus, John Manos, Victor Thomas, Thomas Snooks and Cook County, respectfully requests that this Honorable Court deny Plaintiff's Motion for Class Certification and for Appointment of Counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure and such further relief that this Court deems necessary.

Respectfully Submitted,

ANITA ALVAREZ
STATE'S ATTORNEY OF COOK COUNTY

 /s/ Kevin Frey
Kevin Frey
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, IL  60602
(312) 603-6189