# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DERRICK HAYNES, THOMAS M. PERCONTI, CHARLES B. HILL, and FRED ROGERS, on behalf of themselves and a class of others similarly situated | ) ) ) ) | Case No. 08-4834 |
| Plaintiffs, | ) ) | Honorable Suzanne B. Conlon |
| vs. | ) ) | Magistrate Judge Maria Valdez |
| THOMAS DART, et al., | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Dated: July 9, 2009

Mark A. Flessner (ARDC #6194599)
Anthony T. Eliseuson (ARDC #6277427)
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
mflessner@sonnenschein.com
aeliseuson@sonnenschein.com
*Appointed attorneys for Plaintiffs Derrick Haynes, Thomas M. Perconti, Charles B. Hill, and Fred Rogers*

# INTRODUCTION

Defendants' Response to Plaintiffs' Motion for Class Certification ("Defendants' Response" or "Defs.' Resp.") fails to raise any issue that precludes the certification of the proposed class. In fact, Defendants' Response primarily argues (and re-argues) merits issues that are not relevant to the question of class certification and that have already been rejected by this Court when this Court correctly denied the Plaintiffs' Motion to Dismiss. As demonstrated by Plaintiffs' Opening Memorandum of Law ("Pls.' Op. Mem.") and this Reply, Plaintiffs have demonstrated that all the criteria of Rule 23(a) and (b) are met, and accordingly, respectfully request that the class be certified.

# ARGUMENT

**I.     Plaintiffs' Class is Identifiable and Sufficiently Defined.**

    **A.     Defendants have already represented that claims like those alleged here are properly treated as a class action.**

The Defendants argue that the proposed class is not identifiable because the term "mental illness" is overly broad and vague and requires "a very individualized diagnosis." (Defs.' Resp. at 2.) This argument is surprising given that the Defendants have repeatedly told this Court that the *Harrington* decree and *Duran* decree have already addressed the injunctive relief sought by the putative class.[1] (Defs.' Mem in Support of Mot. to Dismiss at 5-6 (arguing that the *Harrington* class includes "pre-trial detainees who *require mental health treatment* at the Cook County Jail"); Defs.' Resp. at 9-10 (same, and stating that the Plaintiffs are members of the *Harrington* class, because they are mentally ill pretrial detainees).)

---

[1] As discussed below, and in the Plaintiffs' Response to Defendants' Motion to Dismiss, neither the *Harrington* nor *Duran* consent decree bars the relief sought by the class here. But the fact that Defendants have argued that those decrees do act as a bar undermines the arguments made by Defendants in opposing certification of this class, and shows that class treatment is appropriate.

In fact, given that the Defendants have made these arguments and affirmatively claimed that a class already exists that overlaps with the proposed class here, Defendants should be estopped from raising this argument.[2]  This is especially so given that the *Harrington* decree imposes a requirement that all detainees entering the Cook County Jail go through a screening to determine whether they are mentally ill or not.  (Ex. G to Defs.' Resp. at 1.)  The results of this screening standing alone would provide a sufficiently definite class scope.

In any event, this argument fails for a myriad of additional reasons.  First, beyond the fact that the *Harrington* court and the Defendants were able to determine who fell into a class of "mentally ill" detainees in the 1970's, Defendants' argument is further undermined by their own internal records.  The Residential Treatment Unit ("RTU") housed "mentally ill" detainees, who were then transferred to other divisions and tiers specifically set up as "psych" units to house such mentally ill detainees.  (Pls.' Op. Mem. at Exhibit 2 (various mental heath related policies) and Exhibit 3 (stating Division 10, Tiers 2-B, 2-C, and 2-D are "Psych Tiers.").)  Clearly the Defendants are able to determine which detainees are "mentally ill" in order to carry out these segregation policies.

Second, as alleged in Plaintiffs' Second Amended Complaint, according to the website of the Isaac Ray Center, a nonprofit organization that provides psychiatric and psychological services to the CCJ through Cermak, approximately 10% of CCJ's inmates are diagnosed with mental illnesses that require treatment.  (S.A.C. at ¶ 27 (citation omitted).)  Based upon the CCJ

---

[2] Indeed, it would be appropriate for this Court to find that the Defendants are estopped from challenging class certification on any basis given that they have already represented that class treatment of these types of claims is appropriate with regard to the *Duran* and *Harrington* cases in the 1970s.  *Cf. Carnegie v. Household International, Inc.*, 376 F.3d 656 (7th Cir. 2004) (discussing the doctrine of judicial estoppel in the context of class certification issues and affirming class certification where defendants had previously consented to certification for settlement purposes only to reverse course when they had an "opportunistic change of heart").

2

population statistics, this means that approximately 1000 detainees living in the CCJ every day are classified as mentally ill by the Defendants.

Finally, other public records and data can be used to determine the contours of the class. For example, Defendants attached a report from the John Howard Association as Exhibit F. This report contains detailed data regarding the number of detainees at CCJ. Similarly the Department of Justice issued a report last year, attached to the Second Amended Complaint as Exhibit A, which discusses the inadequate mental health care at the CCJ on pages 59 to 70. These organizations may have their own analysis of the class membership that could be used for purposes of class notice.

### B. Case law demonstrates that a class of "mentally ill" individuals is sufficiently defined and ascertainable.

An identifiable class exists when it is feasible for the court to determine whether a particular individual is or is not a member of the proposed class. *See Elliott v. ITT Corp.*, 150 F.R.D. 569, 573-74 (N.D. Ill. 1992) ("An identifiable class exists if its members can be ascertained by objective criteria.") As the Defendants point out, "mental illness" is a health condition that can be determined based upon an objective set medical criteria. (Defs.' Resp. at 2.) Because class members can be identified by an objective set of criteria, the class is sufficiently defined.

Moreover, the class is limited to inmates "who have been deprived of necessary mental health treatment." The fact that the class members were all harmed by the Defendants' same wrongful actions is also a sufficiently objective criterion for proper class definition. *See, e.g., Lewis v. Tully*, 96 F.R.D. 370, 376 (N.D. Ill. 1982) (finding that class is sufficiently ascertainable if it is defined by contested practices of defendant). Here, the Defendants' wrongful conduct will provide a sufficient basis for this Court to ultimately determine who is a class member and who is not. For this reason (among others), Plaintiffs' class definition here stands in stark contrast to

the definition contained in the cases cited by the Defendants. For example, Defendants cite to *Oshana* in which the Seventh Circuit found that a fraud class comprised of "all purchasers" of Diet Coke was overly inclusive and insufficiently defined because it failed to limit the class to those who were actually harmed. (Defs.' Resp. at 2 (citing *Oshana v. Coca-Cola, Inc.*, 472 F.3d 506, 513 (7th Cir. 2006).) Here, the class is only composed of those detainees who: (1) have a mental illness; and (2) were harmed by the Defendants.

Finally, other courts have certified classes comprised of individuals with mental illness. *See E. v. Lane*, 530 F. Supp. 930 (N.D. Ill. 1981) (certifying a class consisting of "all persons who are or will be incarcerated at Stateville [Correctional Center] and who need or will need mental health services"); *see also Coleman v. Wilson*, 912 F. Supp. 1282, 1293-1302 (E.D. Cal. 1995) (certifying class consisting of "all inmates with serious mental disorders who are now or who will in the future be confined within the California Department of Corrections" because "the phrase 'serious mental disorder' has a readily available definition in a medical context, in a legal context, and, as a result of at least two major studies conducted by or for the CDC, in a penological context"); *Langley v. Coughlin*, 715 F. Supp. 522 (S.D.N.Y. 1989) (certifying a class of mentally disturbed inmates in lawsuit alleging corrections officials denied adequate medical care and adequate conditions of confinement); *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993) (certifying class action on behalf of mentally ill inmates transferred from various prisons to state mental health units).

**C. The class is sufficiently definite, and can be specifically ascertained at any time.**

Defendants also argue the class is indefinite because its size will continue to change by the influx of new prisoners and by detainees whose mental illnesses have not yet manifested. (Defs.' Resp. at 3.) But contrary to the Defendants' position, the class definition is not overly vague simply because the class may continue to grow. *See Johnson v. Brelje*, 482 F. Supp. 121,

123 (N.D. Ill. 1979) (noting that class membership may change over time as long as there is an administratively feasible method of identifying the class members at any particular time). Here, at any point in time during these proceedings, the identify of the class members could be ascertained.

Moreover, this class is seeking both injunctive relief and damages, and the purpose of including future members is to ensure permanent injunctive relief so that the Defendants cannot go back to their unconstitutional practices as soon as everyone currently housed at the CCJ has left the system, which would likely occur within a two to three year period of any judgment. For damages purposes, there will ultimately be a claims period should this litigation result in a judgment in favor of the class or in a settlement. As the Manual for Complex Litigation (Fourth) explains, the inclusion of future claimants for such purposes is often done so that claims can be made by individuals who were injured by the defendants even though such injuries were not known at the time the class was certified. Manual for Complex Litigation (Fourth) at §21.222 ("A class may be defined to include individuals who may not become part of the class until later," so long as "membership in a rule 23(b)(3) class [is] ascertainable when the court enters judgment."). Here, when judgment or settlement occurs, the membership of the class for damages purposes can be ascertained and set.[3]

## II.     Plaintiffs Have Established All Rule 23(a) Factors.

### A.     Numerosity is met as demonstrated by Defendants' own records.

As discussed above, the Defendants' own records shows that there are approximately 1000 detainees at the CCJ every day who are classified as mentally ill, and that there are several

---

[3] Defendants also argue that the proposed class definition fails because the timeframe is too broad. (Defs.' Resp. at 3-4.) This argument is extraneous to the issue of class certification because it relates to the merits of the underlying claims. The Exhibits attached to Plaintiffs' Opening Memorandum demonstrate that many of the policies being challenged as unconstitutional in this litigation were in effect during the entire alleged class period.

tiers in Division 10 alone that are classified as "Psych" tiers. There are approximately 45 to 55 detainees in each tier, which means approximately 150 "mentally ill" detainees are being housed on a daily basis in Division 10 alone. These facts are more than sufficient to satisfy Plaintiffs' burden of establishing numerosity.

In fact, numerosity is met even as to the RTU Subclass, because Plaintiffs alleged that they were among 300 to 400 detainees that were housed in the RTU and then moved to new divisions in or about May of 2007. (Am. Compl. ¶¶ 106, 107.) Plaintiffs' first hand knowledge regarding the RTU and the number of detainees therein certainly provides sufficient factual basis to support a finding of numerosity, and Defendants' records further support those allegations.

### B. Plaintiffs' claims are common and typical and do not involve individualized inquiries of a type that would preclude class certification.

Defendants argue that the class's claims require individualized inquiries to establish that each class member had an objectively serious medical need, and that Defendants acted with a sufficiently culpable state of mind in maintaining a policy that intentionally interfered with that mental health need. (Defs.' Resp. at 6.) But as pointed out above, and in Plaintiffs' Opening Memorandum, Defendants' themselves have diagnosed the class members as having serious mental health needs, which will be bolstered by expert evidence at trial. Thus, the first factor will not require individualized inquiries. Second, the Defendants' wrongful conduct will be established from a body of generalized proof, namely from the evidence of the standardized conduct and uniform policies at the facility (the same conduct and policies that led the Department of Justice to find pervasive and systematic constitutional deprivations). (Opening Mem. at 6).[4]

---

[4] The question of individualized inquiries will be discussed further in the predominance section, *infra*.

Furthermore, and contrary to the Defendants' position, the fact that some degree of individualized inquiry may be required to resolve the amount of harm suffered as a result of Defendants' wrongful conduct does not preclude a finding of commonality. *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) (holding that questions of individualized damages does not preclude a Rule 23(b)(3) class that has asserted claims based upon Section 1983 liability) (citations omitted); *see also Phipps v. Sheriff of Cook County*, 249 F.R.D. 298, 302 (N. D. Ill. 2008) (certifying Rule 23(b)(3) damages class of paraplegic or partially paralyzed pretrial detainees who asserted claims, including Section 1983 claims, based upon the jail's alleged discrimination against them by reason of their handicap).

As the *Phipps* court explained, variations in the actual treatment of certain detainees does not eliminate the common nucleus of facts, even if the plaintiffs experienced the wrongful conduct in different ways and with varying impacts. *Phipps*, 249 F.R.D. at 301 (citations and quotations omitted). Just as in *Phipps* (and the legion of other cases cited in the Opening Memorandum), the fact that there may be some variation in the degree to which Defendants' violated each class member's constitutional rights and to the harm caused by such deprivations does not undermine the commonality or typicality requirements of Rule 23(a).

**C.     Plaintiffs are not subject to unique defenses, and in fact the defense raised by the Defendants further demonstrates why a class action is both superior and proper.**

Defendants also assert that because the Defendants may be protected from the state law claims under the Tort Immunity Act, the Plaintiffs' claims are subject to a unique defense which defeats typicality. (Defs.' Resp. at 8-9.) Defendants appear to misunderstand the doctrine of unique defense, which defeats typicality if there is a defense against a claim *unique to the class representative*. Here, this defense would apply equally to all class members, which further

demonstrates why a class action is superior as it will allow this Court to address this defense efficiently and uniformly for all class members.

### D. Named Plaintiffs are adequate.

Defendants argue that the Named Plaintiffs are not adequate because "they have not demonstrated that when push comes to shove that they will do what is right for the class as opposed to making sure they maximize any monetary award for themselves." (Defs.' Resp. at 9.) To be adequate, the named plaintiffs must be able to protect the interest of all class members. *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 372 (N.D. Ill. 2008) (citation omitted). Contrary to the Defendants' mere speculation, the fact that the Named Plaintiffs may be entitled to monetary damages does not create a conflict between those Plaintiffs and others who would be limited to injunctive relief. *Hispanics United of DuPage County v. Village of Addison*, 160 F.R.D. 681, 689-90 (N.D. Ill. 1995).

For a conflict of interest to render a class representative inadequate, the conflict must relate to the very subject matter of the litigation. *See Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986) (noting certification should not be denied unless conflict of interest goes to subject matter of litigation). As shown in the Plaintiffs' Opening Memorandum, the Named Plaintiffs are adequate because they are very actively engaged in this litigation and share a common interest with all class members that the Defendants' be found liable. (Pls.' Op. Mem. at 7.) Plaintiffs drafted a substantial and lengthy *pro se* class action complaint and successfully moved for the appointment of Appointed Counsel. They have suffered substantial injury and harm from the Defendants' wrongful conduct and will vigorously prosecute this litigation. (*Id.*) Furthermore, the Plaintiffs' deposition testimony attached to Defendants' Response demonstrates their commitment to the class.

**II.     Defendants Arguments Against Rule 23(b)(1) and (2) Are Baseless.**

   **A.     Defendants' backhanded attempt to obtain reconsideration should be rejected, and in any event, Defendants' arguments are still fatally flawed.**

Defendants present two arguments why the Plaintiffs have failed to satisfy the requirements of Rule 23(b)(1) and (2). First, Defendants argue that all the Plaintiffs' claims are "currently monitored by the Federal Courts via the *Harrington and Duran* consent decree," and therefore class certification would create a risk of inconsistent or varying adjudication. (Defs.' Resp. at 7-12.) As a threshold issue, this merits argument was already correctly rejected by this Court when it denied the Defendants' Motion to Dismiss. (Mar. 6, 2009 Order at 6.) Defendants are now improperly seeking to have this Court reconsider that Order without attempting to meet the stringent criteria for reconsideration. *See, e.g., Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (noting that the "limited function" of motions for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence") (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)). Defendants have not (and could not) meet these reconsideration criteria given that the consent decrees are decades old and were fully known to Defendants when they raised this issue previously. Accordingly, this backhanded attempt to seek reconsideration should be rejected out of the gates.

Furthermore, the issues raised regarding the *Harrington* and *Duran* consent decrees fail in the class certification context for the same reasons they failed in the motion to dismiss context. (Pls.' Resp. to Motion to Dismiss at 1-6.) Plaintiffs will not rehash those points herein, but refer back to that Response to the extent this Court chooses to address these issues.

Finally, Defendants' reliance on these consent decrees fails for an additional important reason in this class certification context. Defendants argue that this action may impose incompatible standards of conduct on the Defendants should Plaintiffs' claims succeed. But if that were true, it would simply mean that this Court and a jury found that the Defendants were

violating the United States Constitution (or the Illinois Constitution, which is not part of the consent decrees and provides an independent source for the class).  It would be fundamentally unfair (and constitutionally improper) to allow the Defendants to continue to violate the Constitution simply because they obtained a consent decree that imposed lower standards than the Constitution--which is essentially the argument the Defendants are making here.

In sum, the consent decrees are entirely irrelevant to the question of class certification because if the class proves its claims on the merits, this proves the Defendants are in violation of the United States Constitution.  Defendants simply cannot avoid liability for such constitutional violations by pointing to decades-old consent decrees.

### B. Defendants seek an expansion of the alleged class.

Defendants also argue that the class definition is not broad enough, claiming that "[i]f a (b)(1) or (2) class is created just for mental health detainees a situation would be created where there would be pre-trial detainees in Division 10 who would not be covered and would have to file their own lawsuit to garner the same relief sought by the Plaintiffs in this case." (Defs.' Resp. at 12.)  This analysis is incorrect.  The injunctive relief entered in this case would be binding upon the Defendants and would require them to comply with constitutional standards, such as by providing a level of mental healthcare and conditions of confinement that comport with constitutional norms.  This relief would be binding upon the Defendants as to all detainees at the CCJ.  There will not be differing standards created by a judgment in this litigation.  But to the extent this Court finds any merit to this argument, then the proper result would be for this Court to certify an *expanded* class of all pre-trial detainees housed at the CCJ for the claims relating to the conditions of confinement so that the relief would apply to all detainees.  This Court has the authority to alter the class definition at any time before final judgment and, in this

case, expand it to include all detainees for the purposes of the conditions of confinement claims. *See* FED. R. CIV. P. 23(c)(1)(C).[5]

### III. Predominance And Superiority Are Met.

Defendants final argument is an attack on the predominance and superiority requirements of Rule 23(b)(3). (Defs.' Resp. at 13-15.)

#### A. As a legion of cases have held, predominance is met.

Defendants' attack on the predominance factor focuses on a case that dealt with claims relating to dental pain. (*Id.* (citing *Smith v. Sheriff of Cook County*, 2008 U.S. Dist. LEXIS 60248 (N.D. Ill. May 6, 2008).) While it is true that the *Smith* court found the class should not be certified, it did so by focusing on the personal injuries and pain suffered by each class member. *Id.* at *5-6. Here, by contrast, the class's claims are focused on the Defendants' uniformly unconstitutional policies and conduct, which result in class-wide constitutional deprivations for all members with mental health issues. At trial, Plaintiffs intend to establish these claims based upon both factual and expert testimony. Claims such as those asserted here are routinely certified. *Phipps*, 249 F.R.D. at 302 (certifying Rule 23(b)(3) damages class of paraplegic or partially paralyzed pretrial detainees who asserted claims, including Section 1983 claims, based upon the jail's alleged discrimination against them by reason of their handicap); *Vodak v. City of Chicago*, 2006 U.S. Dist. LEXIS 30052 at *44-45 (N.D. Ill. Apr. 17, 2006) (certifying class of war protesters that claimed various constitutional rights were violated when

---

[5] Defendants also assert that Division 2 is a dormitory style setting similar to the RTU. (Defs.' Resp. at 12.) Defendants have not alleged (and certainly have not proven) that the myriad of constitutional violations that are occurring in Division 10 are not also occurring in Division 2. If, after further discovery, it turns out that there is a logical distinction to be drawn between Division 10 and Division 2, such a distinction could be dealt with as part of this Court's management and administration of the class action via an order modifying the class definition or creating a subclass. Defendants' factual assertion regarding Division 2, however, does not undermine any of the criteria for class certification.

they were arrested and detained, including conditions of confinement claim, under Rule 23(b)(3) because common issues predominated); *Dunn v. City of Chicago*, 231 F.R.D. 367, 376-78 (N.D. Ill. 2005) (certifying 23(b)(3) damages class of post-arrest detainees asserting Section 1983 claims based upon claims including conditions of confinement, finding that common issues of the conditions predominated); *Rahim v. Sheahan*, 2001 U.S. Dist. LEXIS 17214 at *50-53 (N.D. Ill. Oct. 19, 2001) (certifying 23(b)(3) class of pre-trial detainees at the CCDC based on policies regarding their treatment when taken to the hospital for medical treatment).

Other cases from outside this Judicial District further demonstrate the propriety of class certification. For example, *Langley v. Coughlin*, 715 F. Supp. 522 (S.D.N.Y. 1989), granted 23(b)(3) class certification under facts and circumstances nearly identical to the ones in the present case. In *Langley*, mentally disturbed inmates at a special housing unit of a state correctional facility brought a class action prisoner lawsuit alleging constitutional violations stemming from adverse conditions of confinement and inadequate mental health care treatment. Mirroring the present case, the inmates' claims were largely predicated on a theory of deliberate indifference by correctional and mental health officials. After finding that both common factual and legal questions predominated over the individual issues with respect to the "conditions of confinement" claims, *id.* at 557, the court explained why predominance was met with respect to the inadequate mental treatment claims:

> [T]o the extent that an individual claimant contends that specific medical decisions of the defendants that affected her[] were so egregiously improper as to reflect deliberate indifference, she will necessarily seek to demonstrate an extended pattern of such erroneous decisions-whether concerning her or other class members-as a means of showing that the alleged errors constituted not merely simple negligence but rather deliberate indifference.

*Id.* at 560 (citations omitted). The court went on:

> Such an effort to prove the defendants' indifference will necessarily require each class member to rely on the same body of evidence for the purpose of persuading the court that when the responsible authorities erred, it occurred for reasons other than honest error.

12

> This too adds a large body of common issues of both fact and law to the [inadequate mental health treatment] case, thus further enhancing the appropriateness of class treatment.

*Id.* (citations omitted). The *Langley* court also emphasized that the inadequate mental health treatment claims reflected a predominance of common issues *particularly* when viewed in the context of the entire potentially triable case.

> [The inadequate mental health treatment] claims are intimately linked to the "conditions of confinement" claims, which, as noted, reflect a predominance of common legal and factual issues. Indeed, the central proof on the "conditions of confinement" claims must necessarily involve evidence of how the State dealt with the mentally disordered inmates . . . . Accordingly, a joint trial, to the extent feasible, will prove far more efficient than parceling out the [inadequate mental health treatment] claims to a multiplicity of separate proceedings.

*Id.* at 561. Here, just as in *Langley*, the common issues vastly predominate over the individual ones.

Finally, the Defendants' Response sets forth yet another reason for class certification. As noted above, the Defendants assert in their Response that some of the Plaintiffs' claims are subject to the immunities under the Illinois Local Governmental and Governmental Employees Tort Immunity Act. (Defs.' Resp. at 8.) This assertion of a qualified immunity defense to the inmates' claims raises even more common issues of law and fact that can be more efficiently resolved in a class action.

      **B.**     **Defendants' Response demonstrates why a class action is superior here.**

Defendants' Response correctly notes that one of the benefits of a class action is to allow the aggregation of "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." (Defs.' Resp. at 15 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).) Here, a class action is superior for this very reason: it is unlikely that many (if any) other class members have sufficient resources to pursue their own claims, and it is unlikely that many members of the plaintiffs' bar would accept cases like these on a contingency basis

13

given the time and effort involved.  Thus, if this class were not certified it would require each class member to file his own suit, and seek appointment of counsel, which would needlessly stress this Judicial District's appointed counsel pool.   A class action is superior here so that Appointed Counsel can prosecute these issues in one action resolving them collectively.

> Defendants' also argue against superiority based upon the *Harrington* and *Duran* consent decrees, which fails for all the reasons already discussed.  Finally, Defendants argue that there may be manageability issues due to their position that the claims raise individualized questions.  (Defs.' Resp. at 15.)  This argument fails in the superiority context for the same reason that it fails in the predominance context.  Simply put, Plaintiffs and the class will prosecute this action relying upon a generalized body of factual and expert evidence that will establish the class's claims collectively.  Moreover, the evidence that will be provided with respect to each class member's claims can be offered efficiently in one proceeding.  The Plaintiffs' proof will largely come from the testimony of psychiatric experts who can review the medical files of the unnamed class members and draw conclusions relating to the class members' mental status and need for care, the adequacy of the mental health treatment policies and practices at the CCJ, the standard of care that should be provided for various diagnoses, and whether and to what extent the inmates were injured by the adverse conditions in the prison.

## CONCLUSION

For all the foregoing reasons, and the reasons contained in Plaintiffs' Opening Memorandum, Motion, and Supporting Affidavits and Exhibits, Plaintiffs respectfully submit that their Motion for Class Certification should be granted.

Dated:  July 9, 2009                                                            Respectfully submitted,

Mark A. Flessner (ARDC #6194599)                    /s/ Anthony T. Eliseuson
Anthony T. Eliseuson (ARDC #6277427)              One of the appointed attorneys for Plaintiffs
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
mflessner@sonnenschein.com
aeliseuson@sonnenschein.com
*Appointed attorneys for Plaintiffs Derrick Haynes, Thomas M. Perconti, Charles B. Hill, and Fred Rogers*

## **CERTIFICATE OF SERVICE**

      I, Anthony T. Eliseuson, an attorney, hereby certify that on July 9, 2009, I electronically filed the preceding with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

- **Kevin William Frey**
  **kfrey@cookcountygov.com**

                                            /s/Anthony T. Eliseuson
                                            Anthony T. Eliseuson