IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DERRICK HAYNES, THOMAS M.     )
PERCONTI, CHARLES B. HILL, and FRED  )
ROGERS, on behalf of themselves and a   )
class of others similarly situated,      )     Civil Action No.: 08 C 4834
                                )
                Plaintiffs,  )     Suzanne B. Conlon, Judge
                                )
       v.                         )
                                )
THOMAS DART, *et al.*,           )
                                )
              Defendants.  )

## MEMORANDUM OPINION AND ORDER

Derrick Haynes, Thomas M. Perconti, Charles B. Hill, and Fred Rogers (collectively "plaintiffs") are mentally ill pre-trial detainees at the Cook County Jail who allegedly have been deprived of mental health treatment, humane confinement conditions, adequate grievance procedures, and access to courts. On behalf of themselves and a class of others similarly situated, they sue Cook County, Cook County Sheriff Thomas Dart, Cook County Jail Executive Director Salvador Godinez, former Cook County Jail Division Ten Superintendent M. Figliulo, Cook County Jail Division Ten Superintendent Thomas Snooks, former Cook County Jail Division Ten Security Chief Chester Plaxico, Cook County Jail Program Services Supervisor John Mueller, Cermak Health Services Chief Operating Officer David Fagus, Cook County Jail Sergeant John Manos, Officer Velez, Cook County Jail Division Ten Security Chief Thomas, and mental health specialist Ms. Jackson (collectively "defendants").

Plaintiffs allege violations of 42 U.S.C. § 1983, the Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*), the Rehabilitation Act (29 U.S.C. § 794), and the Illinois Constitution.

They also assert a state law negligence claim against defendant Dart. Plaintiffs move to certify a class and subclass pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1-3). For the reasons stated below, the motion for class certification is denied.

## BACKGROUND

Plaintiffs are mentally ill pre-trial detainees at the Cook County Jail ("the jail"). Until May 2008, they were housed in the jail's residential treatment unit ("RTU"), a dormitory-type facility for detainees with varying degrees of mental health problems. RTU provided continuous observation by mental health specialists and guards, and constant access to therapists. Plaintiffs had access to their beds at all times so they could rest after being medicated. RTU was also equipped with therapeutic programs to address patients' mental health needs.

In May 2008, defendants closed RTU and implemented a policy assigning mentally ill detainees to housing divisions based upon their security classification, not their mental health status. Mental health specialists working in RTU objected to its closure, but to no avail. Plaintiffs and other RTU detainees were ordered to gather their belongings and were transferred to jail divisions that do not provide mental health treatment, and do not employ guards trained to interact with mentally ill detainees. Since the transfer, plaintiffs have not received their prescribed medication on several occasions, have not received the requisite 15 weekly hours of therapy (some plaintiffs currently receive no therapy), and they are forced to rest on rodent and insect-infested concrete floors after receiving their medication. Defendant Figliulo, former Division Ten Superintendent, allegedly stated he "did not care about all the detainees sleeping on the floor [sic] this is fine with me as long as they are not dead." 2d Am. Comp. ¶ 60.

2

Despite their known suicidal tendencies, defendants distribute razors to plaintiffs and other mentally ill detainees at night for shaving, but do not collect them until morning, and sometimes not at all. Correctional officers are required to conduct suicide cell checks every 15 minutes, but officers commonly play cards or sleep instead, and falsely document the checks. During a meeting with correctional officers, defendant Godinez, the jail's executive director, allegedly stated that the jail has a low suicide rate and "can afford a few deaths." *Id.* ¶ 48.

Defendants also allegedly failed to maintain humane conditions of confinement for plaintiffs and other detainees. The jail is infested with rodents, cockroaches, and insects, thus exposing detainees to germs and diseases that endanger their health. The vermin climb into plaintiffs' property boxes and damage commissary items. Defendants set glue traps as a means of pest control, but they have failed to inspect or clean them. As a result, the jail is permeated with the smell of dead, rotting rats. Defendants do not provide detainees with sufficient cleaning supplies, or clean uniforms, undergarments, towels, or bed linens. Temperature regulation and air ventilation are deficient, exacerbating some of the plaintiffs' asthmatic conditions. Jail walls are covered with blood and other bodily substances. Guards degrade and harass detainees by conducting unnecessary lockdowns, threatening the use of mace and pepper spray, and arbitrarily canceling scheduled recreation time.

Plaintiffs have attempted to file grievances in accordance with the jail's established procedures. Defendant Mueller, the jail's Program Services Supervisor, converts the grievances into "requests" to avoid issuance of a control number and circumvent the jail's grievance procedures. Plaintiffs believe this sleight of hand is frequently used where the grievance relates to the need for medical or mental health treatment. Additionally, some defendants engaged in

3

affirmative threats to dissuade detainees from filing grievances. Defendant Plaxico, formerly a
chief of security for the jail, ordered detainees "to stop filing grievances [*sic*] this is jail and it is
what it is!" 2d Am. Comp. ¶ 74. Defendant Snooks, a jail superintendent, told a detainee to
"shut the [expletive] up" when the detainee attempted to inform the jail's court-ordered monitor
about the living conditions. *Id.* Snooks threatened to lock down parts of the jail and make
everyone suffer if detainees told the monitor anything about the inhumane conditions.
Defendants Manos and Velez refused to provide detainees with grievance forms, refused to
accept forms already filled out, and threatened detainees in a manner designed to stop them from
filing grievances.

As a result of defendants' alleged conduct, plaintiffs bring a putative class action
claiming that defendants are depriving them of necessary mental health treatment, housing them
in unsafe and unsanitary conditions, and obstructing their ability to file grievances and obtain
redress from the courts. Plaintiffs define their proposed class as:

> All current, former, and future pretrial detainees housed at Cook County
> Jail suffering from mental illnesses who have been deprived of
> necessary mental health treatment after August 25, 2006 (the "Class
> Period").

Plaintiffs also seek certification of the following subclass (the "RTU subclass"):

> All pretrial detainees suffering from mental illnesses who were housed
> in the Residential Treatment Unit ("RTU") of Division Eight of Cook
> County Jail and who were transferred to Division Ten or Division Two
> (or any other Division) when the RTU was closed in 2008.

Excluded from the proposed class and subclass are all present and former agents or employees of
defendants during the class period, any class member who elects to be excluded as permitted by
Rule 23(b)(3) or the court's orders, and all members of the judiciary of this court, and members

4

of their immediate families. Plaintiffs contend the proposed class and subclass meet the

certification requirements of Fed. R. Civ. P. 23(a), 23(b)(1), (b)(2), and (b)(3).

## DISCUSSION

### I.    Legal Standard

A district court has broad discretion to determine whether class certification is

appropriate. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). Nonetheless, a class may only

be certified if the court is convinced, after a rigorous analysis, that the requirements of Fed. R.

Civ. P. 23 have been satisfied. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct.

2364, 72 L.Ed.2d 740 (1982). Plaintiffs bear the burden of establishing that certification is

appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

In determining the propriety of class certification, the issue is not whether plaintiffs have stated a

cause of action or will prevail on the merits, but whether Rule 23's requirements are met. *Eisen*

*v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In conducting

its analysis, the court may make whatever factual or legal inquiries are necessary to determine

whether Rule 23's prerequisites are satisfied. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672,

676-77 (7th Cir. 2001) (the court must often probe beneath the pleadings to conduct the inquiries

identified in Rule 23 and to exercise the discretion it confers).

### II.    Class Certification

#### A.    Identifiable Class

Before addressing Rule 23's requirements, the court must be satisfied that the proposed

class is sufficiently definite to permit ascertainment of class members. *Alliance to End*

*Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977); *Guillory v. Am. Tobacco Co.*, No. 97

C 8641, 2001 WL 290603, *2 (N.D. Ill. Mar. 20, 2001) (Guzman, J.). A class is properly

identified so long as it is defined by objective criteria, so that it is administratively feasible for

the court to determine whether a particular individual is a member. *Fogarazzo v. Lehman Bros.,

Inc.*, 232 F.R.D. 176, 181 (S.D.N.Y. 2005); *Ludwig v. Pilkington N. Am., Inc.*, No. 03 C 1086,

2003 WL 22478842, *1 (N.D. Ill. Nov. 4, 2003) (Zagel, J.). Class membership need not be

ascertained at the time of certification, but membership of the class must be ascertainable at a

relevant point in the case. *Fogarazzo*, 232 F.R.D. at 181. The class definition cannot be so

broad as to include individuals without standing to maintain the action on their own behalf.

*Guillory*, 2001 WL 290603, *8-9. Proper identification of the class serves two important

purposes. First, it alerts the court and the parties to the burdens the case will impose on them.

*Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981); *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 580

(N.D. Ill. 2005) (Conlon, J.). Second, it ensures that the individuals actually harmed by

defendants' conduct will be the recipients of the awarded relief. *Simer*, 661 F.2d at 670; *Oshana*,

225 F.R.D. at 580.

Defendants argue plaintiffs have failed to satisfy Rule 23(a)'s "identifiable class"

requirement because the phrase "suffering from mental illnesses" is too vague to define an

ascertainable class. The court agrees. It raises basic questions as to how "mental illness" is to be

defined and how it is to be diagnosed. Without a clear idea of what plaintiffs mean by "mental

illness," the court cannot know who is in the class and who is not. More importantly, the court

cannot know if there is an administratively feasible way to identify the class.

Plaintiffs contend the class is identifiable because an existing consent decree requires all

detainees entering the jail be screened for mental illness. *See* Ex. G to Def. Resp. This argument

6

misses the mark. The proposed class is not limited to those identified by the jail as mentally ill;
it includes *all* pretrial detainees suffering from mental illnesses, even those whose illness was
overlooked or ignored or whose illness did not manifest until after the initial screening (if one
took place at all). Plaintiffs' argument is also undermined by their own allegations. According
to the complaint, defendants are intentionally failing to identify mentally ill inmates by using
inappropriate screening criteria. 2d Am. Comp. ¶ 42. If this is true, there are many potential
class members who have never been diagnosed as mentally ill by the jail. Plaintiffs do not
reconcile this inconsistency, leaving the court with no assurance that it will be able to determine
class membership without conducting time-consuming individual inquiries. *See Williams-Ellis v.
MT Hair Salons & Day Spas*, No. 05 C 5030, 2008 WL 834429, *1 (N.D. Ill. Mar. 27, 2008)
(Kocoras, J.) (certification should be denied if individual inquiries are required to determine
whether each potential member falls within the class).

      Plaintiffs argue the consent decree entered into in *Harrington v. DeVito*, 74 C 3290 (N.D.
Ill. Oct. 19, 1978) (the "*Harrington* decree"), proves that a class of mentally ill detainees is
ascertainable. The *Harrington* decree class included all present and future pretrial detainees in
need of mental health treatment at the Cook County Jail. Ex. G to Def. Resp. But the
*Harrington* decree was limited to declaratory and injunctive relief. The ascertainability
requirement can be applied more flexibly in situations where individual notice to class members
is not required, such as suits for equitable relief. *See Hohider v. United Parcel Serv. Inc.*, 243
F.R.D. 147, 209-11 (W.D.Pa. 2007) (ascertainability less important in Rule 23(b)(2) class actions
seeking injunctive or declaratory relief); 2 William B. Rubenstein, *et al.,* Newberg on Class
Actions § 6.15 (4th ed. 2008) (amorphous class definitions may properly be used in an action

seeking declaratory or injunctive relief). Many of the cases plaintiffs cite in support of their argument that "mental illness" is sufficiently definite were limited to equitable relief. *See, e.g., Robert E. v. Lane*, 530 F. Supp. 930 (N.D. Ill. 1981) (Getzendanner, J.) (certifying a Rule 23(b)(2) class of prisoners who need or will need mental health services); *Coleman v. Wilson*, 912 F. Supp. 1282 (E.D. Cal. 1995) (certifying a class of mentally ill state prisoners seeking declaratory and injunctive relief).

Here, plaintiffs seek classwide equitable relief under Rule 23(b)(1) and (b)(2), but they also seek money damages under Rule 23(b)(3). The notice and opt-out procedures applicable to Rule 23(b)(3) class actions require that plaintiffs define the class in objective terms capable of ascertaining membership at a relevant stage. *See* Fed. R. Civ. P. 23(c)(2)(B) (notice requirements); Manual for Complex Litigation § 21.222 (4th ed. 2004) (Rule 23(b)(3) actions require a class definition that will permit individual identification, while Rule 23(b)(1) or (b)(2) actions may not). Plaintiffs' proposed definition is not precise enough to allow for individual notice of the class action, as required of Rule 23(b)(3) class actions.

Plaintiffs contend that outside organizations, such as the John Howard Association, a court-ordered monitor of the jail, and the Department of Justice, "may have their own analysis of the class membership that could be used for purposes of class notice." Pl. Reply at 3. This speculation is insufficient. Plaintiffs bear the burden of proving their proposed definition results in an identifiable class. *Sadler v. Midland Credit Mgmt., Inc.*, No. 06 C 5045, 2009 WL 901479, *2 (N.D. Ill. Mar. 31, 2009) (Pallmeyer, J.). The court must be convinced that class membership is ascertainable at a relevant time; not that it *may* be ascertainable. *Fogarazzo*, 232 F.R.D. at

8

181; Manual for Complex Litigation § 21.222. For these reasons, plaintiffs do not satisfy the threshold requirement that the class be sufficiently defined.

### B.    Fed. R. Civ. P. 23(a)

Aside from sufficiently defining a class, a plaintiff seeking class certification must satisfy all of Rule 23(a)'s express prerequisites: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be at least one question of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties and their counsel must be able to fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

### 1.    Numerosity

The crux of the numerosity requirement is not the number of class members *per se*, but the practicality of their joinder into a single suit. Fed. R. Civ. P. 23(a)(1). In determining if joinder is impracticable, the court considers the potential size of the class, the geographic disbursement of potential class members, the type of relief sought, and the practicality of relitigating the central issues of the case. *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 348 (N.D. Ill. 2008) (Castillo, J.). Impracticable does not mean impossible; but rather, means that joinder would be extremely difficult and inconvenient. *Wilson v. Collecto, Inc.*, No. 03 C 4673, 2004 WL 432509, *2 (N.D. Ill. Feb. 25, 2004) (St. Eve, J.). Plaintiffs need not plead or prove the exact number of class members, but impracticability of joinder must be more than speculative. *Wilson*, 2004 WL 432509, at *2. Plaintiffs must make some showing, affording the court the means to make a supported factual finding, that the class meets the numerosity

9

requirement. *See Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2009) (plaintiff cannot rely on speculation or conclusory allegations to satisfy the numerosity requirement).

Defendants argue plaintiffs have offered only conclusory statements, rather than evidence, to establish that joinder is impracticable. The court disagrees. Plaintiffs estimate the size of the class will number into the thousands, and the subclass will likely contain at least 300 members. According to the Department of Justice, nearly 100,000 inmates were admitted to the jail in 2006 and the jail has a daily population of approximately 9,800. *See* July 11, 2008 Report of the Civil Rights Division of the Dept. of Justice at 3 (attached as Ex. A to 2d Am. Comp.). Most of the jail's daily population consists of pretrial detainees awaiting disposition of their cases in the criminal court system. *Id.* The Bureau of Justice estimated that in 2005, nearly 56% of all prison and jail inmates suffered from a mental health problem. Dept. of Justice, Bureau of Justice Statistics, D. James & L. Glaze, *Special Report: Mental Health Problems of Prison and Jail Inmates*, (rev. Dec. 2006). In contrast, the organization providing psychiatric and psychological services to the jail estimates that of the approximately 300 detainees entering the jail on a daily basis, about 10% are identified and referred for mental health services. Cermak Health Services, The Isaac Ray Center Inc., http://isaacraycenter.com/Cermak_/body_cermak_.html (last visited July 17, 2009). The average length of stay at the jail for detainees with mental health problems is 90 days. *Id.* Based on the jail's estimated percentage of mentally ill detainees and their average length of stay, there is sufficient evidence in the record to conclude the class is so numerous that joinder would be impracticable.

The numerosity requirement is also satisfied with respect to the proposed subclass. At the time RTU was closed in 2008, it housed approximately 300 pretrial detainees in need of

mental health services. *See* Cermak Health Services website; *see also* Transcript of June 5, 2008

Status Hearing at 25-26, 35-36, *Duran, et al. v. Brown, et al.*, No. 74 C 2949 (Dkt. 1022)

(Kendall, J.). The putative subclass is sufficiently numerous that joinder is impracticable. *See*

*Armes v. Shanta Enter., Inc.*, No. 07 C 5766, 2009 WL 2020781, *2 (N.D. Ill. July 8, 2009)

(Kapala, J.) (joinder is considered impractical when a class numbers at least 40 members).

      **2.    Commonality**

      To satisfy the commonality requirement, there must be at least one question of law or fact

common to the proposed class. Fed. R. Civ. P. 23(a)(2). A common nucleus of operative fact is

usually enough to satisfy this requirement. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.

1992). Plaintiffs assert there are numerous common issues stemming from defendants' conduct

toward members of the class: whether defendants failed to provide adequate mental health

services; whether defendants were deliberately indifferent to class members' mental health

needs; whether defendants failed to provide humane conditions of confinement. Defendants

maintain there is no common nucleus of operative facts because a determination of deliberate

indifference, an allegation underlying most of plaintiffs' claims, requires a highly individualized

factual inquiry as to each class member. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir.

1997); *but see Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983) (deliberate indifference

can be established by systemic deficiencies or a pattern of conduct).

      Defendants' argument confuses Rule 23(b)(3)'s requirement of *predominance* of common

issues with Rule 23(a)(2)'s requirement of *existence* of common issues. *Parish v. Sheriff of Cook*

*County*, No. 07 C 4369, 2008 WL 4812875, *3 (N.D. Ill. Oct. 24, 2008) (Kennelly, J.); *see also*

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)

(predominance criterion of Rule 23(b)(3) is far more demanding than commonality requirement). The presence of some factual variation among the class grievances is not fatal to commonality. *Rosario*, 963 F.2d at 1017; *Dunn v. City of Chicago*, 231 F.R.D. 367, 372-73 (N.D. Ill. 2005) (Gettleman, J.) (variations in the treatment of certain detainees does not defeat commonality). At a minimum, plaintiffs' claims involve standardized conduct by defendants toward members of the putative class and subclass. That is a sufficient basis for the court to find the commonality requirement is satisfied. *Keele*, 149 F.3d at 594; *Jones v. Risk Mgmt. Alternatives, Inc.*, No 02 C 9392, 2003 WL 21654365, *2 (N.D. Ill. July 11, 2003) (Aspen, J.). Courts have consistently held that class actions challenging a jail's general practices and procedures satisfy Rule 23(a)'s commonality requirement. *See, e.g., Harper v. Sheriff of Cook County*, No. 07 C 2393, 2008 WL 4686148, *2-3 (N.D. Ill. May 29, 2008) (Darrah, J.); *Phipps v. Sheriff of Cook County*, 249 F.R.D. 298, 301 (N.D. Ill. 2008) (Bucklo, J.); *Dunn*, 231 F.R.D. at 372-73. Plaintiffs have presented evidence that class members were broadly subjected to defendants' practice of failing to provide adequate mental health services, failing to provide humane conditions of confinement, and obstructing their ability to seek redress. Accordingly, plaintiffs satisfy Rule 23(a)'s commonality requirement.

### 3.    Typicality

Rule 23(a)'s typicality requirement is closely related to the commonality requirement. *Rosario*, 963 F.2d at 1018. Plaintiffs' claims are typical if they arise from the same event or course of conduct giving rise to the claims of other class members, and the claims are based on the same legal theory. *Id.* The typicality requirement may be satisfied even if there are factual distinctions between the named plaintiffs' claims and those of other class members. *De La*

12

*Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).  All mentally ill pretrial detainees at the jail, including the named plaintiffs, were subject to the policies and practices alleged in the complaint.  Because plaintiffs' claims have the same essential characteristics of the class at large, they have satisfied the typicality requirement.  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

Aside from the arguments defendants raised as to commonality (*i.e.*, that the claims require individual determinations and no class member's claim would be common or typical), which fail for the reasons discussed above, defendants argue that certain claims are subject to a unique defense under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/4-103.  That may be true, but it does not defeat typicality.  Though "the presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality," *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980), the defense cited by defendants is not peculiar to the named plaintiffs or any subset of the class.  It would apply equally to all class members.  Because the defense is generally applicable to the entire class, it does not prevent the plaintiffs from satisfying the typicality requirement.  *See, e.g.*, *Ludwig*, 2003 WL 22478842, at *3 (statute of limitations defense did not defeat typicality because it was not limited to named plaintiffs or a small subset of the class).

### 4.    Adequacy

Adequacy of representation is composed of two prongs: (1) plaintiffs' counsel must be skilled and experienced enough to represent the class effectively; and (2) plaintiffs themselves must be able to protect the interests of all class members.  *Hyderi v. Washington Mut. Bank, FA*,

13

235 F.R.D. 390, 396 (N.D. Ill. 2006) (Filip, J.). Defendants do not challenge the adequacy of

plaintiffs' counsel. And in light of their credentials and experience, the court finds no basis to

question counsel's ability to effectively prosecute a class action.

Defendants argue the named plaintiffs are inadequate representatives because "they have

not demonstrated that when push comes to shove that they will do what is right for the class."

Def. Resp. at 9. It is unclear from defendants' argument exactly what type of demonstration

would suffice at the class certification stage for plaintiffs to prove their worth. In any event, the

court does not find this argument convincing. On their own initiative, plaintiffs drafted a

substantial *pro se* class action complaint and successfully moved for appointment of counsel.

Counsel notes that plaintiffs are actively engaged in this litigation. There is no reason to doubt

plaintiffs will vigorously prosecute this case.

The court's analysis does not end there. Rule 23(a)'s adequacy requirement is often

concerned with avoiding conflicts of interest between the class representatives and members of

the class. *Retired Chicago Police Ass'n*, 7 F.3d at 598. Without an adequate class definition, it

would be premature for the court to decide whether there are disqualifying conflicts between the

named plaintiffs and the putative class. *Sandoval v. City of Chicago*, No. 07 C 2835, 2007 WL

3087136, *7 (N.D. Ill. Oct. 18, 2007) (Conlon, J.).

### C.    Fed. R. Civ. P. 23(b)

If the Rule 23(a) requirements are met, the court must then assess whether a class action

is appropriate and prudent under at least one of the provisions of Rule 23(b). *Rosario*, 963 F.2d

at 1017. Even assuming that plaintiffs satisfied all requirements of Rule 23(a), both express and

implied, plaintiffs do not persuade the court that certification is warranted under Rule 23(b)(1) or

14

(b)(2). Plaintiffs' failure to adequately define the class renders the court unable to reach the merits of certification under Rule 23(b)(3).

### 1.     Rule 23(b)(1) and (b)(2)

Plaintiffs seek certification under Rule 23(b)(1) and (b)(2) for purposes of obtaining classwide injunctive and declaratory relief. Pl. Motion at 13-14. In order to satisfy Rule 23(b)(1), plaintiffs must show that prosecuting separate actions would create a risk of either: (1) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants; or (2) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(A)-(B). Rule 23(b)(2) provides that class certification is appropriate if defendants have acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate for the class as a whole. Fed. R. Civ. P. 23(b)(2).

At a quick glance, this case seems ideal for classwide equitable relief. Broad injunctive relief addressing defendants' allegedly wrongful conduct would prevent the establishment of incompatible standards that might result from the prosecution of numerous suits on behalf of individual detainees. Fed. R. Civ. P. 23(b)(1)(A). Given that plaintiffs' claims relate to a general pattern of defendants' conduct toward class members, classwide equitable relief seems an efficient means to remedy defendants' allegedly unlawful behavior. Fed. R. Civ. P. 23(b)(2). But the court must perform more than a quick glance; it must conduct a rigorous analysis to determine the propriety of class certification. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir.

15

2003). Given plaintiffs' failure to identify the scope of equitable relief sought, the court finds

that plaintiffs have not met their burden to show that certification is appropriate under Rule

23(b)(1) or (b)(2). *See Vallario v. Vandehey*, 554 F.3d 1259, 1267-68 (10th Cir. 2009) (motion

for class certification must describe the equitable relief sought in enough detail that the court can

formulate an injunction that comports with the requirements of Rules 23 and 65).

      Plaintiffs seek injunctive and declaratory relief to address a broad range of allegedly

unlawful conduct, but they eschew any effort to give content to the equitable relief they seek.

Plaintiffs' complaint states only that the "injunctive relief sought [] is necessary to prevent

further injury." 2d Am. Comp. ¶ 40. But the complaint provides no further detail as to exactly

what relief the class members are pursuing. Neither does plaintiffs' motion for class

certification. This vagueness is insufficient for class certification under Rule 23(b)(1) or (b)(2).

On the present record, it would be problematic to craft injunctive relief in compliance with Rule

65(d)'s specificity requirements. *See* Fed. R. Civ. P. 65(d) (an injunction must "state its terms

specifically" and "describe in reasonable detail" the acts restrained or required).

      At the class certification stage, the injunctive relief sought must be described in

reasonably particular detail to satisfy the requirements of Rules 23(b)(2) and 65(d). *Shook v. Bd.*

*of County Comm'rs of County of El Paso*, 543 F.3d 597, 605 (10th Cir. 2008); *see also*

*Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) (injunctive relief sought

must be specific). Because the full record has not yet been established, plaintiffs need not proffer

a prayer for injunctive relief satisfying Rule 65(d)'s exacting precision. *See Califano v.*

*Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) (scope of injunctive relief is

dictated by the extent of the violation established). But given the breadth of unlawful acts

16

alleged here, plaintiffs must describe the desired equitable relief in sufficient detail for the court

to determine whether classwide injunctive relief is potentially appropriate and manageable.

By moving for certification of a class of all pretrial detainees suffering from mental

illnesses – without explaining how injunctive relief could address the many variations within the

class – the appropriateness of classwide relief has not been established.  If equitable relief is not

uniformly applicable to the class, and inquiry into individual circumstances is required, there is

little to be gained from proceeding as a class action. *See Gen Tel. Co. of Sw.*, 457 U.S. at 155

(purpose of class actions is to save the resources of both the courts and the parties); *Barnes v.*

*Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) (class action could become unmanageable if

significant individual issues arise consistently).  A class should not be certified for injunctive

relief if relief specifically tailored to each class member would be necessary to correct

defendants' allegedly wrongful conduct. 5 *Moore's Fed. Prac.* § 23.43(2)(b) at 23-195 (3d ed.

2000).  Without a clear identification of the relief sought by plaintiffs, the court cannot determine

the propriety of class certification.

Plaintiffs' effort to obtain classwide equitable relief is further complicated by the fact that

two existing consent decrees already address many of the allegations contained in the complaint.

The *Harrington* decree seeks to provide adequate mental health screening and treatment for

pretrial detainees at the Cook County Jail. Ex. G to Def. Resp.  The consent decree entered in

*Duran v. Elrod*, 74 C 2949 (N.D. Ill. Apr. 9, 1982) (the "*Duran* decree"), addressed many of the

confinement conditions that plaintiffs complain of, including environmental health and grievance

procedures. Ex. H to Def. Resp.  Plaintiffs and the putative class members fall within the classes

covered by the *Harrington* and *Duran* decrees.  The *Duran* class included all pretrial detainees in

17

the Cook County Department of Corrections, while the *Harrington* class was limited to those pretrial detainees in need of mental health treatment. Both decrees are monitored for compliance by judges of the Northern District of Illinois; the *Harrington* decree is presently overseen by Judge James B. Zagel and the *Duran* decree is overseen by Judge Virginia M. Kendall.

Defendants argue that, given the ongoing *Harrington* and *Duran* decrees, classwide equitable relief in this case would bring about the very harm that Rule 23(b)(1) and (b)(2) is meant to avoid. Any injunctive relief awarded as to the availability of mental health treatment might be incompatible with the jail's obligations under the *Harrington* decree, and equitable relief addressing confinement conditions and grievance procedures may be inconsistent with the jail's obligations under the *Duran* decree. Those results would be problematic. But because plaintiffs have yet to identify with any degree of particularity the scope of injunctive relief sought, it would be premature to determine whether equitable relief could be fashioned to avoid conflict with the *Harrington* and *Duran* decrees.

Plaintiffs contend that defendants' assertion of the *Harrington* and *Duran* consent decrees in their opposition to class certification is just a backhanded attempt to obtain reconsideration of their motion to dismiss. Pl. Reply at 9. The court disagrees. It is true that defendants sought the dismissal of plaintiffs' request for equitable relief on many of the counts, arguing that the proper remedy was to seek a contempt order under the *Harrington* and *Duran* decrees. Dkt. 68 at 5-7. The court denied defendants' motion to dismiss on this ground, finding that defendants failed to meet their burden on a Rule 12(b)(6) motion to dismiss. Dkt. 89 at 6. But just because defendants failed to satisfy their burden on a motion to dismiss, it does not follow that the consent decrees are irrelevant to the court's consideration of a class certification motion.

18

Plaintiffs bear the burden of establishing that class certification is appropriate. *Retired Chicago Police Ass'n*, 7 F.3d at 596. The denial of the motion to dismiss did not relieve them of the burden of showing that classwide equitable relief would be manageable in light of the *Harrington* and *Duran* consent decrees. For this reason and those above, the court declines to certify the putative class and subclass under Rule 23(b)(1) or (b)(2).

      **2.**      **Rule 23(b)(3)**

      Rule 23(b)(3) allows for class certification if the requirements of Rule 23(a) have been met, and if the court finds that "questions of law or fact common to members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for resolving the controversy." Fed. R. Civ. P. 23(b)(3). These findings are often referred to as the "predominance" and "superiority" requirements. *Ervin v. OS Rest. Servs., Inc.*, No. 08 C 1091, 2009 WL 1904544, *3 n. 1 (N.D. Ill. July 1, 2009) (Guzman, J.). In considering Rule 23(b)(3)'s requirements, the court must review the substantive elements of plaintiffs' causes of action, the proof necessary for the various elements, and the manageability of trial on these issues. *Simer*, 661 F.2d at 672; *Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679, *4 (N.D. Ill. Apr. 18, 2002) (Conlon, J.). The court is obligated to determine whether the existence of individual issues preclude certification, and must take into account the substantive elements of plaintiffs' claims to consider whether a trial would be manageable or problematic. *Zapka v. Coca-Cola Co.*, No. 99 C 8238, 2000 WL 1644539, *4 (N.D. Ill. Oct. 27, 2000) (Darrah, J.). Where liability determinations are both individual and fact-intensive, class certification under Rule 23(b)(3) is improper. *Rodriguez*, 2002 WL 655679, at *5.

In support of certification under Rule 23(b)(3), plaintiffs assert that all three categories of claims (*i.e.*, mental health treatment, confinement conditions, and grievance procedures) raise common issues that predominate over individual ones and the claim elements can be established by generalized evidence. Pl. Motion at 8-13. Defendants argue that, given the variations in class members' mental health needs and living conditions, individual liability determinations would predominate. Def. Resp. at 13-15. Though Rule 23(b)(3)'s requirements may sometimes be resolved by looking at the complaint alone, this is not such a case. *See, e.g., Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (failure to satisfy Rule 23(b)(3)'s predominance requirement was readily apparent from a reading of the complaint). The parties take starkly different positions as to the extent of individual issues involved in this case, and the method and ease of proof for each. Given the absence of a workable class definition, however,  it would be both speculative and premature for the court to express an opinion on the suitability of class certification under Rule 23(b)(3). *See Simer*, 661 F.2d at 670 (an ascertainable class helps the court determine whether a class action is a superior method of trying the lawsuit). The lack of a sufficiently defined class prevents the court from determining whether Rule 23(b)(3)'s predominance and superiority requirements are met. Certification is inappropiate under these circumstances.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is denied. The court is unpersuaded that the proposed class definition is sufficiently definite to allow for ascertainability of the class members, thus preventing a determination whether the requirements of Fed. R. Civ.

P. 23(a)(4) and (b)(3) are satisfied.  Because plaintiffs fail to define the scope of injunctive relief sought, certification under Rule 23(b)(1) or (b)(2) is inappropriate.

ENTER:

July 29, 2009

Suzanne B. Conlon
United States District Judge