**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DERRICK HAYNES, THOMAS M. PERCONTI, CHARLES B. HILL, and FRED ROGERS, on behalf of themselves and a class of others similarly situated | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 08-4834 |
| vs. | ) ) | |
| | ) | Honorable Suzanne B. Conlon |
| THOMAS DART, individually and in his official capacity as the Sheriff of Cook County, SALVADOR GODINEZ, individually and in his official capacity as Executive Director of Cook County Jail, MICHAEL FIGLIULO, individually and in his official capacity as the former Superintendent of Division Ten of the Cook County Jail, SUPERINTENDENT THOMAS SNOOKS, individually and in his official capacity as the Superintendent of Division Ten of the Cook County Jail, CHESTER PLAXICO, individually and in his Official capacity as the former Chief of Security of Division Ten of the Cook County Jail, JOHN MUELLER, individually and in his official capacity as the Supervisor of Program Services for the Cook County Jail, DAVID FAGUS, individually and in his official capacity as the Chief Operating Officer of Cermak Health Services of Cook County, SERGEANT MANOS, individually and in his official capacity as a Sergeant at the Cook County Jail, OFFICER AMERICA VELEZ, individually and in her official capacity as a correctional officer at the Cook County Jail, CHIEF THOMAS, individually and in his Official capacity as Chief of Security of Division Ten of the Cook County Jail, HELEN JACKSON, individually and in her official capacity as a mental health specialist, and COOK COUNTY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**DEFEENDANTS' ANSWER TO PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

1

NOW COME Defendants Thomas Dart, Sheriff of Cook County, Salvador Godinez, Michael Figliulo, Chester Plaxico, John Mueller, David Fagus, John Manos, Victor Thomas, Thomas Snooks, America Velez and Cook County through their attorney ANITA ALVAREZ, State's Attorney of Cook County, through her assistant, Assistant State's Attorney KEVIN FREY, and answers Plaintiffs' Third Amended Class Action Complaint as follows:

## NATURE OF THE CASE

1.      This is a class action lawsuit brought pursuant to 42 U.S.C. § 1983 to redress numerous violations of Plaintiffs' and the class members' clearly established due process rights under the Fourteenth Amendment to the United States Constitution; pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12131 et seq., and the Rehabilitation Act, 29 U.S.C. § 794, to be free of discrimination on account of their disabilities; pursuant to other federal law; and pursuant to state law for claims arising from the same transactions and occurrences.  Plaintiffs, and the class members, are, were, or will be, detainees at the Cook County Jail ("CCJ").  As alleged and defined below, Plaintiffs seek to represent a Class, and several subclasses, including subclasses of mentally ill detainees.

**ANSWER:**    Defendants admit that Plaintiffs have filed this lawsuit pursuant to 42 U.S.C. § 1983.  Defendants deny all remaining allegations in this paragraph.

## INTRODUCTION

2.      America's prisons have become the new mental institutions.  Fifty years ago, half a million mentally ill Americans lived in public mental health hospitals.  In 2002, fewer than eighty thousand people did.  At the same time the mentally ill were being deinstitutionalized and released to treatment—or lack of treatment—by chronically underfunded programs, the U.S. rate

2

of incarceration soared. The Bureau of Justice Statistics <u>Special Report: Mental Health</u> <u>Problems of Prison and Jail Inmates,</u> (hereinafter "Bureau of Justice Report"), authors D. James and L. Glaze, dated September, 2006, revised December 14, 2006, stated that "[a]t midyear 2005 more than half of all prison and jail inmates had a mental health problem, including 705,600 inmates in State prisons . . . . These estimates represented 56% of State prisoners . . . ." (*Id*. p. 1.) The Bureau of Justice Statistics was established by federal law in the Justice Systems Improvement Act of 1979.

> **ANSWER:** Defendants are without sufficient information to either admit or deny the allegations in this paragraph.

3. As alleged below, the CCJ has responded to this increasing problem with regard to Plaintiffs and the class by simply ending their necessary mental health treatment, by providing inadequate treatment, or by intentionally misdiagnosing seriously mentally ill detainees as non-mentally ill. For example, with regard to the RTU Subclass, prior to May 2008, Plaintiffs and the RTU Subclass were housed in the Residential Treatment Unit ("RTU") of the CCJ, which was equipped to provide some treatment of their mental health problems. But on or about May 2008, without any basis and with complete indifference to the welfare and constitutional rights of the Plaintiffs and RTU Subclass, the Defendants closed the RTU and transferred the Plaintiffs and the RTU Subclass from the RTU into divisions that are not equipped to provide treatment or handle their mental health needs. Since this transfer, Plaintiffs and the RTU Subclass have been further deprived of necessary mental health treatment, causing them both mental and physical harm, and also exposing them to potential life-ending situations from suicide, and increased violence. Such treatment of mentally ill *pretrial* detainees—who have not been convicted of the

crime charged and are presumed innocent—offends the United States Constitution, federal law, the Illinois Constitution, and the most basic sense of humanity.

      **ANSWER:**    Defendants deny the allegations in this paragraph.

      4.      As the United States Department of Justice recently concluded "CCJ fails to adequately protect inmates from harm and serious risk of harm from staff and other inmates; fails to provide inmates with adequate medical and mental health care; fails to provide adequate suicide prevention; fails to provide adequate fire safety precautions; and fails to provide safe and sanitary environmental conditions."  (July 11, 2008 Report of the Civil Rights Division of the United States Department of Justice at 9 (hereinafter "DOJ Report"), a copy of which is attached hereto as Exhibit A.)  As the DOJ's press release indicated in summarizing that scathing 98 page report, "The Cook County Jail has an obligation to provide conditions of confinement that do not offend the Constitution and take reasonable measures to protect inmates from harm . . . .  This investigation clearly found that the jail failed that test."  (July 17, 2008 DOJ Press Release, attached hereto as Exhibit B at 2.)  That press release further noted that "a myriad of unconstitutional practices remain at the jail."  (*Id.* at 3 (internal punctuation omitted).)

      **ANSWER:**    Defendants deny the allegations in this paragraph.

      5.      Defendants' policies and procedures—or lack thereof—are responsible for the failures identified in the DOJ Report and as alleged below.  Defendants' conduct has resulted in grossly inadequate treatment of these mentally ill pretrial detainees, which has caused direct physical and mental harm and suffering to the Plaintiffs and the class, and also creates a constant, serious risk of harm for both mentally ill inmates and inmates without mental illnesses.

      **ANSWER:**    Defendants deny the allegations in this paragraph.

6.      Moreover, Defendants have also violated Plaintiffs and the class members'
constitutional due process rights by failing to ensure that the conditions of confinement meet
those required by the Constitution.  As alleged below, the conditions in the CCJ where the
Plaintiffs and class members reside are inhumane and have caused Plaintiffs and the class
members to suffer physical and mental harm.

**ANSWER:**    Defendants deny the allegations in this paragraph.

7.      Based on the wrongful conduct of the Defendants as alleged in more detail below,
Plaintiffs, for themselves and on behalf of the class, seek a judgment declaring the Defendants'
conduct unconstitutional, an injunction against Defendants' unlawful conduct, and monetary
relief.

**ANSWER:**    Defendants admit that Plaintiffs seek declaratory, injunctive and monetary
relief.  Defendants deny all remaining allegations in this paragraph.

## JURISDICTION AND VENUE

8.      The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331 and
1343(a)(3) and (4), as this case arises under the Fourteenth Amendment to the Constitution of the
United States and 42 U.S.C. § 1983.  This Court has jurisdiction over the State law claims under
28 U.S.C. § 1367.

**ANSWER:**    Defendants admit the allegations in this paragraph.

5

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because at least one Defendant resided in this Judicial District, and a substantial part of the events giving rise to the claim occurred in Illinois, within this Judicial District's borders.

**ANSWER:**    Defendants admit that venue is proper in this Judicial District.  Defendants deny the remaining allegations in this paragraph.

## PARTIES

10.    Plaintiff Derrick Haynes ("Haynes") is a pretrial detainee at the CCJ, number 20070077847.  Haynes is a resident of Cook County, State of Illinois.  Plaintiff Haynes was housed in the RTU until Defendants terminated the RTU program and transferred the detainees to other non-RTU divisions.  Plaintiff Haynes has filed no other lawsuits dealing with the same facts involved in this action or otherwise relating to his current imprisonment.

**ANSWER:**    Defendants admit that Plaintiff Haynes is a pretrial detainee at the Cook County Jail.  Defendants deny that the RTU program was terminated.  Defendants are without sufficient information to either admit or deny the remaining allegations in this paragraph.

11.    Plaintiff Thomas M. Perconti ("Perconti") was a pretrial detainee at the CCJ, number 20070035070.  Plaintiff Perconti was housed in the RTU until Defendants terminated the RTU program and transferred the detainees to other non-RTU divisions.  Perconti is now incarcerated at the Lawrence Correction Center, in Lawrence, Illinois.  Perconti is a resident of Cook County, State of Illinois.  Plaintiff Perconti has filed no other lawsuits dealing with the same facts involved in this action or otherwise relating to his current imprisonment.

**ANSWER:** Defendants admit that Plaintiff Perconti was a pretrial detainee at the Cook County Jail. Defendants deny that the RTU program was terminated. Defendants are without sufficient information to either admit or deny the remaining allegations in this paragraph.

12. Plaintiff Charles B. Hill ("Hill") is a pretrial detainee at the CCJ, number 20050084808. Plaintiff Hill was housed in the RTU until Defendants terminated the RTU program and transferred the detainees to other non-RTU divisions. Hill is a resident of Cook County, State of Illinois. Plaintiff Hill has filed no other lawsuits dealing with the same facts involved in this action. Plaintiff Hill filed a lawsuit in 2008 against Defendants Cook County, Thomas Dart, Salvador Godinez, David Fagus, and additional defendants not named in this lawsuit, including two dentists. That case is still pending in this Judicial District as Case Number 08-cv-1917 before Judge Shadur.

**ANSWER:** Defendants admit that Plaintiff Hill is a pretrial detainee at the Cook County Jail. Defendants deny that the RTU program was terminated. Defendants are without sufficient information to either admit or deny the remaining allegations in this paragraph.

13. Plaintiff Fred Rogers ("Rogers") is a pretrial detainee at the CCJ, number 20070020387. Plaintiff Rogers was housed in the RTU until Defendants terminated the RTU program and transferred the detainees to other non-RTU divisions. Rogers is a resident of Cook County, State of Illinois. Plaintiff Rogers has filed no other lawsuits dealing with the same facts involved in this action or otherwise relating to his current imprisonment.

**ANSWER:** Defendants admit that Plaintiff Rogers is a pretrial detainee at the Cook County Jail. Defendants deny that the RTU program was terminated. Defendants are without sufficient information to either admit or deny the remaining allegations in this paragraph.

14.     Defendant Thomas Dart ("Dart") is the Sheriff of Cook County.  Dart is legally responsible for the overall operation of the Sheriff's Office and each institution under that office's jurisdiction including the CCJ.

**ANSWER:**  Defendants admit that Thomas Dart is the Sheriff of Cook County. Defendants deny the remaining allegations in this paragraph.

15.     Defendant Salvador Godinez ("Godinez") is the Executive Director of the CCJ. Godinez is legally responsible for the operation of the CCJ, and each and every Division and Department of the CCJ.

**ANSWER:**  Defendants admit that Salvador Godinez is the Executive Director of the CCJ.  Defendants deny the remaining allegations in this paragraph.

16.     Defendant Chester Plaxico ("Plaxico"), Star Number 114, was the Chief of Security of Division Ten of the CCJ.  Plaxico is legally responsible for the welfare and security of all pretrial detainees housed in Division Ten.

**ANSWER:**  Defendants admit Chester Plaxico was the Chief of Security of Division 10.  Defendants deny the remaining allegations in this paragraph.

17.     Defendant Michael Figliulo ("Figliulo") is the former Superintendent of Division Ten.  Figliulo who was legally responsible for the security and welfare of the pretrial detainees housed in Division Ten.

**ANSWER:**  Defendants admit Michael Figliulo is the former Superintendent of Division Ten.  Defendants deny the remaining allegations in this paragraph.

18.     Defendant Superintendent Thomas Snooks ("Snooks") is the Superintendent of Division Ten.  Snooks is legally responsible for the security and welfare of the pretrial detainees housed in Division Ten.

**ANSWER:**     Defendants deny the allegations in this paragraph.


19.     Defendant Sergeant Manos ("Manos") is a corrections officer assigned to Division Ten.  Defendant Manos is legally responsible for the security and welfare of the pretrial detainees housed in Division Ten.

**ANSWER:**     Defendants admit that Sergeant Manos is a corrections officer. Defendants deny the remaining allegations in this paragraph.


20.     Defendant John Mueller ("Mueller") is the Supervisor of Program Services for the Cook County Department of Corrections ("CCDOC") including the CCJ.  Upon information and belief, Mueller's duties include acting as the keeper of all detainee grievances and administering the grievance process.  Mueller is charged with the responsibility of processing detainee grievances, and forwarding them to the next level of the grievance system if they cannot be resolved at his level.

**ANSWER:**     Defendants admit that John Mueller is a Supervisor for Program Services for the Cook County Department of Corrections.  Defendants deny the remaining allegations in this paragraph.


21.     Defendant David Fagus ("Fagus") is the Chief Operating Officer of Defendant Cermak Health Services of Cook County.  Upon information and belief, in that capacity, Fagus is

9

responsible, *inter alia*, for ensuring that the practices of Cermak Health Services complies with federal and state requirements for the treatment of detainees. Fagus has implemented, enforced, or condoned the use of procedures challenged in this case.

**ANSWER:**   Defendants deny the allegations in this paragraph.

22.    Defendant Officer America Velez ("Velez") is a correctional officer at the Cook County Jail that is assigned to, or was assigned to, Division Ten. Defendant Velez is legally responsible for the security and welfare of the pretrial detainees housed in Division Ten.

**ANSWER:**   Defendants admit that America Velez is a corrections officer. Defendants deny the remaining allegations in this paragraph.

23.    Defendant Chief Thomas ("Thomas") is the new Chief of Security of Division Ten of the CCJ. Thomas is legally responsible for the welfare and security of all pretrial detainees housed in Division Ten.

**ANSWER:**   Defendants deny the allegations in this paragraph.

24.    Defendant Helen Jackson ("Jackson") was a mental health specialist employed by Defendants and working in the CCJ. Defendant Jackson was at the times relevant to this action assigned as the mental health specialist to Tier 2-D of Division X of the CCJ. Upon information and belief, Defendant Jackson was responsible for providing mental health services to all pretrial detainees assigned to that Tier. Upon information and belief, Defendant Jackson is no longer employed by the Defendants and currently resides in Evanston, Illinois.

**ANSWER:**   Defendants are without sufficient information to either admit or deny the allegations in this paragraph.

10

25.     Defendant Cook County is a county of the State of Illinois.  Cook County oversees and is legally responsible for the Cook County Department of Corrections, which in turn operates the CCJ.  Cook County also oversees and is legally responsible for the Cook County Department of Health, which in turn operates Cermak.

**ANSWER:**    Defendants admit that Cook County is a county of the State of Illinois. Defendants deny all remaining allegations in this paragraph.


## FACTS

26.     Plaintiffs and the Class are comprised of pretrial detainees that are, were, or will be, confined at the CCJ.  The Class is further divided into four subclasses:  (1) the Mental Health Injunctive Relief Subclass; (2) the Mental Health Damages Subclass; (3) the RTU Subclass; and (4) the Grievance Subclass.  These subclasses are defined below.

**ANSWER:**    Defendants are without sufficient information to either admit or deny the allegations in this paragraph.


27.     The CCJ is one of the largest detention centers in the world.  CCJ has a daily population of approximately 9,800 adult male and female inmates.  (Ex. A, DOJ Report at 3.)  In 2006, CCJ admitted 99,663 inmates.  (*Id.*)  CCJ is staffed by approximately 3,800 sworn law enforcement officers and civilian employees.  (*Id.*)  According to the website of the Isaac Ray Center, a nonprofit organization that provides psychiatric and psychological services to the CCJ through Cermak, approximately 10% of CCJ's inmates are diagnosed with mental illness that require treatment.  (http://www.isaacraycenter.com/Cermak_/body_cermak_.html.)  The 10% diagnosis rate of Isaac Ray Center is inconsistent with the findings of the federal government

that approximately 50% of the population of state jails are mentally ill. (*See* Bureau of Justice

Report at 1 (finding that "[a]t midyear 2005 *more than half* of all prison and jail inmates had a

mental health problem, including 705,600 inmates in State prisons . . . . These estimates

represented 56% of State prisoners . . . .") (emphasis added).) This massive gap between the

56% figure cited by the Bureau of Justice Report and the 10% figure of Isaac Ray Center

demonstrates that CCJ's uniform policies, practices, and customs fail to diagnose large numbers

mentally ill pretrial detainees meaning that such detainees are completely deprived of all

necessary mental health treatment.

> **ANSWER:** Defendants deny the allegations in this paragraph.

28.     CCJ is one of the worst, if not the worst, run detention centers in the country. The

CCJ is rife with deplorable conditions of confinement. (*See generally* DOJ Report and *infra*.)

As the DOJ Report summarizes: "CCJ fails to adequately protect inmates from harm and serious

risk of harm from staff and other inmates; fails to provide inmates with adequate medical and

mental health care; fails to provide adequate suicide prevention; fails to provide adequate fire

safety precautions; and fails to provide safe and sanitary environmental conditions." (Ex. A,

DOJ Report at 9.)

> **ANSWER:** Defendants deny the allegations in this paragraph.

## I.     The Residential Treatment Unit.

29.     The RTU was designed and structured to tend to the serious mental health needs

of the Plaintiffs and class. According to the website of the Isaac Ray Center, a nonprofit

organization that provides psychiatric and psychological services to the CCJ through Cermak:

> The nine (9) dormitory, 282 bed Residential Treatment Unit (RTU) in Division VIII houses male detainees with varying degrees of mental health problems who would be typically managed in a hospitalized setting of a state mental health facility.  Six (6) RTU dormitories are primarily for patients in need of intermediate care level of treatment.  In addition, three (3) dormitories are designated as subacute for patients with more severe and chronic disorders.  Intermediate level treatment activities include psychological and psychiatric evaluation, medication management, crisis intervention, group counseling and therapy, expressive therapy, and milieu activities. The subacute dorm provides a supportive, psychotherapeutic milieu for chronically mentally ill and mentally impaired patients. Treatment activities are geared toward reality orientation and basic social skills training.
>  Patients who no longer require this level of specialized care in the RTU are transferred to general population housing to be managed on an "outpatient" basis through the monthly medication clinics, or more frequent visits as dictated by their treatment plan.
>  Male detainees who return to the jail after being remanded to the State mental health hospital by the courts are initially housed in the RTU.

(*See* http://www.isaacraycenter.com/Cermak_/body_cermak_.html)

**ANSWER:**  Defendants are without sufficient information to either admit or deny the allegations in this paragraph.


30.  Plaintiffs and the class's living environment in the RTU was a dorm style setting where they were under direct and constant round the clock observation by mental health specialists and guards.  The RTU did not use cells to house the detainees, and the detainees could speak with a therapist at any time of the day or night.  In the RTU, the detainees were able to access their bed whenever they wanted, so that they could lay down after being medicated.  The RTU was also equipped with therapeutic programs that attempted to address and tend to the needs of mentally ill detainees suffering from various mental illnesses.  These programs and treatments are necessary, but not sufficient, to properly care for Plaintiffs and the class.

**ANSWER:**  Defendants deny the allegations in this paragraph.

II.     **Defendants Deprived Plaintiffs And The RTU Subclass Of Their Rights By Arbitrarily Closing The RTU And Transferring Plaintiffs And The RTU Subclass Out Of The RTU And Into Divisions Without Adequate Mental Health Treatment Capabilities.**

31.     Until earlier this year, Plaintiffs and the RTU Subclass members were housed in Division Eight of the CCJ, which was a Residential Treatment Unit.  Upon information and belief, on May 20, 2008 and on additional times surrounding that date, a total of approximately 300 to 400 pretrial detainees housed in the RTU were transferred from the RTU to other Divisions designed to house general population detainees, not mentally ill detainees.  Upon information and belief, between 300 to 400 mentally ill pretrial detainees fall into the RTU Subclass and were transferred from the RTU to other divisions.

**ANSWER:**     Defendants deny the allegations in this paragraph.


32.     On or about May 20, 2008 at 6:30 p.m. Plaintiffs and some members of the RTU Subclass were collectively ordered by Dr. Jones and Officer Bojas to gather their respective belongings because Plaintiffs and the class were going to be transferred to Division Ten, a maximum security division, for permanent housing.  Upon information and belief, Dr. Jones is employed by Defendant Cermak.  Upon information and belief, Officer Bojas is employed by the CCDOC, and acts under the supervision and control of Sergeant Salami and Lieutenant Anderson, both of whom are, upon information and belief, employed by the CCDOC.

**ANSWER:**     Defendants are without sufficient information to either admit or deny the allegations in this paragraph.


33.     Upon arrival in Division Ten, Tier 3C, some of the RTU Subclass members were physically shoved into the cells.  The RTU Subclass members were informed by officers, whose

names are currently unknown to the Plaintiffs, that the RTU Subclass members were no longer considered "Psych-Classified Detainees," and that the "psych program [the class members] were accustomed to no longer exists." The abrupt ending to necessary treatment was emotionally and psychologically damaging. Upon information and belief, this transfer of Plaintiffs and other members of the RTU Subclass was similar to other transfers that occurred close in time with regard to the remainder of the RTU Subclass as the RTU was closed to male detainees and all such mentally ill detainees were moved to other Divisions.

**ANSWER:** Defendants deny the allegations in this paragraph.


34. Furthermore, upon information and belief, the decision to terminate the RTU program and transfer Plaintiffs and the RTU Subclass to other Divisions had nothing to do with the medical diagnoses of Plaintiffs and the RTU Subclass or their mental health needs, but rather was a decision made based upon non-medical and non-security factors.

**ANSWER:** Defendants deny the allegations in this paragraph.


35. Defendants have also now implemented, created, or authorized a policy, practice, procedure, or custom that splits the mentally ill population between two Divisions (Division Two and Division Ten) based on detainees' respective security classifications (*i.e,* Minimum, Medium, or Maximum), and not based upon the mentally ill detainee's respective mental health needs. Upon information and belief, for the seventeen plus years prior to the closing of the RTU in 2008, security classifications were not the basis for making Division assignments for mentally ill patients; rather, mentally ill detainees of different security classifications co-existed amongst each other and were treated equally based on their needs for psychological treatment exclusively. This arbitrary change in policy, practice, or custom demonstrates that Defendants are making

medical decisions based upon non-medical factors. This arbitrary change in policy, practice, or custom also demonstrates that all Defendants are acting with deliberate indifference to the serious mental health needs of the Plaintiffs and the class members, and also are discriminating against them based upon their disability as further alleged below.

**ANSWER:** Defendants deny the allegations in this paragraph.

36. Defendants' decision and conduct in implementing, creating, condoning, or carrying out this policy or custom of terminating the RTU program, and uniformly transferring Plaintiffs and the RTU Subclass out of the RTU violated Plaintiffs' and the RTU Subclass members' constitutional rights to due process under the Fourteenth Amendment to the United States Constitution.

**ANSWER:** Defendants deny the allegations in this paragraph.

37. Defendants knew the closure of the RTU would harm and deprive Plaintiffs and the RTU Subclass of necessary mental health treatment. This is demonstrated by numerous facts including the fact that the decision was made by Defendants despite strong objections by most if not all of the trained mental health specialists and doctors that treat Plaintiffs and the RTU Subclass. In fact, upon information and belief, Dr. Eileen Couture, who was previously in charge of Cermak's mental health programs, issued a scathing 15 page written report against the closure of the RTU. Despite that report and the other objections of the doctors and staff Defendants, including Defendant Dart and Godinez, made the decision to close the RTU to Plaintiffs and the class.

**ANSWER:** Defendants deny the allegations in this paragraph.

16

38.     Defendants, including Defendants Dart, Godinez, and Cook County, were deliberately indifferent to the harm that would be suffered by the Plaintiffs and class, and it was this deliberate indifference that allowed Defendants to ignore the medical advice and strong objections of their doctors and mental health employees.  Defendant Godinez told CCJ correctional officers during a routine meeting that "CCJ has one of the lowest suicide rates in the country, we can afford a few deaths" and that is one of the reasons Godinez was willing to close the RTU and transfer Plaintiffs and the class to a non-RTU environment--he simply didn't care if a few detainees committed suicide so long as it didn't cause CCJ's suicide rate to get too high.

**ANSWER:**     Defendants deny the allegations in this paragraph.


39.     As a direct result of Defendants' wrongful conduct and deliberate indifference, Plaintiffs and the RTU Subclass members have been subjected to many more fights and disturbances than had occurred while in the RTU.  This includes gang-related fights that have occurred without any correction officers present on the tier.  Other attacks have occurred while the only correction officers present were observed playing cards in the control area leaving the tier completely uncontrolled without any active monitoring.  Upon information and belief, the CCDOC and CCJ's incident and disciplinary reports will document the increased number of fights and disturbances.  Also as a direct result of Defendants' deliberate indifference and wrongful conduct, Plaintiffs and the RTU Subclass have suffered from increased anxiety issues, increased stress levels, sleep deprivation, agitation, headaches, depression, nausea and overall increased tensions.

**ANSWER:**     Defendants deny the allegations in this paragraph.

III.   **Defendants Have Violated Plaintiffs' And The Class's Constitutional Right To Mental Health Treatment, And Wrongfully Discriminated Against Them On The Basis Of Their Disability.**

40.     Since being transferred from the RTU, Plaintiffs and the RTU Subclass have been further deprived of the mental health services and programs necessary to care for their mental health conditions.   Plaintiffs and the RTU Subclass are now receiving the same level of grossly inadequate care as the rest of the class.  Plaintiffs and the class have also been deprived of proper medical care, including even medicine that has been prescribed to them under the inadequate mental health treatment regime at CCJ.  Plaintiffs and the class members have not received necessary medicine on several occasions.  Defendants' procedure for passing out prescribed medication is inadequate and results in misdistribution of medicine and numerous other problems.  As a result, Plaintiffs and the class have experienced a deterioration of their mental health.

**ANSWER:**    Defendants deny the allegations in this paragraph.

41.     Many employees of Defendants have made party admissions about the inadequate care provided to Plaintiffs and the class.  One mental health specialist for Cermak has told Plaintiffs on numerous occasions that they are receiving improper healthcare, and that they are supposed to be receiving 15 hours of therapy a week, even though some of the Plaintiffs currently receive no therapy at all, and none receives the requisite 15 hours a week.  Another Doctor for Cermak stated that Plaintiffs and the class are not getting adequate medical care and argued with one of the Defendants about this issue in front of Plaintiffs.  Several other doctors have told Plaintiffs that the decision to close RTU was wrong, harmed Plaintiffs and the class, and that the class is not receiving adequate mental health treatment.  Upon information and belief, most if not all of the Cermak doctors and specialists believe that the treatment being

18

received by Plaintiffs and the class is inadequate and that the RTU should not have been closed. Based upon these allegations, it is apparent that the entire class, comprised of all mentally ill pretrial detainees, are receiving inadequate mental health care due to Defendants' uniform failures and uniform policies that violate the United States Constitution, federal law, and the Illinois Constitution.

       **ANSWER:**   Defendants deny the allegations in this paragraph.

       42.    Upon information and belief, Defendants have also implemented, created, or authorized a policy or custom that avoids treating inmates with mental illness by failing to identify inmates with mental illness or by setting and using criteria to classify mental illness that is designed not to correctly identify such mental illness. For example, upon information and belief, the initial "screening" process for detainees completely misses seriously mentally ill detainees and only would determine a person is mentally ill and in need of treatment if that person told the screener they had been previously diagnosed. In fact, upon information and belief, detainees that were previously diagnosed as mentally ill by Cermak at prior times at the CCJ may not be flagged as mentally ill by this initial screening because the screeners either do not have access to the prior records, the records are inadequately maintained, or the screeners fail to check such records. The fact that Defendants Dart, Godinez, Mueller, Fagus, Cermak, and Cook County have intentionally implemented, created, or authorized, policies, procedures, practices, or customs that massively under-diagnose mental illness in the pretrial detainee population is demonstrated by the fact that a nonprofit organization that provides psychiatric and psychological services to the CCJ through Defendant Cermak states that approximately 10% of CCJ residents are diagnosed with mental illness that requires treatment, whereas the independent Bureau of Justice Report indicates that approximately 56% of state inmates are mentally ill.

**ANSWER:**     Defendants deny the allegations in this paragraph.

43.     As further alleged below, Defendants have implemented, created, or authorized policies, procedures, practices, or customs that have failed to provide necessary mental health treatment to Plaintiffs and the class.  Defendants have also failed to properly administer mental health treatment in a consistent and continuous manner, and failed to have an effective plan for transitioning Plaintiffs and the RTU Subclass from the RTU to other Divisions.  These failures include ignoring medical advice from mental health specialists and doctors, and even affirmatively barring such doctors from visiting their patients.  As a proximate result of these policies, practices, procedures, or customs, and/or the failure to have effective plans, Plaintiffs and the class have been deprived of necessary mental health care.  As a result, Plaintiffs and the class's psychological state has been deteriorating rapidly day-by-day, and they are suffering both physical harm and injury and mental and emotional harm and injury.

**ANSWER:**     Defendants deny the allegations in this paragraph.

44.     All Defendants have failed to provide proper staff for the mentally ill pretrial detainees that are now being housed in other non-RTU Divisions.  Most of the correctional officers monitoring these non-RTU Divisions are not psych-trained. This lack of training has put every mentally ill pretrial detainee in danger of serious physical and mental harm because these officers do not understand the serious mental needs of the detainees being housed here.  As a result, there has been an increase in the use of excessive force by these officers on the pretrial detainees, and Plaintiffs and the class have also suffered severe mental distress and corresponding physical injury.  Upon information and belief, these non-psych-trained officers are inadequately prepared to address the increased tensions being experienced by Plaintiffs and the

20

class, which results in increased violence amongst the mentally ill pretrial detainees. The lack of training then causes these non-psych-trained officers to use excessive force to break up these fights that only occurred due to the officer's lack of proper training in dealing with mentally ill detainees. If these officers were properly trained they would be able to defuse the situation without the need for force. Upon information and belief, correctional officers often allow the detainees to continue fighting before calling a code 10-10 and forcibly breaking up the fight through the use of a choke-hold maneuver. This use of force is excessive because it is unnecessary. In the RTU similar types of situations would arise and the psych-trained officers were able to diffuse the situation without using any force.

**ANSWER:** Defendants deny the allegations in this paragraph.


45. Plaintiffs and the class are experiencing increased stress levels, sleep deprivation, agitation, headaches, depression, nausea and overall increased tensions as a result of Defendants wrongful conduct and deliberate indifference to Plaintiffs and the class's constitutional due process rights under the Fourteenth Amendment to the United States Constitution.

**ANSWER:** Defendants deny the allegations in this paragraph.


**IV. Defendants Are Deliberately Indifferent To Plaintiffs And The Class's Suicidal Tendencies.**

46. Plaintiffs have all been diagnosed with suicidal tendencies. Each of the Plaintiffs has attempted suicide on at least two occasions. Many of the class members are also suicidal. Despite this fact, Defendants continue to fail to properly monitor Plaintiffs and the class to protect them from suicide.

**ANSWER:** Defendants deny the allegations in this paragraph.

47.     Defendants have also exercised deliberate indifference in failing to provide adequate suicide prevention that complies with Constitutional standards.  Defendants have implemented, created, or authorized a policy, practice, procedure, or custom that houses mentally ill patients with known suicidal tendencies in divisions that lack appropriate monitoring systems to prevent suicide attempts, thereby creating a very serious risk of harm.  Plaintiffs and some class members who are under the care of Cermak, have an extensive history of prior suicide attempts.  The current suicide policy implemented by Defendants fails to ensure appropriate management of suicidal detainees and also lacks major components of an adequate suicide prevention program.  Due to Defendants inadequate suicide prevention policy, upon information and belief, there were two suicides committed at the CCJ within 30 days of each other between March 14, 2008 and April 14, 2008, and three suicides were committed at the CCJ during the first four months of 2008 according to the DOJ Report.  (DOJ Report at 3.)

**ANSWER:**     Defendants deny the allegations in this paragraph.


48.     As evidence of the deliberate indifference to Plaintiffs' and the class's risk of suicide, Defendant Godinez told CCJ correctional officers during a routine meeting that "CCJ has one of the lowest suicide rates in the country, we can afford a few deaths" and that is one of the reasons Godinez was willing to close the RTU and transfer Plaintiffs and the class to a non-RTU environment--he simply didn't care if a few committed suicide so long as it didn't cause CCJ's suicide rate to get too high.

**ANSWER:**     Defendants deny the allegations in this paragraph.

22

49.     Furthermore, despite the known suicidal tendencies of the Plaintiffs and the class members, Defendants continue to fail to properly monitor Plaintiffs and the class members to ensure they do not commit suicide.  This failure is exacerbated by the cancellation of the RTU program, because at the RTU there was constant round the clock visual surveillance of Plaintiffs and the RTU Subclass members.  In contrast, in the non-RTU Divisions, the general rule is that no one monitors Plaintiffs and the RTU Subclass in their cells during the night to ensure that they are not attempting suicide.

**ANSWER:**     Defendants deny the allegations in this paragraph.


50.     Defendants are fully aware of this problem and have failed to correct it. Defendants are aware that the correctional officers do not monitor the cells, and Defendants are aware that it is common for the correctional officers to instead play cards, or sleep on duty instead (in fact, a correctional officer was observed sleeping on duty by appointed counsel while appointed counsel was visiting Plaintiffs).

**ANSWER:**     Defendants deny the allegations in this paragraph.


51.     Defendants are further aware that although the correctional officers are apparently required to log their fifteen minute suicide cell checks, it is a regular practice for such written logs to contain false and inaccurate entries (*i.e.*, the logs will state that cells were checked when in fact they were not).  In fact, the DOJ Report noted that they "discovered pre-recorded security checks on housing unit logs, and also security logs that were suspiciously logged precise intervals throughout the shift without any deviation."  (DOJ Report at 35.)  Upon information and belief, logs are routinely falsified, guards regularly refuse to perform their required suicide checks, and guards often sleep on duty.

23

**ANSWER:**     Defendants deny the allegations in this paragraph.

52.     Plaintiffs and the class have also been regularly exposed to unnecessary lockdowns, including at least one extremely long lockdown that lasted nearly two-full days. These lockdowns are often caused by incidents that occur in other tiers and are, therefore, unnecessary.  During such lockdowns the Plaintiffs and the class members are deprived of any treatment, and they are isolated from any normal activities.  Such isolated conditions are tantamount to a form of torture especially when applied to mentally ill individuals such as Plaintiffs and the class members.  For Plaintiffs and the class, such conditions result in severe physical, mental and emotional harm, and cause their mental health conditions to deteriorate. Given the known pre-existing conditions of Plaintiffs and the class, imposing such lockdowns upon them is deliberate indifference to their medical and mental health needs.[1]

**ANSWER:**     Defendants deny the allegations in this paragraph.

53.     Furthermore, during such lockdowns the Plaintiffs and class members that have suicidal tendencies are more prone to suicidal thoughts.  For example, during a 41 hour

---

[1] A recent misuse of the lockdown procedure deserves inclusion in this Complaint because of the historical significance of the event and the arbitrary and malicious actions that apparently occurred.  As this Court knows, on November 4, 2008 the United States elected its first African-American president.  This was a particularly historic night for Chicagoans and African-Americans.  Many of the Plaintiffs and class members are African-Americans and Chicagoans. In at least one of the tiers that houses some Plaintiffs and some of the class members, the detainees were, like millions of other Americans, watching with pride and joy as the election results were delivered.  Upon information and belief, and without any security need but purely to harass and harm Plaintiffs and these class members, correctional officers in at least one tier ordered a "lockdown" which forced Plaintiffs and class members housed on that tier (or tiers) to go to their cells and deprived them of the ability to watch the election results on television, including President-elect Obama's historic speech.  Regardless of whether this single event is in and of itself a constitutional deprivation that is actionable, it serves as evidence of the malice and deliberate indifference that Plaintiffs and the class members face on a daily basis.

lockdown Plaintiff Haynes became suicidal and twice requested to speak with a mental health specialist. Plaintiff Haynes was refused this request by a non-psych trained corrections officer. Similarly, numerous other class members with known mental health disorders have experience similar increased suicide risk, and, upon information and belief, may in fact have committed suicide as a result.

**ANSWER:** Defendants deny the allegations in this paragraph.

54. Defendants also have endangered Plaintiffs and the class by passing out razors at night for the purpose of shaving and not collecting them at all, or not collecting them until the morning. These razors are made of a cheap plastic shell with actual razor blades inside. Plaintiffs and the class, many of whom have suicidal tendencies, could easily remove the razor blade and use them the night they received them to attempt suicide. Given the complete lack of any suicide watch, it is unlikely that such a suicide attempt would be prevented. This constitutes deliberate indifference to Plaintiffs and the class's constitutional rights, particularly given that there is no reason why these razors are not passed out in the morning and collected again while the detainees are outside of their cells. By passing out the razors at this time and in this manner, Defendants are increasing the likelihood of suicide attempts.

**ANSWER:** Defendants deny the allegations in this paragraph.

55. The above allegations demonstrate that Defendants are deliberately indifferent to the suicide risk of Plaintiffs and the class and that Defendants' uniform policies, procedures, practices, customs, acts, and omissions are causing a constitutional deprivation to the Plaintiffs and the class and causing them injury and harm.

**ANSWER:** Defendants deny the allegations in this paragraph.

**V.    Defendants Have Failed To Maintain The Minimum Constitutionally Required Conditions Of Confinement.**

56.    Defendants Dart, Godinez, Figliulo, Snooks, Thomas, Plaxico, Mueller, Manos, Velez and Cook County have also violated Plaintiffs' and the class's Fourteenth Amendment rights by failing to maintain proper conditions of confinement.  Specifically, but not limited to, these Defendants have confined Plaintiffs and the class is an unsanitized, filthy, rodent and insect infested cells.

**ANSWER:**    Defendants deny the allegations in this paragraph.

57.    The toilets which are in very close proximity to Plaintiffs and the class member's beds are unsanitized and discolored due to lack of cleaning supplies and lack of times when cell doors are open such that Plaintiffs and the class can clean their respective cells.  Plaintiffs and the class members are not provided with cleaning supplies to clean their cells.  This condition creates risk of physical injury and harm.

**ANSWER:**    Defendants deny the allegations in this paragraph.

58.    Upon information and belief, CCJ is generally infested with rodents, roaches, insects (including drain flies), and other vermin.  The rodents and roaches have on numerous occasions climbed into Plaintiffs' property boxes damaging commissary items.  The presence of these rodents and insects exposes Plaintiffs and the class to germs and diseases that endanger their physical health and well-being.  Defendants have failed to stop and prevent these infestations, despite full knowledge of their existence.  In fact, Officer Cashen stated, "rodents and insects are a common part of everyday life here in Cook County Jail."  Such conditions may

26

in fact be a part of everyday life at the CCJ, but under the United States Constitution, Defendants are charged with preventing them from being so. This inadequate living environment does not comport with minimal constitutional requirements, particularly for *pretrial detainees* that have not been convicted of the crimes with which they are charged.

   **ANSWER:**  Defendants deny the allegations in this paragraph.

   59.  Moreover, Defendants have brought in "pest control" for some tiers. But the extent of this pest control was to place glue traps in certain rooms, such as mechanical rooms that are locked. These traps have been placed weeks if not months ago and no one has yet to come and inspect or clean them. As a result, it is now apparent that some rats have died and are rotting in these rooms, and the smell permeates the CCJ such that Plaintiffs and the class members have to breathe the foul odor 24 hours a day. In some tiers, the detainees have taken sheets and towels and stuffed them around the door of these rooms to attempt to block the smell. Grievances have been filed regarding this condition, without action.

   **ANSWER:**  Defendants deny the allegations in this paragraph.

   60.  Furthermore, heavily medicated mentally ill detainee class members are often forced out of their cells several hours a day, 7 days a week and left with no other alternative but to sleep on cold concrete floors, steel benches and steel tables because they do not have access to their cell beds. This is in stark contrast to their treatment while in the RTU, where Plaintiffs and the RTU Subclass members always had access to their bed so that they could lay down after receiving medication. On or about July 1, 2008, Defendant Figliulo stated that he "did not care about all the detainees sleeping on the floor this is fine with me as long as they are not dead."

This statement demonstrates the deliberate indifference to Plaintiffs and the class's well being that is possessed by all Defendants.

**ANSWER:** Defendants deny the allegations in this paragraph.

61. As a result of this lock-out policy, many class members, including Plaintiff Haynes, are forced to sleep on the floor because they are medicated during this time period. As a result these class members suffer back injuries or pre-existing back injuries are exacerbated. Plaintiff Haynes has no choice but to lie down on the cold concrete floors when he is medicated during these periods of time. Plaintiff Haynes is experiencing severe back pain as a result of this inhumane and unconstitutional condition of confinement. Even worse, due to the rat and insect infestation at CCJ, while class members and Plaintiffs such as Plaintiff Haynes are sleeping on these cold concrete floors, they are also subject to being bitten and otherwise having rats and insects climb upon them. The floors are also contaminated with rat droppings and similar hazardous materials. Plaintiff Rogers also suffers from severe back pain that is caused by and exacerbated by being forced to sleep on concrete floors and steel benches. After filing numerous grievances and making several complaints about his back, he finally received a medical exam. That medical exam, an MRI, determined that Plaintiff Rogers suffered from degeneration to his vertebrae and several herniated disks. The further deterioration of Plaintiff Roger's back, and his physical injuries, pain, and suffering are a direct result of Defendants' deliberate indifference.

**ANSWER:** Defendants deny the allegations in this paragraph.

62. Defendants Dart, Godinez, Figliulo, Snooks, Mueller, Thomas, Plaxico, Manos, Velez, and Cook County also fail to provide sufficient sanitary conditions and requisite laundry service. As Officer Cashen stated: "I have been an employee here [at the CCJ] for 10 years and

28

there has consistently been a problem with sanitation, clean linen and regular clothing exchange on schedule in Division Ten." Officer Cashen also stated that "the linen they do have is in terrible shape the contracted laundry company never sends the correct amount of uniforms back nor is there ever enough disinfectant available to properly sanitize the living tiers." Plaintiffs and the class members regularly go weeks without a clean change of clothes. In fact, this is the norm. Plaintiffs and the class members never receive "fresh" clothes in less than several weeks time. When they do receive a change of clothes the tier is often not provided with correct sizes or sufficient number of fresh uniforms so some detainees may receive a change of clothes and others will not.

**ANSWER:** Defendants deny the allegations in this paragraph.

63. Plaintiffs also do not receive clean towels, undergarments or sheets. Plaintiffs and the class are forced to attempt to wash their own towels and undergarments using the one thin small motel like bar of soap they receive per week that is supposed to be used for showering. Plaintiffs and the class members do not receive any cleansing supplies to wash these items. Many class members have the same towel that they were issued when they first came to CCJ months, if not years ago. The situation with the sheets is worse (if that is possible). Not only do Defendants not provide clean linens with any regularity (it often takes weeks if not months to get fresh linens), what is worse is that the "fresh" linens are often more filthy than the old linens that were turned in. Thus, Plaintiffs and the class members are not only forced to sleep on dirty linens, they are not even their own dirty linens and they have no idea what the prior detainee may have done to those linens.

**ANSWER:** Defendants deny the allegations in this paragraph.

64.     Additionally, many detainees tear the sheets in strips in order to use those strips as laundry lines to hang their dirty clothes that they have attempted to wash in the shower.  These torn sheets continue to be used so the "fresh" linens a detainee might receive will not only still be dirty, it may also be torn so severely that it does not cover the bed.  Furthermore, most detainees do not have a blanket or pillow case, and several do not have any pillow at all.

**ANSWER:**     Defendants deny the allegations in this paragraph.


65.     Temperature regulation and air ventilation is also a severe problem at CCJ.  One half of the jail is abnormally hot and the other abnormally cold.  During winter times, those in the cold sections of CCJ have no ability to maintain body warmth and are prone to disease and sicknesses as a result.

**ANSWER:**     Defendants deny the allegations in this paragraph.


66.     The air quality is also abysmal.  The cell floors are extremely dusty and dirty. The walls in each cell are covered with black soot from years of previous detainees burning materials under the steel benches and tables to turn them into a form of grill in order to heat water and cook food totally uncontested by jail authorities.  Although such practices are prohibited and lighters and matches are considered contraband, detainees routinely save up old milk cartons and set them on fire in order to heat water and cook food.  Not only does the burning of milk cartons give off fumes that may be toxic, the cooking itself also creates the soot and other byproducts that greatly degrade the air quality.  This practice of cooking is so common that there are Youtube.com videos describing the practice, and correctional officers often jokingly post to the internet about it.

**ANSWER:**     Defendants deny the allegations in this paragraph.

30

67.     Not only do Defendants know of this practice, they encourage it.  First, it is often the guards that provide the detainees with the lighters and matches.  Second, guards often eat the food that is cooked by the detainees.  Third, the commissary that sells food and other items to the detainees carries many items that require, or strongly suggest, the use of some method of cooking.  For example, until recently the commissary carried coffee, hot cocoa, and other items, that would require hot water to use.  The commissary still continues to sell ground beef, chili, and similar items that one would generally only consume after it is heated or cooked.  Plaintiffs do not seek to have these items removed from the commissary list, rather the Defendants should provide a safe and clean way that these items can be heated.

**ANSWER:**     Defendants deny the allegations in this paragraph.


68.     The soot conditions interfere with the Plaintiffs and class members' normal respiratory function.  This is especially true for class members, such as Plaintiff Rogers and Plaintiff Perconti, who suffer from asthma or similar conditions.  Plaintiffs Perconti and Rogers's physical asthmatic condition is exacerbated by the inhumane conditions of confinement causing him physical pain and suffering and further deterioration of his mental health.

**ANSWER:**     Defendants deny the allegations in this paragraph.


69.     As a result many class members, such as Plaintiffs Perconti and Rogers, are forced to medicate their asthmatic conditions in the CCJ even though they had no need for such medicine while outside of the CCJ, which demonstrates the air conditions in the CCJ are harmful to all class members' health.

**ANSWER:**     Defendants deny the allegations in this paragraph.

31

70.     Furthermore, the walls in some tiers have blood and other bodily substances on it, and particularly in the gym there is blood and other bodily fluids on the walls.  These conditions pose significant health hazards for obvious reasons.

**ANSWER:**     Defendants deny the allegations in this paragraph.

71.     Additionally, some Defendants, including Defendant Manos and Velez, engage in affirmative conduct designed to degrade and harass Plaintiffs and the class members, and designed to cause them physical and mental injury.  Upon information and belief, Defendant Manos intentionally locks down the Division Ten Tier 2B on days he works as a form of "therapy" for the detainees without regard to any security need for such action.  Defendant Manos also harasses and makes jokes regarding the mental health conditions of the Plaintiffs and class members, and threatens to use pepper spray on them as a form of "therapy."  Defendant Manos also arbitrarily cancels recreation during days he works as a form of punishment and harassment without regard for any legitimate security or administrative need of the CCJ operations.  Defendant Manos also carries a large container of what is believed to be military-grade mace and threatens to use it on Plaintiffs and class members.  These actions cause deterioration of the Plaintiffs and class members physical and mental health, and neutralize the positive effects of any treatment they receive or received in the past.  Defendants also threaten to punish Plaintiffs and class members if they report these conditions to Court-ordered outside monitors such as the John Howard association.  For example, Defendant Snooks has told a detainee to shut the [expletive] up, when that detainee was attempting to inform Mr. Charles Fasano of the John Howard Association about the living conditions in CCJ.  Defendant Snooks has also threatened detainee class members that he would lockdown their tier if they told the

John Howard Association anything, and make everyone suffer for telling the truth about the inhumane conditions at the CCJ.

       **ANSWER:**    Defendants deny the allegations in this paragraph.

       72.     In short, the overall conditions Plaintiffs and the class members are forced to endure are extremely harsh and very unsafe, placing them at serious risk of harm, and causing both physical and mental harm.

       **ANSWER:**    Defendants deny the allegations in this paragraph.

**VI.**    **Defendants Snook, Mueller and Plaxico Intentionally Interfered With The Grievance Process.**

       73.     Defendant Mueller, Supervisor of Program Services, has taken Plaintiffs' grievances and improperly converted them into "requests" in order to avoid issuance of a control number, thereby preventing Plaintiffs' grievances from being processed according to the Cook County Department of Corrections grievance procedures.  In fact, the pre-printed grievance form itself has a check box that allows grievances to be arbitrarily converted to requests which renders the entire grievance process unavailable.  Upon information and belief, the use of that check box to convert a grievance to request is frequently used where the grievance relates to the need for medical or mental health treatment.  Accordingly, the grievance procedure is unavailable to Plaintiffs and the class.

       **ANSWER:**    Defendants deny the allegations in this paragraph.

       74.     Additionally, some of the Defendants have engaged in affirmative threats to make the grievance procedure unavailable.  On or about June 4, 2008, Defendant Plaxico ordered

Plaintiffs and the class members to "stop filing grievances this is jail and it is what it is!" Defendant Plaxico was at that time the Chief of Security for Division Ten, and in that capacity was one of the highest level authority figures in contact with Plaintiffs and the class members. Under the conditions of their confinement, this statement made by Defendant Plaxico could only be interpreted as a threat to stop filing grievances, rendering all grievance procedures unavailable to Plaintiffs and the class. This type of conduct is consistent with other actions taken by Defendants in which they threatened to punish Plaintiffs and class members if they report any constitutional violations to the Court-ordered outside monitors such as the John Howard association. For example, as previously stated, Defendant Snooks has told a detainee to shut the [expletive] up, when that detainee was attempting to inform Mr. Charles Fasano of the John Howard Association about the living conditions in CCJ. Defendant Snooks has also threatened detainee class members that he would lockdown their tier if they told the John Howard Association anything, and make everyone suffer for telling the truth about the inhumane conditions at the CCJ. Defendants Manos and Velez have also interfered with the grievance process by, *inter alia*, refusing to provide Plaintiffs and the class with grievance forms, refusing to accept grievance forms, threatening and/or harassing Plaintiffs and the class in a manner designed to stop them from filing grievances, and engaging in other wrongful conduct.

**ANSWER:** Defendants deny the allegations in this paragraph.

## VII. Additional Allegations Relating To Plaintiffs And Defendants.

75. Plaintiff Haynes was diagnosed as mentally ill by Cermak at the CCJ. Plaintiff Haynes is bi-polar and has been prescribed with several medications. Plaintiff Haynes is also an alcoholic. Plaintiff Haynes also has been diagnosed with suicidal tendencies, and has attempted suicide while detained at the CCJ. Defendants are aware of this suicide attempt but despite that

fact, they continue to fail to properly monitor him (or any class members) as alleged and discussed above.

**ANSWER:**    Defendants deny the allegations in this paragraph.


76.    Plaintiff Perconti was diagnosed by Cermak while in CCJ as bi-polar and manic depressive.  Plaintiff Perconti has also been diagnosed with suicidal tendencies.  Plaintiff Perconti is also a recovering alcoholic and drug addict.  Plaintiff Perconti also suffers from Post Traumatic Stress Disorder because he was shot in the head.  Plaintiff Perconti has twice attempted suicide, but not while at the CCJ.  Defendants are aware of these suicide attempts. Despite knowledge of his suicidal tendencies, Defendants continue to fail to properly monitor him (or any class members) as alleged and discussed above.

**ANSWER:**    Defendants deny the allegations in this paragraph.


77.    Plaintiff Hill was diagnosed as depressed with psychotic tendencies and with Post Traumatic Stress Disorder by Cermak at the CCJ.   Plaintiff Hill also suffers from suicidal tendencies and has attempted suicide on three occasions while detained in the CCJ.  All three attempts were made by ingesting a significant number of pills, that were obtained from other inmates that hoard their medication in order to sell to other detainees.  The most recent suicide attempt was in 2008 when Plaintiff Hill took approximately 20 pills in front of a corrections officer.  Plaintiff Hill was rushed to the hospital to treat his overdose.  Despite these attempts and the method of his attempt, Defendants do not check Plaintiff Hill's cell for a stash of pills that he might build up in order to attempt suicide again, nor do they examine other detainee's cells for similar pill stashes.  Plaintiff Hill served in the Army and is a veteran of Desert Storm, and

suffers from Post Traumatic Stress Disorder as a result. Plaintiff Hill also served as a police officer for several suburban police forces.

**ANSWER:**    Defendants deny the allegations in this paragraph.

78.    Plaintiff Rogers was diagnosed as bi-polar with suicidal tendencies in approximately 1980 in Tennessee. Plaintiff Rogers was also diagnosed as bi-polar with suicidal tendencies upon his admission to the CCJ in 2007. Plaintiff Rogers has attempted suicide on at least three occasions. The first attempt was in 1976 at approximately 16 years of age when Plaintiff Rogers drove his car into a tree at high speed and ended up in a coma for nearly three months. In 2000, Plaintiff Rogers attempted suicide by taking an overdose of pills. As a result, Plaintiff Rogers was again diagnosed as bi-polar and prescribed Zoloft. Most recently, in 2007, Plaintiff Rogers attempted suicide at the CCJ when he learned of the charges against him. Plaintiff Rogers banged the back of his head repeatedly and forcefully against steel wall of the cell with the intent to kill himself. After several minutes of repeated banging, a guard finally came to his cell and rushed him to the hospital.

**ANSWER:**    Defendants deny the allegations in this paragraph.

79.    While at the RTU, Plaintiff Haynes, Perconti, and Rogers all attended Alcoholics Anonymous ("AA") meetings on a regular basis. Those AA programs are no longer available to them since the termination of the RTU program.

**ANSWER:**    Defendants are without sufficient information to either admit or deny the allegations in this paragraph.

80.     While at the RTU, all four Plaintiffs, Haynes, Perconti, Rogers, and Hill attended the art-therapy program and philosophy programs.  All four Plaintiffs, Haynes, Perconti, Rogers, and Hill also had available one on one counseling every day, whenever they needed it.  Plaintiffs also participated in various other programs and therapy groups that are no longer available to them.  For example, Plaintiff Hill participated in a group for veterans.

**ANSWER:**    Defendants are without sufficient information to either admit or deny the allegations in this paragraph.

81.     Since the RTU program was terminated and Plaintiffs and the RTU Subclass were transferred to non-RTU Divisions, the programs discussed above are no longer available to Plaintiffs.

**ANSWER:**    Defendants deny the allegations in this paragraph.

82.     Moreover, although CCJ is required to provide a mental health specialist for all mentally ill detainees, the mental health specialist assigned to Plaintiffs Haynes and Perconti's tier refuses to speak with any detainees other than one detainee that is her friend.  Upon information and belief, this particular detainee was transferred to a new tier away from this mental health specialist because of her failure to treat any detainees other than him.  But because the RTU program was cancelled, this detainee is now assigned to a tier that has this same mental health specialist, and as a result all other detainees in that tier receive no counseling at all. Defendants are aware of this problem, and are deliberately indifferent to it.

**ANSWER:**    Defendants deny the allegations in this paragraph.

83.     Upon information and belief, and based at least in part upon statements of CCJ officials, particularly Cermak employees, the medical records kept by the Defendants are incomplete, inaccurate, and may be intentionally so.

**ANSWER:**     Defendants deny the allegations in this paragraph.

84.     Upon information and belief, the logs maintained by the correctional officers are often forged and faked and show activities that never occurred (such as suicide monitoring that doesn't occur as alleged above).

**ANSWER:**     Defendants deny the allegations in this paragraph.

85.     Each Defendant is being sued herein based at least in part upon acts or omissions they personally performed.  Upon information and belief, each Defendant committed such wrongful acts willfully and wantonly because they were done with either actual or deliberate intention to cause harm, or with utter indifference and conscious disregard for the safety and well being of Plaintiffs and the class members.

**ANSWER:**     Defendants deny the allegations in this paragraph.

## VIII.   Certain Defendants Engage In Unlawful Conduct To Retaliate Against Plaintiffs For Filing Grievances And This Lawsuit.

86.     The wrongdoing at issue in this Section occurred after the filing of the original complaint.   There are three categories of wrongful conduct at issue in this Section:  (1)  The December 4, 2008 assault of Plaintiff Perconti by two other inmates that, upon information and belief, were encouraged by Defendant Jackson in retaliation for complaints and grievances made against her by Plaintiff Perconti; (2) threats made against Plaintiff Hill by Defendant Sergeant

Manos, and Plaintiffs Haynes and Rogers by Defendant Superintendent Snooks that, upon information and belief, were motivated at least in part by the filing of this lawsuit or by the grievances filed by the Plaintiffs; and (3) Defendant Jackson's retaliation against Plaintiff Hill that transferred him into a general population tier that is not classified for mentally-ill detainees.

**ANSWER:** Defendants deny the allegations in this paragraph.

87. On or about December 4, 2008, shortly after the filing of the First Amended Complaint, and upon information and belief, based upon grievances referenced in that First Amended Complaint, Plaintiff Thomas Perconti was assaulted by two inmates at the Cook County Jail ("CCJ"). Upon information and belief, this assault was motivated by the comments of Defendant Jackson, a mental health specialist who was employed by Defendant Cook County and Cermak. Upon information and belief, Defendant Jackson made statements to other inmates to encourage them to attack Plaintiff Perconti in retaliation for the complaints Perconti made to other CCJ staff about the fact that Defendant Jackson, who was assigned as the mental health specialist for Mr. Perconti's tier, only spent her time talking with one particular detainee. (*See* First Am. Compl. ¶ 82 (discussing the situation with the unnamed mental health specialist, who is in fact Defendant Jackson).) As a result of this attack, Plaintiff Perconti has suffered physical, mental, and emotional injury, and is also in fear for his personal safety and well-being.

**ANSWER:** Defendants deny the allegations in this paragraph.

88. On or about November 28, 2008, Defendant Sergeant Manos, who was accompanied by Officer Webb, threatened Plaintiff Hill and made repeated derogatory remarks about Plaintiff Hill and Mr. Hill's deceased mother. As a result of these threats and remarks,

Plaintiff Hill has suffered physical, mental, and emotional injury, and is also in fear for his personal safety and well-being.

**ANSWER:** Defendants deny the allegations in this paragraph.

89. On or about December 1, 2008, Defendant Superintendent Snooks came to Tier 2-C of the CCJ, which is where Plaintiff Rogers is housed, and threatened the entire tier by making obscene remarks. This outburst was apparently motivated by the fact that Defendant Superintendent Snooks was called to the CCJ on a weekend due to an unknown issue.

**ANSWER:** Defendants deny the allegations in this paragraph.

90. On December 8, 2008, Defendant Superintendent Snooks came to Tier 2-D, which is where Plaintiff Haynes is housed, and threatened him in a violent tone stating: that Plaintiff Haynes better "stop filing grievances" or Defendant Superintendent Snooks would lock down the entire Tier 2-D in retaliation. Defendant Superintendent Snooks then stuck his finger in Plaintiff Haynes face and said that he would also go to the dispensary and make sure that Plaintiff Haynes would not get any medication for a month. Defendant Superintendent Snooks went on to say that he could move any doctor or mental health specialist out of "his" building, Division X, if that doctor or mental health specialist would not comply with Defendant Superintendent Snooks because they had no authority to stop Defendant Superintendent Snooks from carrying out his threats.

**ANSWER:** Defendants deny the allegations in this paragraph.

91.     As a result of these threats and remarks made by Defendant Superintendent
Snooks, Plaintiffs Haynes and Rogers have suffered physical, mental, and emotional injury, and
are also in fear for their personal safety and well-being.

**ANSWER:**     Defendants deny the allegations in this paragraph.


92.     Finally, at some point after the filing of this lawsuit Defendant Jackson and
Plaintiff Hill had a verbal disagreement.  Defendant Jackson accused Plaintiff Hill of burning
milk cartons to heat food.  Plaintiff Hill was not guilty of the burning of the milk cartons and
denied that he had burned the milk cartons.

**ANSWER:**     Defendants deny the allegations in this paragraph.


93.     Upon information and belief, Defendant Jackson was aware that Plaintiff Hill was
not the guilty party, and that the detainee responsible was someone else, specifically Defendant
Jackson's "friend."  As alleged in the Amended Complaint, Defendant Jackson's relationship
with this "friend" caused her to ignore the mental health needs of every other detainee on her
tier.  Upon information and belief, Defendant Jackson accused Plaintiff Hill of burning the milk
cartons in an attempt to shift blame to him and protect her "friend."

**ANSWER:**     Defendants deny the allegations in this paragraph.


94.     Upon information and belief, as retaliation for Plaintiff Hill's refusal to accept
responsibility for the milk carton burning (that he was not responsible for), Defendant Jackson
instructed or ordered other CCJ officials to terminate Plaintiff Hill's involvement in the psych
program and move him to a general population tier.  Plaintiff Hill was transferred to a general

population tier, where he still remains despite a court order entered by his criminal case judge that mandated his transfer back to a psych tier "as appropriate."

**ANSWER:** Defendants deny the allegations in this paragraph.

## EXHAUSTION OF GRIEVANCE PROCEDURES

95. Plaintiffs Derrick Haynes; Thomas Perconti; Fred Rogers; and Charles Hill used the detainee grievance procedure as it was available at the CCDOC to try and solve multiple problems. The grievances that were given control numbers were appealed and denied by the administration. The large majority of the Plaintiffs' grievances were improperly processed as requests thereby taking away Plaintiffs' rights and/or any opportunity to appeal the decisions and making the grievance process unavailable as to those grievances. On numerous occasions Plaintiffs were refused to be provided with grievance forms, and when they attempted to submit grievances on plain paper (as the CCJ's own policies allow in the absence of grievance forms), CCJ officials refused to accept such grievances. For example, Officer Velez refuses to provide grievance forms and mocks Plaintiffs for requesting such forms. In short, there are no consistently available grievance procedures at CCJ and as such the exhaustion requirement cannot apply to bar any of Plaintiffs or the class's claims.

**ANSWER:** Defendants deny the allegations in this paragraph.

96. Plaintiffs in this civil action have exhausted all of their administrative grievance remedies available at the CCJ and CCDOC to no avail. Further discussion regarding the grievance process is discussed above in Section VI of the Facts Section, and such allegations are incorporated herein. Those allegations demonstrate that *de facto* there is no available process at the CCJ.

42

**ANSWER:**     Defendants deny the allegations in this paragraph.


97.     The problems Plaintiffs faced with the grievance process at CCJ is supported by

the findings of the United States Department of Justice.  The DOJ Report "noted a number of

*serious* concerns with the inmate grievance process at CCJ" including the failure of CCJ staff to

follow the written grievance procedures.  (DOJ Report at 40-41 (emphasis added).)

**ANSWER:**     Defendants deny the allegations in this paragraph.


98.     Because named Plaintiffs have exhausted all of their available administrative

grievance remedies, the class is deemed to have exhausted such remedies as a matter of law.

**ANSWER:**     Defendants deny the allegations in this paragraph.


## CLASS ACTION ALLEGATIONS

99.     This action is brought by the named Plaintiffs on behalf of all pretrial detainees

who are now, have been before, or will be hereafter incarcerated at CCJ who have mental

illnesses.  A class action is proper pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the

Federal Rules of Civil Procedure.

**ANSWER:**     Defendants deny the allegations in this paragraph.


100.     Plaintiffs seek to represent the following class:

> All current, former, and future pretrial detainees housed at CCJ
> from August 25, 2006 to the present (the "Class Period").

**ANSWER:**     Defendants deny the allegations in this paragraph.

43

101.    Upon information and belief, the class members have all been exposed to the

conditions of confinement and Defendants' policies, procedures, practices, acts, and omissions as

alleged above.

**ANSWER:**    Defendants deny the allegations in this paragraph.


102.    Plaintiffs also seek to represent several subclasses, which are:

A.    The "Mental Health Injunctive Relief Subclass," which is defined as:

All current, former, and future pretrial detainees housed at CCJ during
the Class Period who were classified as "Psych" detainees by the
Defendants or who otherwise qualify as "mentally ill" as defined below.

For purposes of the Mental Health Injunctive Relief Subclass,
"mentally ill" shall be defined to include all current, former, and future
pretrial detainees who:  (1) have been diagnosed by any mental health
professional with any condition that would qualify that detainee to be
classified as "Psych" under the criteria for that classification as
established in this litigation; or (2) as part of the injunctive relief in this
case, all current and future Class members housed at the CCJ will be
given a mental health screening by a licensed professional, at
Defendants' expense, and any such Class Member that is diagnosed with
a mental health condition that qualifies them to be classified as a "Psych"
detainee will be a member of this Mental Health Injunctive Relief
Subclass.

B.    The "Mental Health Damages Subclass," which is defined as:

All current and former pretrial detainees housed at CCJ during the
Class Period who were classified as "Psych" detainees by the Defendants
at any time while they were housed at the CCJ.

C.    The "RTU Subclass," which is defined as:

All members of the Mental Health Damages Subclass that were also
housed in the Residential Treatment Unit ("RTU") of Division Eight of
the Cook County Jail ("CCJ") that were transferred to non-RTU
Divisions as part of Defendants' decision to transfer all such detainees
out of the RTU in or about May of 2008.

D.    The "Grievance Subclass," which is defined as:

All current, former, and future pretrial detainees housed at CCJ during the Class Period who filed a grievance that was either processed as a request or improperly processed in violation of the CCJ's policies and procedures, or other governing rule, regulation, statute, law, or constitutional provision.

**ANSWER:**     Defendants deny the allegations in this paragraph.

103.     Upon information and belief, the Mental Health Injunctive Relief Subclass, the Mental Health Damages Subclass, the RTU Subclass, and the Grievance Subclass members have all been exposed to similar conduct and wrongs based upon Defendants' policies, procedures, practices, acts, and omissions as alleged above.

**ANSWER:**     Defendants deny the allegations in this paragraph.

104.     Excluded from the Class and Subclasses are all present and former agents of Defendants during the Class Period; all present and former employees of Defendants during the Class Period; any Class member who timely elects to be excluded from the Class as allowed by Rule 23(b)(3) or this Court's Orders; and all members of the judiciary of this Court, and members of their immediate families.

**ANSWER:**     Defendants deny the allegations in this paragraph.

105.     Named Plaintiffs are members of the Class and all Subclasses.

**ANSWER:**     Defendants deny the allegations in this paragraph.

106.     The Class is pursuing Counts V, VI, XI, and XV-XX.  In addition to the claims of the Class, the various Subclasses are also pursuing additional claims, or pursing additional aspects of the claims of the Class.  The Grievance Subclass is pursuing Counts XV and XVI with

regard to the grievance process. The Mental Health Injunctive Relief Subclass is pursuing Counts I, VII, IX-X, and XII-XIV; the Mental Health Damages Class is pursuing Counts II, VIII, IX-X, and XIV; and the RTU Subclass (which is a subclass of the Mental Health Damages Subclass, so its members are members of both subclasses) is also pursuing Counts III-IV.

   **ANSWER:**  Defendants deny the allegations in this paragraph.

**I.**   **The Rule 23(a) Requirements Are Met.**

   **A.**   **Numerosity.**

   107.  The Class and subclasses meet all the requirements of Rule 23(a). The numerosity requirement is met because the number of members of the Class and subclasses are so numerous that their joinder is impracticable.

   **ANSWER:**  Defendants deny the allegations in this paragraph.

   108.  On any given day the class is comprised of thousands of detainees at the CCJ, and over the course of the Class Period it will number in the hundreds of thousands. The DOJ Report noted that in 2006, 99,663 inmates were admitted to the CCJ and the CCJ has a daily population of approximately 9,800. (DOJ Report at 3.) The RTU Subclass is comprised of approximately 300 to 400 members based upon the testimony of certain employees of the Defendants. The Mental Health Injunctive Relief and Mental Health Damages Subclasses are comprised of at least all the RTU Subclass members, so they too satisfy the numerosity requirement. Additionally, as noted above, the Defendants own mental health service provider estimates that at least 10% of all pretrial detainees are mentally ill, which means the Mental Health Subclasses will exceed 10,000 members. Finally, upon information and belief, the Grievance Subclass satisfies the numerosity requirement. Based upon testimony obtained in this matter, and a review

46

of the grievances of the named Plaintiffs, the Defendants improper treatment of grievances as requests is pervasive and systematic, and likely will include thousands of class members.

       **ANSWER:**    Defendants deny the allegations in this paragraph.

109.    Furthermore, while the number of members alone satisfies the numerosity requirement, it is particularly appropriate to find the numerosity requirement met here because of the impracticability of joinder given the incarcerated status of the class members and the restrictions on their access to information, as well as the constant changing pool of class members. As the DOJ Report notes, nearly 100,000 inmates are admitted to the CCJ each year, and the daily population fluctuates making joinder impracticable.

       **ANSWER:**    Defendants deny the allegations in this paragraph.

       **B.**      **Commonality Is Met.**

110.    There are common questions of law and fact regarding the claims of the class and subclasses, and whether Defendants have violated the class member's constitutional rights.

       **ANSWER:**    Defendants deny the allegations in this paragraph.

111.    The common questions of fact and law include, but are by no means limited to: whether Defendants failed to implement policies and procedures to identify and care for the large number of mentally ill inmates currently in custody; whether Defendants acted with deliberate indifference in this regard; whether Defendants' failure is a violation of the class members' constitutional and legal rights; whether the conditions of the CCJ meet constitutionally mandated minimums for pretrial detainees; whether Defendant were aware these conditions posed a substantial risk of harm to the Plaintiffs and class members; whether Defendants acted with

47

deliberate disregard for the safety and well being of Plaintiffs and the class members; whether such conditions are a result of Defendants' policies, practices, customs, acts, or omissions; whether certain Defendants have failed to properly or adequately train or supervise CCJ employees as to how to respond to and interact with detainees with serious mental health needs; whether CCJ is operated under the control of Defendant Cook County; whether CCJ and/or Defendant Cook County is a public entity as that term is defined in 42 U.S.C. §12131; whether Defendants have discriminated against Plaintiffs and the class members based upon their disabilities as alleged below; whether Defendant Cook County and the CCJ receive federal financial assistance, making them subject to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and § 705(2); whether Plaintiffs and the class members are recipients of services for purposes of the Illinois Mental Health and Developmental Disabilities Code (the "Disabilities Code"), 405 ILCS 5/1-100, *et seq.*; and whether the treatment mandated by the Disabilities Code creates a liberty or property interested that is protected by the due process clause of the Fourteenth Amendment; whether the Defendants implemented, created, or authorized a policy or custom reclassifying and/or transferring the RTU Subclass from the RTU to Division Ten; whether that policy or custom violated the class members' Fourteenth Amendment Constitutional Rights; whether the class members have been; whether the Defendants were deliberately indifferent to the class members' mental illnesses; and whether the common conditions of confinement experienced by the class members violated their constitutional rights.

**ANSWER:** Defendants deny the allegations in this paragraph.

## C. Plaintiffs Are Typical.

112. Plaintiffs' claims are typical of the claims of the class and subclasses. The Plaintiffs' interests are fully aligned with those of the class and subclasses, because the Plaintiffs

and the class members have all be exposed to common violations of their constitutional rights based upon Defendants' wrongful conduct. Accordingly, by pursuing their claims, the named Plaintiffs will advance the interests of the absent class members. Further, should Plaintiffs succeed on their claims they will establish the claims of the class members as well. Finally, the Plaintiffs are not subject to any unique defenses.

 **ANSWER:** Defendants deny the allegations in this paragraph.


  **D.**  **Plaintiffs Are Adequate.**

 113. Plaintiffs will also adequately represent the class. Plaintiffs have common interest with the class members, all of whom are subject to the identical wrongful conduct by the Defendants who are, *inter alia*, violating Plaintiffs and the class members' constitutional right to receive mental health treatment. Furthermore, Plaintiffs will vigorously prosecute the interest of the class, as best demonstrated by Plaintiffs hard work and diligence in successfully drafting the initial Compliant in this case and bringing these claims to the Court's attention.

 **ANSWER:** Defendants deny the allegations in this paragraph.


 114. Class counsel are also adequate. Counsel have been involved in numerous class actions, and moreover, were specifically appointed by this Court in order to represent this class.

 **ANSWER:** Defendants are without sufficient information to either admit or deny the allegations in this paragraph.

II.      **The Rule 23(b) Prerequisites Are Met.**

A.      **A Rule 23(b)(1) Class Is Proper.**

115.     Plaintiffs seek both injunctive and declaratory relief in this Complaint.  Separate injunctive and declaratory actions maintained by individual members of the class would, therefore, create a risk of inconsistent or varying adjudications with respect to individual members of the class, thereby establishing incompatible standards of conduct for defendants.

**ANSWER:**     Defendants deny the allegations in this paragraph.

116.     If Plaintiffs successfully obtained injunctive relief in this case on only an individual basis, then Defendants would be faced with a massive management problem in that they would have to create separate policies and procedures for just these Plaintiffs that would not also be applicable to the other class members.  Moreover, adjudication regarding the Plaintiffs' claims would, as a practical matter, be dispositive of the claims of the class members, who if not joined as part of a class, would be forced to file a needless suit simply to obtain the preclusive effect of any judgment in this case.  Such a result would impair the interests of those class members not parties to such an adjudication.

**ANSWER:**     Defendants deny the allegations in this paragraph.

B.      **A Rule 23(b)(2) Class Is Proper.**

117.     Defendants have acted or refused to act on grounds generally applicable to the class that Plaintiffs seek to represent, thereby making final injunctive or corresponding declaratory relief appropriate for the class as a whole.

**ANSWER:**     Defendants deny the allegations in this paragraph.

### C. A Rule 23(b)(3) Damages Class Is Proper.

118.    The requirements of Rule 23(b)(3) are met here because common questions predominate over any questions affecting only individual members, and class resolution of these claims is superior to other methods for the fair and effective adjudication of this controversy.  As alleged above, there are numerous common questions of law and fact presented in this case. These questions will predominate over any arguably individual questions.  Additionally, several of Defendants' employees have testified in their depositions that the policies, procedures, and actions alleged in this Complaint are applied equally to all pretrial detainees, meaning that all Class members are subjected to substantially similar treatment, which this Complaint alleges violates the United States and Illinois Constitutions, and Federal and State law.  The resolution of whether this substantially similar treatment is in violation of those standards will predominate over any individualized questions.

**ANSWER:**    Defendants deny the allegations in this paragraph.


119.    Also as alleged above, class resolution of these claims is superior because of the fact that the class members are confined and, accordingly, face almost identical conditions of confinement, and are exposed to uniquely uniform conduct based on uniform policies and customs.  Accordingly, this case is particularly appropriate for class treatment.

**ANSWER:**    Defendants deny the allegations in this paragraph.

## CAUSES OF ACTION[2]

### COUNT I

### (Violation of Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Deliberate Indifference To Serious Mental Health Needs Against All Defendants For Declaratory And Injunctive Relief)

120.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 119 as if alleged herein.

**ANSWER:**    Defendants re-answer paragraphs 1-119 as though fully set forth herein.

121.    Plaintiffs and the class members have a serious medical need, namely mental illness or mental health conditions, which require treatment.

**ANSWER:**    Defendants deny the allegations in this paragraph.

122.    Defendants know of Plaintiffs and the class members' serious medical needs.

**ANSWER:**    Defendants deny the allegations in this paragraph.

123.    Defendants have disregarded and have been deliberately indifferent to Plaintiffs and the class members' serious medical needs.  Such deliberate indifference includes the fact that, as alleged above, Defendants' uniform policies, practices, and customs are designed to

---

[2] In accordance with the Court's March 6, 2009 Order, which granted in part the Defendants' Motion to Dismiss, Plaintiffs have not included certain causes of action in this Third Amended Class Action Complaint.  Those causes of action were, as alleged in the Second Amended Complaint:  Count XV, Abuse of Process, Count XVI, Tortious Interference with Contract, and Count XX, Violation of the International Covenant on Civil and Political Rights.  Additionally, Plaintiffs have only directed County XVII against Defendant Dart, based upon that March 6, 2009 Order.  Plaintiffs do not waive these claims, and reserve all rights to challenge the March 6, 2009 Order dismissing those counts, including in any appeal of this matter.  To the extent necessary to preserve that right, Plaintiffs incorporate by reference the allegations of their Second Amended Complaint with regard to those causes of action, as if they were alleged herein.

intentionally fail to diagnose large numbers of mentally ill pretrial detainees, which has resulted in a 10% diagnoses rate compared to the 56% estimate of the Bureau of Justice Report discussed above.

**ANSWER:** Defendants deny the allegations in this paragraph.

124.    Defendants' policies, practices, customs, acts, and omissions evidence and constitute deliberate indifference to the serious health care needs of the pretrial detainee Plaintiffs and class members and violate the Fourteenth Amendment to the United States Constitution.

**ANSWER:** Defendants deny the allegations in this paragraph.

125.    Upon information and belief, the deprivation of Plaintiffs and the class members' constitutional rights was caused by an official custom or policy of Cook County, and specifically at least one of the following situations was present as to every constitutional deprivation: (1) Defendants had an express policy that, when enforced, caused the alleged constitutional deprivations; (2) Defendant had a widespread practice that, although not authorized by written law or express policy, was so permanent and well settled as to constitute a custom or usage with the force of law; or (3) Plaintiffs and the class members' constitutional injury was caused by a person with final policymaking authority with regard to such policies.

**ANSWER:** Defendants deny the allegations in this paragraph.

126.    Defendants' policies, practices, customs, acts, and omissions place Plaintiffs and the class members at unreasonable, continuing, and foreseeable risk of developing or exacerbating serious medical and mental health problems.

**ANSWER:** Defendants deny the allegations in this paragraph.

127.    Defendants deliberate indifference has caused Plaintiffs and the class members both physical and mental harm and injury, including by causing avoidable pain, mental suffering, and deterioration of their health.  Upon information and belief, in some cases it has resulted in premature death.

**ANSWER:** Defendants deny the allegations in this paragraph.

128.    As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury and the risk of death.  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein,  The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

**ANSWER:** Defendants deny the allegations in this paragraph.

## COUNT II

**(Violation of Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Deliberate Indifference To Serious Mental Health Needs Against All Defendants For Compensatory And Punitive Damages)**

129.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 128 as if alleged herein.

**ANSWER:** Defendants re-answer paragraphs 1-128 as though fully set forth herein.

130.     Based upon the above allegations, including those alleged in Count I at Paragraphs 121 to 127, compensatory damages are necessary in order to compensate Plaintiffs and the class for the injuries and damages they have already suffered, and punitive damages are necessary to serve as a deterrent for similar wrongdoing.

**ANSWER:**     Defendants deny the allegations in this paragraph.

## COUNT III

**(Violation of Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Deliberate Indifference To Serious Mental Health Needs Based Upon The Closure Of The RTU And Transfer To Division Two Or Ten Against All Defendants For Declaratory And Injunctive Relief)**

131.     Plaintiffs reallege and incorporate by reference Paragraphs 1 to 130 as if alleged herein.

**ANSWER:**     Defendants re-answer paragraphs 1-130 as though fully set forth herein.

132.     Plaintiffs and the class members have a serious medical need, namely mental illness or mental health conditions, which require treatment.

**ANSWER:**     Defendants deny the allegations in this paragraph.

133.     Defendants know of Plaintiffs and the class members' serious medical need.

**ANSWER:**     Defendants deny the allegations in this paragraph.

134.     Defendants have disregarded and have been deliberately indifferent to Plaintiffs and the class members' serious medical needs.

**ANSWER:**     Defendants deny the allegations in this paragraph.

135.    Defendants' policies, practices, customs, acts, and omissions evidence and constitute deliberate indifference to the serious health care needs of the pretrial detainee Plaintiffs and class members and violate the Fourteenth Amendment to the United States Constitution.

**ANSWER:**    Defendants deny the allegations in this paragraph.

136.    Upon information and belief, the deprivation of Plaintiffs and the class members' constitutional rights was caused by an official custom or policy of Cook County, and specifically at least one of the following situations was present as to every constitutional deprivation: (1) Defendants had an express policy that, when enforced, caused the alleged constitutional deprivations; (2) Defendant had a widespread practice that, although not authorized by written law or express policy, was so permanent and well settled as to constitute a custom or usage with the force of law; or (3) Plaintiffs and the class members' constitutional injury was caused by a person with final policymaking authority with regard to such policies.

**ANSWER:**    Defendants deny the allegations in this paragraph.

137.    Defendants' policies, practices, customs, acts, and omissions place Plaintiffs and the class members at unreasonable, continuing, and foreseeable risk of developing or exacerbating serious medical and mental health problems.

**ANSWER:**    Defendants deny the allegations in this paragraph.

138.    Defendants deliberate indifference has caused Plaintiffs and the class members both physical and mental harm and injury, including by causing avoidable pain, mental suffering,

and deterioration of their health.  Upon information and belief, in some cases it has resulted in premature death.

> **ANSWER:**    Defendants deny the allegations in this paragraph.

139.    As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury and the risk of death.  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein,  The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

> **ANSWER:**    Defendants deny the allegations in this paragraph.

## COUNT IV

**(Violation of Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Deliberate Indifference To Serious Mental Health Needs Based Upon The Closure Of The RTU And Transfer To Division Two Or Ten Against All Defendants For Compensatory And Punitive Damages)**

140.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 139 as if alleged herein.

> **ANSWER:**    Defendants re-answer paragraphs 1-139 as though fully set forth herein.

141.    Based upon the above allegations, including those alleged in Count III at Paragraphs 132 to 138 compensatory damages are necessary in order to compensate Plaintiffs and the class for the injuries and damages they have already suffered, and punitive damages are necessary to serve as a deterrent for similar wrongdoing.

**ANSWER:** Defendants deny the allegations in this paragraph.


## COUNT V

**(Violation of Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Deliberate Indifference To Inhumane Conditions Of Confinement Against Defendants Dart, Godinez, Figliulo, Snooks, Mueller, Thomas, Plaxico, Manos, Velez, and Cook County For Declaratory And Injunctive Relief)**

142. Plaintiffs reallege and incorporate by reference Paragraphs 1 to 141 as if alleged herein.

**ANSWER:** Defendants re-answer paragraphs 1-141 as though fully set forth herein.


143. The conditions of the CCJ, including but not limited to Division Ten, do not meet constitutionally guaranteed minimum standards for pretrial detainees. Plaintiffs and the class have been forced to reside in unsanitized, filthy, rodent and insect infested cells in Division Ten.

**ANSWER:** Defendants deny the allegations in this paragraph.


144. For example, Division Ten has a major rodent infestation that is so severe, Plaintiffs and class members find dead rats in their cells, find that rats have destroyed items, and left droppings in their cells on a regular daily basis. The entire tier of Division Ten Tier 2D is infested with mice and roaches that are allowed to roam freely.

**ANSWER:** Defendants deny the allegations in this paragraph.


145. Defendants Dart, Godinez, Figliulo, Snooks, Mueller, Thomas, Plaxico, Manos, Velez, and Cook County are fully aware of these abominable and inhumane conditions, and are aware of that these conditions posed a substantial risk of serious harm. These Defendants failure to address these conditions despite numerous grievances constitutes deliberate indifference to

and a deliberate disregard for the safety and well being of Plaintiffs and the class members. In fact, on or about June 4, 2008, Officer Cashen assigned to the 7 to 3 shift of Division Ten, made a statement to the effect that: "rodents and insects are a common part of everyday life here in Cook County Jail."

      **ANSWER:**    Defendants deny the allegations in this paragraph.

146.    Defendants Dart, Godinez, Figliulo, Snooks, Mueller, Thomas, Plaxico, Manos, Velez, and Cook County also fail to provide sufficiently sanitary conditions. As Officer Cashen stated: "I have been an employee here [at the CCJ] for 10 years and there has consistently been a problem with sanitation, clean linen and regular clothing exchange on schedule in Division Ten." Officer Cashen also stated that "the linen they do have is in terrible shape the contracted laundry company never sends the correct amount of uniforms back nor is there ever enough disinfectant available to properly sanitize the living tiers." On numerous occasions Plaintiffs and the class members have gone days and weeks without a clean change of clothes.

      **ANSWER:**    Defendants deny the allegations in this paragraph.

147.    In short, the overall conditions Plaintiffs and the class members are forced to endure are extremely harsh and very unsafe, placing them at serious risk of harm, and causing both physical and mental harm.

      **ANSWER:**    Defendants deny the allegations in this paragraph.

148.    Defendants Dart, Godinez, Figliulo, Snooks, Mueller, Thomas, Plaxico, Manos, Velez, and Cook County failure to correct these conditions, or the policies, practices, customs, acts, and omissions that allowed these conditions of confinement to exist constitute

unconstitutional punishment of pretrial detainees and is a violation of Plaintiffs and the class members' constitutional rights.

    **ANSWER:**    Defendants deny the allegations in this paragraph.

149.    As a direct and proximate result of these Defendants' improper policies, practices, customs, acts, and omissions, Plaintiffs and the class members suffered physical and emotional harm, and other damages.

    **ANSWER:**    Defendants deny the allegations in this paragraph.

150.    Defendants' policies, practices, customs, acts, and omissions evidence and constitute deliberate indifference to the pretrial detainee Plaintiffs and class members' constitutional rights and violate the Fourteenth Amendment to the United States Constitution.

    **ANSWER:**    Defendants deny the allegations in this paragraph.

151.    Upon information and belief, the deprivation of Plaintiffs and the class members' constitutional rights was caused by an official custom or policy of Cook County, and specifically at least one of the following situations was present as to every constitutional deprivation: (1) Defendants had an express policy that, when enforced, caused the alleged constitutional deprivations; (2) Defendant had a widespread practice that, although not authorized by written law or express policy, was so permanent and well settled as to constitute a custom or usage with the force of law; or (3) Plaintiffs and the class members' constitutional injury was caused by a person with final policymaking authority with regard to such policies.

    **ANSWER:**    Defendants deny the allegations in this paragraph.

152.    As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury and the risk of death.  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein,  The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

**ANSWER:**    Defendants deny the allegations in this paragraph.


## COUNT VI

**(Violation of Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Deliberate Indifference To Inhumane Conditions Of Confinement Against Defendants Dart, Godinez, Figliulo, Snooks, Mueller, Thomas, Thomas, Plaxico, Manos, Velez, and Cook County For Compensatory And Punitive Damages)**

153.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 152 as if alleged herein.

**ANSWER:**    Defendants re-answer paragraphs 1-152 as though fully set forth herein.


154.    Based upon the above allegations, including those alleged in Count V at Paragraphs 143 to 151, compensatory damages are necessary in order to compensate Plaintiffs and the class for the injuries and damages they have already suffered, and punitive damages are necessary to serve as a deterrent for similar wrongdoing.

**ANSWER:**    Defendants deny the allegations in this paragraph.

## COUNT VII

**(Violation of Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Failure To Train Or Supervise Against Defendants Dart, Godinez, Fagus, Cermak, And Cook County For Declaratory And Injunctive Relief)**

155.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 154 as if alleged herein.

**ANSWER:**    Defendants re-answer paragraphs 1-154 as though fully set forth herein.

156.    Defendants Dart, Godinez, Fagus, Cermak, And Cook County failed to adequately train or supervise individuals in their employee or under their control and supervision as to how to properly respond to and interact with detainees with serious mental health needs.

**ANSWER:**    Defendants deny the allegations in this paragraph.

157.    Defendants Dart, Godinez, Fagus, Cermak, And Cook County's failure to adequately train or supervise amounted to deliberate indifference to the Plaintiffs and class members' constitutional rights.

**ANSWER:**    Defendants deny the allegations in this paragraph.

158.    As a proximate result of Defendants Dart, Godinez, Fagus, Cermak, And Cook County's failure to train, Plaintiffs and the class members have suffered, and will continue to suffer, deprivation of the rights secured under the Constitution and laws of the United States. Such deprivations are causing and will continue to cause immediate and irreparable injury, including physical, psychological, and emotional injury and the risk of death. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein, The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

62

**ANSWER:** Defendants deny the allegations in this paragraph.

## COUNT VIII

**(Violation of Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Failure To Train Or Supervise Against Defendants Dart, Godinez, Fagus, Cermak, And Cook County For Compensatory And Punitive Damages)**

159.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 158 as if alleged herein.

**ANSWER:** Defendants re-answer paragraphs 1-158 as though fully set forth herein.

160.    Based upon the above allegations, including those alleged in Count VII at Paragraphs 156 to 157, compensatory damages are necessary in order to compensate Plaintiffs and the class for the injuries and damages they have already suffered, and punitive damages are necessary to serve as a deterrent for similar wrongdoing.

**ANSWER:** Defendants deny the allegations in this paragraph.

## COUNT IX

**(Violation of Article I, Section 2 Of The Illinois Constitution Based Upon Deliberate Indifference To Serious Mental Health Needs Against All Defendants)**

161.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 160 as if alleged herein.

**ANSWER:** Defendants re-answer paragraphs 1-160 as though fully set forth herein.

162.    Each Defendant is being sued for this claim based upon acts they personally performed.  Upon information and belief, each Defendant committed such wrongful acts willfully and wantonly because they were done with either actual or deliberate intention to cause

63

harm, or with utter indifference and conscious disregard for the safety and well being of Plaintiffs and the class members.

**ANSWER:**    Defendants deny the allegations in this paragraph.

163.    Defendants' policies, practices, customs, acts, and omissions evidence and constitute deliberate indifference to the serious health care needs of the pretrial detainee Plaintiffs and class members and violate Plaintiffs and the class members' due process rights under Article I, Section 2 of the Illinois Constitution.

**ANSWER:**    Defendants deny the allegations in this paragraph.

164.    Defendants' policies, practices, customs, acts, and omissions place Plaintiffs and the class members at unreasonable, continuing, and foreseeable risk of developing or exacerbating serious medical and mental health problems.

**ANSWER:**    Defendants deny the allegations in this paragraph.

165.    Defendants deliberate indifference has caused Plaintiffs and the class members both physical and mental harm and injury, including by causing avoidable pain, mental suffering, and deterioration of their health.  Upon information and belief, in some cases it has resulted in premature death.

**ANSWER:**    Defendants deny the allegations in this paragraph.

166.    As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury and

64

the risk of death.  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein,  The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

      **ANSWER:**    Defendants deny the allegations in this paragraph.

## COUNT X

### (Violation of Article I, Section 2 Of The Illinois Constitution Based Upon Deliberate Indifference To Serious Mental Health Needs Based Upon The Closure Of The RTU And Transfer To Division Two Or Ten Against All Defendants)

      167.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 166 as if alleged herein.

      **ANSWER:**    Defendants re-answer paragraphs 1-166 as though fully set forth herein.

      168.    Each Defendant is being sued for this claim based upon acts they personally performed.  Upon information and belief, each Defendant committed such wrongful acts willfully and wantonly because they were done with either actual or deliberate intention to cause harm, or with utter indifference and conscious disregard for the safety and well being of Plaintiffs and the class members.

      **ANSWER:**    Defendants deny the allegations in this paragraph.

      169.    Defendants' policies, practices, customs, acts, and omissions evidence and constitute deliberate indifference to the serious health care needs of the pretrial detainee Plaintiffs and class members and violate Plaintiffs and the class members' due process rights under Article I, Section 2 of the Illinois Constitution.

      **ANSWER:**    Defendants deny the allegations in this paragraph.

170.    Defendants' policies, practices, customs, acts, and omissions place Plaintiffs and the class members at unreasonable, continuing, and foreseeable risk of developing or exacerbating serious medical and mental health problems.

**ANSWER:**    Defendants deny the allegations in this paragraph.

171.    Defendants deliberate indifference has caused Plaintiffs and the class members both physical and mental harm and injury, including by causing avoidable pain, mental suffering, and deterioration of their health.  Upon information and belief, in some cases it has resulted in premature death.

**ANSWER:**    Defendants deny the allegations in this paragraph.

172.    As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury and the risk of death.  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein,  The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

**ANSWER:**    Defendants deny the allegations in this paragraph.

## COUNT XI

**(Violation of Article I, Section 2 Of The Illinois Constitution Based Upon Deliberate Indifference To Inhumane Conditions Of Confinement Against Defendants Dart, Godinez, Figliulo, Snooks, Manos, Velez, Thomas, Plaxico, Mueller, and Cook County)**

173.     Plaintiffs reallege and incorporate by reference Paragraphs 1 to 172 as if alleged herein.

**ANSWER:**     Defendants re-answer paragraphs 1-172 as though fully set forth herein.

174.     Each Defendant is being sued for this claim based upon acts they personally performed.  Upon information and belief, each Defendant committed such wrongful acts willfully and wantonly because they were done with either actual or deliberate intention to cause harm, or with utter indifference and conscious disregard for the safety and well being of Plaintiffs and the class members.

**ANSWER:**     Defendants deny the allegations in this paragraph.

175.     The conditions of the CCJ, including but not limited to Division Ten, do not meet constitutionally guaranteed minimum standards for pretrial detainees.  Plaintiffs and the class have been forced to reside in unsanitized, filthy, rodent and insect infested cells in Division Ten.

**ANSWER:**     Defendants deny the allegations in this paragraph.

176.     For example, Division Ten has a major rodent infestation that is so severe, Plaintiffs and class members find dead rats in their cells, find that rats have destroyed items, and left droppings in their cells on a almost daily basis.  The entire tier of Division Ten Tier 2D is infested with mice and roaches that are allowed to roam freely.

**ANSWER:**     Defendants deny the allegations in this paragraph.

177.     Defendants Dart, Godinez, Figliulo, Snooks, Manos, Velez, Thomas, Plaxico, Mueller, and Cook County are fully aware of these abominable and inhumane conditions, and are aware of that these conditions posed a substantial risk of serious harm.  These Defendants failure to address these conditions despite numerous grievances constitutes deliberate indifference to and a deliberate disregard for the safety and well being of Plaintiffs and the class members.  In fact, on or about June 4, 2008, Officer Cashen assigned to the 7 to 3 shift of Division Ten, made a statement to the effect that:  "rodents and insects are a common part of everyday life here in Cook County Jail."

**ANSWER:**     Defendants deny the allegations in this paragraph.


178.     Defendants Dart, Godinez, Figliulo, Snooks, Manos, Velez, Thomas, Plaxico, Mueller, and Cook County also fail to provide sufficiently sanitary conditions.  As Officer Cashen stated:  "I have been an employee here [at the CCJ] for 10 years and there has consistently been a problem with sanitation, clean linen and regular clothing exchange on schedule in Division Ten."  Officer Cashen also stated that "the linen they do have is in terrible shape the contracted laundry company never sends the correct amount of uniforms back nor is there ever enough disinfectant available to properly sanitize the living tiers."  On numerous occasions Plaintiffs and the class members have gone days and weeks without a clean change of clothes.

**ANSWER:**     Defendants deny the allegations in this paragraph.

179.     In short, the overall conditions Plaintiffs and the class members are forced to endure are extremely harsh and very unsafe, placing them at serious risk of harm, and causing both physical and mental harm.

**ANSWER:**     Defendants deny the allegations in this paragraph.

180.     Defendants Dart, Godinez, Figliulo, Snooks, Manos, Velez, Thomas, Plaxico, Mueller, and Cook County failure to correct these conditions, or the policies, practices, customs, acts, and omissions that allowed these conditions of confinement to exist constitute unconstitutional punishment of pretrial detainees and is a violation of Plaintiffs and the class members' constitutional rights.

**ANSWER:**     Defendants deny the allegations in this paragraph.

181.     As a direct and proximate result of these Defendants' improper policies, practices, customs, acts, and omissions, Plaintiffs and the class members suffered physical and emotional harm, and other damages.

**ANSWER:**     Defendants deny the allegations in this paragraph.

182.     Defendants' policies, practices, customs, acts, and omissions evidence and constitute deliberate indifference to the pretrial detainee Plaintiffs and class members' constitutional rights and violate Article I, Section 2 of the Illinois Constitutional.

**ANSWER:**     Defendants deny the allegations in this paragraph.

183.     Upon information and belief, the deprivation of Plaintiffs and the class members' constitutional rights was caused by an official custom or policy of Cook County, and specifically

at least one of the following situations was present as to every constitutional deprivation: (1) Defendants had an express policy that, when enforced, caused the alleged constitutional deprivations; (2) Defendant had a widespread practice that, although not authorized by written law or express policy, was so permanent and well settled as to constitute a custom or usage with the force of law; or (3) Plaintiffs and the class members' constitutional injury was caused by a person with final policymaking authority with regard to such policies.

**ANSWER:** Defendants deny the allegations in this paragraph.

184. As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury and the risk of death. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein, The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

**ANSWER:** Defendants deny the allegations in this paragraph.

185. As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury and the risk of death. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein, The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

**ANSWER:** Defendants deny the allegations in this paragraph.

70

<u>**COUNT XII**</u>

**(Title II Of The Americans With Disabilities Act Against All Defendants)**

186.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 185 as if alleged herein.

**ANSWER:**    Defendants re-answer paragraphs 1-185 as though fully set forth herein.

187.    CCJ is operated under the control of Cook County, which are public entities as that term is defined in 42 U.S.C. § 12131.  All Defendants at all relevant times acted in their official capacities as representatives of at least one of these public entities.

**ANSWER:**    Defendants deny the allegations in this paragraph.

188.    Plaintiffs and class members are otherwise qualified individuals with a disability as defined under the ADA and its implementing regulations, including 42 U.S.C. § 12131(2) and § 12102(2).  Plaintiffs and the class members have mental and/or physical impairments that substantially limit one or more major life activities; or they have records of having such impairments; or they are regarding as having such impairments.

**ANSWER:**    Defendants deny the allegations in this paragraph.

189.    Plaintiffs and the class members meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendants.

**ANSWER:**    Defendants deny the allegations in this paragraph.

190.    Defendants have discriminated against the Plaintiffs and class members on the basis of their disabilities in the following ways:

a)      Refusing to provide Plaintiffs and the class members with proper treatment for their serious mental illness despite knowledge of such serious mental illness;

b)      Failing to reasonably accommodate the Plaintiffs and class members' disabilities and instead discriminating against them in ways that increase the severity of their illness by such methods as failing to assist mentally ill inmates in the grievance process and instead acting to thwart their efforts to file grievances and pursue them through the administrative process;

c)      Failing to reasonably accommodate the Plaintiffs and class members' disabilities and instead discriminating against them in ways that increase the severity of their illness by such methods as forcing these seriously mentally ill detainees out of their cells and restricting them from accessing their beds which resulted in them sleeping on cold concrete floors or steel benches and tables;

d)      Denying Plaintiffs and the class members access to programs, activities, and services that are available to other detainees at CCJ or available from Cook County to the public, including rehabilitative or educational programming, group therapy, and other therapy;

e)      Housing Plaintiffs and some class members in elevated security divisions or tiers, or general population divisions or tiers, which are especially chaotic, noisy, isolated and offer less or no mental health treatment, and also increase the likelihood of serious physical and mental harm due to the fact that the staff and guards in such divisions or tiers are not trained to interact with seriously mentally ill detainees.

**ANSWER:**     Defendants deny the allegations in this paragraph and its subparagraphs.

191.     In acting in the manner alleged above, Defendants have unlawfully discriminated against Plaintiffs and the class members in violation of the ADA.

**ANSWER:**     Defendants deny the allegations in this paragraph.

192.     As a proximate result of Defendants' wrongful conduct, Plaintiffs and the class members have suffered, and will continue to suffer immediate and irreparable harm and injury, including physical, psychological, and emotional injury, including the risk of death.  Plaintiffs and the class members have no plain, adequate, or complete remedy at law to address the wrongs described herein.  The injunctive relief sought by Plaintiffs and the class members is necessary to prevent continued and further injury.

**ANSWER:**     Defendants deny the allegations in this paragraph.

## COUNT XIII

### (Violation of Section 504 Of The Rehabilitation Act Against All Defendants)

193.     Plaintiffs reallege and incorporate by reference Paragraphs 1 to 192 as if alleged herein.

**ANSWER:**     Defendants re-answer paragraphs 1-192 as though fully set forth herein.

194.     Upon information and belief, Cook County and the CCJ receives federal financial assistance, thus making it subject to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and § 705(20).

**ANSWER:**     Defendants deny the allegations in this paragraph.

195.    Plaintiffs and each class member is an otherwise qualified individual with a disability as defined in the Rehabilitation Act and implementing regulations.  Plaintiffs and the class members have mental and/or physical impairments that substantially limit one or more major life activities; or they have records of having such impairments; or they are regarded as having such impairments.

**ANSWER:**    Defendants deny the allegations in this paragraph.


196.    Plaintiffs and the class members meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendants.

**ANSWER:**    Defendants deny the allegations in this paragraph.


197.    Defendants have discriminated against the Plaintiffs and class members based upon their disabilities in the following ways:

a)      Refusing to provide Plaintiffs and the class members with proper treatment for their serious mental illness despite knowledge of such serious mental illness;

b)      Failing to reasonably accommodate the Plaintiffs and class members' disabilities and instead discriminating against them in ways that increase the severity of their illness by such methods as failing to assist mentally ill inmates in the grievance process and instead acting to thwart their efforts to file grievances and pursue them through the administrative process;

c)      Failing to reasonably accommodate the Plaintiffs and class members' disabilities and instead discriminating against them in ways that increase the

74

severity of their illness by such methods as forcing these seriously mentally ill detainees out of their cells and restricting them from accessing their beds which resulted in them sleeping on cold concrete floors or steel benches and tables;

d)      Denying Plaintiffs and the class members access to programs, activities, and services that are available to other detainees at CCJ or available from Cook County to the public, including rehabilitative or educational programming, group therapy, and other therapy;

e)      Housing Plaintiffs and some class members in elevated security divisions or tiers, or general population divisions or tiers, which are especially chaotic, noisy, isolated and offer less or no mental health treatment, and also increase the likelihood of serious physical and mental harm due to the fact that the staff and guards in such divisions or tiers are not trained to interact with seriously mentally ill detainees.

**ANSWER:**      Defendants deny the allegations in this paragraph and its subparagraphs.

198.      In acting in the manner alleged above, the Defendants have unlawfully discriminated against Plaintiffs and the class members in violation of the Rehabilitation Act.

**ANSWER:**      Defendants deny the allegations in this paragraph.

199.      As a proximate result of Defendants' wrongful conduct, Plaintiffs and the class members have suffered, and will continue to suffer immediate and irreparable harm and injury, including physical, psychological, and emotional injury, including the risk of death.  Plaintiffs and the class members have no plain, adequate, or complete remedy at law to address the wrongs

described herein.  The injunctive relief sought by Plaintiffs and the class members is necessary to prevent continued and further injury.

>    **ANSWER:**    Defendants deny the allegations in this paragraph.


## COUNT XIV

**(Violation of Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Violation Of State-Created Liberty Or Property Interest Against All Defendants)**

200.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 199 as if alleged herein.

>    **ANSWER:**    Defendants re-answer paragraphs 1-199 as though fully set forth herein.


201.    Cermak is a section of the Cook County Bureau of Health Services, and it is operated by Cook County, and the Bureau of Health Services.

>    **ANSWER:**    Defendants deny the allegations in this paragraph.


202.    Pursuant to 405 ILCS 5/2-102, Plaintiffs and the class members, as serious mentally ill pretrial detainees, are recipients of services for purposes of the Illinois Mental Health and Developmental Disabilities Code.  As such recipients, Plaintiffs and the class members are entitled to be provided with adequate and humane care and services in the form of mental health treatment by mental health professionals who exercise their professional judgment in delivering this treatment.  The right created by the state Mental Health Code is a liberty or property interest protected under the due process clause of the Fourteenth Amendment.

>    **ANSWER:**    Defendants deny the allegations in this paragraph.

203.     In acting in the manner described above, the Defendants have violated the rights of Plaintiffs and the class members to these state-created liberty or property interest under the Fourteenth Amendment to the United States Constitution.

**ANSWER:**     Defendants deny the allegations in this paragraph.


204.     As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, including physical, psychological, and emotional injury and the risk of death.  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein,  The injunctive relief sought by Plaintiffs is necessary to prevent further injury.  Furthermore, based upon the damages and injuries sustained as a result of Defendants' wrongful conduct, compensatory damages are necessary in order to compensate Plaintiffs and the class for the injuries and damages they have already suffered, and punitive damages are necessary to serve as a deterrent for similar wrongdoing.

**ANSWER:**     Defendants deny the allegations in this paragraph.


## COUNT XV

**(Violation Of First And Fourteenth Amendment Right Of Access To The Courts And Sixth Amendment Right Of Access To Courts And Counsel Under 42 U.S.C. § 1983 Based Upon Policy Prohibiting Counsel From Communicating By Telephone And Limiting Law Library Access Against Defendants Dart, Godinez, and Cook County For Declaratory And Injunctive Relief)**

205.     Plaintiffs reallege and incorporate by reference Paragraphs 1 to 204 as if alleged herein.

**ANSWER:**     Defendants re-answer paragraphs 1-204 as though fully set forth herein.

206.     Upon information and belief, Defendants Dart, Godinez, and Cook County have a policy, practice, or custom that prohibits counsel from communicating with Plaintiffs and class members by telephone.

**ANSWER:**     Defendants deny the allegations in this paragraph.

207.     Upon information and belief, Defendants Dart, Godinez, and Cook County have a policy, practice, or custom that limits pretrial detainee access to the law library to one hour a week.

**ANSWER:**     Defendants deny the allegations in this paragraph.

208.     Defendants Dart, Godinez, and Cook County know this one hour of access a week is unconstitutional and insufficient, and accordingly, they routinely allow pretrial detainees additional access to the law library, but require a court order before doing so.

**ANSWER:**     Defendants deny the allegations in this paragraph.

209.     Plaintiff Charles Hill has been provided such telephone access to his criminal attorney and three hours a week of law library access for purposes of his criminal case based upon a court order.  Despite that, Defendants Dart, Godinez, and Cook County refuse to provide similar access to appointed counsel in this case and similar law library access for this case.

**ANSWER:**     Defendants deny the allegations in this paragraph.

210.     Such a policy, practice, or custom violates Plaintiffs and the class members' Fourteenth Amendment right of access to counsel in this case and other civil cases, and Plaintiffs and the class members' Sixth Amendment right with regard to their criminal cases.

78

**ANSWER:**     Defendants deny the allegations in this paragraph.

211.     Defendants acted with deliberate indifference to Plaintiffs and the class members constitutional rights because they are aware that telephone access to counsel in some form or another is allowed at all Illinois state prisons, and that such access is mandated by the Constitution.

**ANSWER:**     Defendants deny the allegations in this paragraph.

212.     Upon information and belief, the deprivation of Plaintiffs and the class members' constitutional rights was caused by an official custom or policy of Cook County, and specifically at least one of the following situations was present as to every constitutional deprivation: (1) Defendants had an express policy that, when enforced, caused the alleged constitutional deprivations; (2) Defendant had a widespread practice that, although not authorized by written law or express policy, was so permanent and well settled as to constitute a custom or usage with the force of law; or (3) Plaintiffs and the class members' constitutional injury was caused by a person with final policymaking authority with regard to such policies.

**ANSWER:**     Defendants deny the allegations in this paragraph.

213.     Defendants' policies, practices, customs, acts, and omissions have proximately caused Plaintiffs and the class members to be deprived of their constitutional rights, including but not limited to interfering with their ability to consult with appointed counsel in this litigation.

**ANSWER:**     Defendants deny the allegations in this paragraph.

214.    As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, because the constitutional deprivation is harming their ability to fully litigate this civil matter, and upon information and belief, has been detrimental to their defense in criminal matters.  Specifically, Defendants' unconstitutional policies, practices, customers, acts, and omissions harmed Plaintiffs ability to provide additional details in this First Amended Class Action Complaint, which may ultimately require a future amendment, and has caused Plaintiffs to file declarations in support of their Motion for Preliminary Injunction that do not contain as many facts as appointed counsel would have preferred had he had the ability to consult with Plaintiffs by telephone.  Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein,  The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

**ANSWER:**    Defendants deny the allegations in this paragraph.

## COUNT XVI

**(Violation Of Article I, Sections 1, 2, 5, 6, 8, and 12 Of The Illinois Constitution Based Upon Policy Prohibiting Counsel From Communicating By Telephone And Limiting Law Library Access Against Defendants Dart, Godinez, and Cook County For Declaratory And Injunctive Relief)**

215.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 214 as if alleged herein.

**ANSWER:**    Defendants re-answer paragraphs 1-214 as though fully set forth herein.

216.    Based upon the above allegations, including those alleged in Count XV, Defendants Dart, Godinez, and Cook County's policies, practices, customs, acts, and omissions

have violated Plaintiffs and the class member's rights under Article I, Sections 1, 2, 5, 6, 8 and 12 of the Illinois Constitution.

**ANSWER:** Defendants deny the allegations in this paragraph.

217. As a proximate result of Defendants' unconstitutional policies, practices, customs, acts, and omissions, Plaintiffs and the class members have suffered and will continue to suffer immediate and irreparable injury, because the constitutional deprivation is harming their ability to fully litigate this civil matter, and upon information and belief, has been detrimental to their defense in criminal matters. Specifically, Defendants' unconstitutional policies, practices, customers, acts, and omissions harmed Plaintiffs ability to provide additional details in this First Amended Class Action Complaint, which may ultimately require a future amendment, and has caused Plaintiffs to file declarations in support of their Motion for Preliminary Injunction that do not contain as many facts as appointed counsel would have preferred had he had the ability to consult with Plaintiffs by telephone. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein, The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

**ANSWER:** Defendants deny the allegations in this paragraph.

## **COUNT XVII**

### **(Negligence Against Defendant Dart)**

218. Plaintiffs reallege and incorporate by reference Paragraphs 1 to 217 as if alleged herein.

**ANSWER:** Defendants re-answer paragraphs 1-217 as though fully set forth herein.

219.    Defendant Dart has stated that he operates the CCJ in a manner designed to "meet and exceed the standards of the American Correctional Association and the Illinois Department of Corrections Jail and Detention Standards Unit, and the John Howard Association."

**ANSWER:**    Defendants deny the allegations in this paragraph.


220.    Accordingly, Defendant Dart has voluntarily assumed a duty to Plaintiffs and the class to "meet and exceed the standards of the American Correctional Association and the Illinois Department of Corrections Jail and Detention Standards Unit, and the John Howard Association."

**ANSWER:**    Defendants deny the allegations in this paragraph.


221.    Defendant Dart's policies, practices, customs, acts and omissions alleged above fail to meet those standards and have breached Defendant's duty to Plaintiffs and the class.

**ANSWER:**    Defendants deny the allegations in this paragraph.


222.    As a proximate result of Defendant Dart's breaches of his duty to Plaintiffs and the class, Plaintiffs and the class have suffered physical, mental, and emotional damage and injury.

**ANSWER:**    Defendants deny the allegations in this paragraph.

## COUNT XVIII

**(Violation of First Amendment And Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Retaliation For Exercising Rights In Bringing This Lawsuit Against Defendants Jackson, Manos, Snooks, Dart, and Cook County For Declaratory And Injunctive Relief)**

223.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 222 as if alleged herein.

**ANSWER:**    Defendants re-answer paragraphs 1-222 as though fully set forth herein.

224.    Prisoners are entitled to avail themselves of the grievance process without fear of recrimination.

**ANSWER:**    Defendants deny the allegations in this paragraph.

225.    As alleged more fully above, upon information and belief,  Defendants retaliated against  Plaintiffs because  Plaintiffs filed this lawsuit and asserted internal grievances against Defendants within the CCJ.

**ANSWER:**    Defendants deny the allegations in this paragraph.

226.    Upon information and belief, on or about December 4, 2008, Plaintiff Thomas Perconti was assaulted by two inmates at CCJ; and this assault was motivated by the comments of  Defendant Jackson, who encouraged said inmates to wage this attack against Plaintiff Perconti in retaliation for the complaints he made against  Defendant Jackson.

**ANSWER:**    Defendants deny the allegations in this paragraph.

227.    On or about November 28, 2008, Defendant Sergeant Manos threatened Plaintiff Hill and made repeated derogatory remarks about Plaintiff Hill and Plaintiff Hill's deceased

83

mother.  Upon information and belief, these threats and derogatory remarks were made as a result of Plaintiff Hill filing this lawsuit, and for exercising his right to the internal grievance process within CCJ.

**ANSWER:**    Defendants deny the allegations in this paragraph.


228.    On or about December 1, 2008, Defendant Superintendent Snooks came to Tier-2 C of the CCJ, which is where Plaintiff Rogers is housed, and threatened the tier.  Upon information and belief, this outburst was motivated, at least in part, by Plaintiff Rogers filing this lawsuit.

**ANSWER:**    Defendants deny the allegations in this paragraph.


229.    On or about December 8, 2008, Defendant Superintendent Snooks threatened Plaintiff Haynes that he better "stop filing grievances" or he would lock down the entire tier in retaliation.  Defendant Snooks further threatened that if Plaintiff Haynes did not stop filing grievances he would make sure that Plaintiff Haynes did not receive his medicine.

**ANSWER:**    Defendants deny the allegations in this paragraph.


230.    Defendant Jackson also retaliated against Plaintiff Hill as alleged above by ending his involvement in the psych program and having him moved to a general population tier.

**ANSWER:**    Defendants deny the allegations in this paragraph.


231.    As a result of the conduct described above,  Plaintiffs have suffered physical, mental, and emotional injury, and are also in fear for their personal safety and well-being.

**ANSWER:**    Defendants deny the allegations in this paragraph.

232.     The retaliatory conduct discussed above violates  Plaintiffs' First Amendment and Fourteenth Amendment Rights.

**ANSWER:**     Defendants deny the allegations in this paragraph.


233.     Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein.  The injunctive relief sought by  Plaintiffs is necessary to prevent further injury.

**ANSWER:**     Defendants deny the allegations in this paragraph.


## COUNT XIX

**(Violation Of First And Fourteenth Amendment Rights Under 42 U.S.C. § 1983 Based Upon Retaliation For Exercising Rights In Bringing This Lawsuit Against Defendants Jackson, Manos, Snooks, Dart, and Cook County For Compensatory And Punitive Damages)**

234.     Plaintiffs reallege and incorporate by reference Paragraphs 1 to 233 as if alleged herein.

**ANSWER:**     Defendants re-answer paragraphs 1-233 as though fully set forth herein.


235.     Based upon the above allegations, including those alleged in Count XVIII, compensatory damages are necessary in order to compensate  Plaintiffs for the injuries and damages they have already suffered, and punitive damages are necessary to serve as a deterrent for similar wrongdoing.

**ANSWER:**     Defendants deny the allegations in this paragraph.

## COUNT XX

**(Violation of Article I, Sections 4 And 5 Of The Illinois Constitution Based Upon Retaliation For Exercising Rights In Bringing This Lawsuit Against Defendants Jackson, Manos, Snooks, Dart, and Cook County)**

236.    Plaintiffs reallege and incorporate by reference Paragraphs 1 to 235 as if alleged herein.

**ANSWER:**    Defendants re-answer paragraphs 1-235 as though fully set forth herein.

237.    Each  Defendant is being sued for this claim based upon acts he or she personally performed.

**ANSWER:**    Defendants deny the allegations in this paragraph.

238.    Upon information and belief, each  Defendant committed the acts explained above, including those alleged in Count XIX, to retaliate against  Plaintiffs for filing this lawsuit and/or filing internal grievances within the CCJ.

**ANSWER:**    Defendants deny the allegations in this paragraph.

239.    Defendants' retaliatory conduct has caused each and every  Plaintiff to suffer emotional, physical, and mental injury.

**ANSWER:**    Defendants deny the allegations in this paragraph.

240.    Defendants have violated  Plaintiffs' due process rights under Article I, Section 2 of the Illinois Constitution and free speech rights under Article I, Section 4 of the Illinois Constitution.   Plaintiffs have no plain, adequate or complete remedy at law to address the

wrongs described herein, The injunctive relief sought by Plaintiffs is necessary to prevent further injury.

**ANSWER:**    Defendants deny the allegations in this paragraph.

### AFFIRMATIVE DEFENSES

1.    The Defendants' conduct was at all times objectively reasonable and did not violate any of Plaintiff's clearly established Constitutional rights. Accordingly, the Defendants are entitled to the defense of Qualified Immunity.

2.    The Defendants assert that they are local public entities as defined by the Local Governmental and Governmental Employee's Tort Immunity Act, hereinafter the Tort Immunity Act, 745 ILCS 10/1-101 et. seq., (1995 as amended) and as such can avail themselves of any and all immunities and defenses provided for therein.

3.    Defendants, Thomas Dart, Salvador Godinez, Michael Figliulo, Thomas Snooks, Chester Plaxico, John Mueller, David Fagus, John Manos, Victor Thomas, and America Velez assert that each is a Public Employee as defined by Local Governmental and Governmental Employee's Tort Immunity Act, hereinafter the Tort Immunity Act, 745 ILCS 10/1-101 et. seq., (1995 as amended) and as such can avail themselves of any and all immunities and defenses provided for therein.

4.    The Plaintiffs have failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a).

5.    Under the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(e) plaintiffs may not recover damages where their claims are for psychological or emotional damages alone with no physical harm alleged or proved because no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

87

6.      Plaintiffs failed to mitigate any and all of their alleged damages.

7.      Claims for equitable relief in Counts I, III, V, VII, IX, X, XI, XII, XIII, XV, XVI, XVIII, and XX are barred by the *Duran* Consent Decree.

8.      Claims for equitable relief in Counts I, III, VII, IX, X, XII, and XIII are barred by the *Harrington* Consent Decree.

9.      Entities such as Cook County are not liable to pay punitive damages.

10.     Entities such as Cook County are entitled to legislative immunity.

## JURY DEMAND

The Defendants demand trial by jury.


WHEREFORE, based upon the foregoing, Defendants Thomas Dart, Sheriff of Cook County, Salvador Godinez, Michael Figliulo, Chester Plaxico, John Mueller, David Fagus, John Manos, Victor Thomas, Thomas Snooks, America Velez and Cook County request that this Honorable Court grant judgment in Defendant's favor and against Plaintiffs on all aspects of their Third Amended Class Action Complaint.  Defendants further request that this Honorable Court grant them fees, costs, and such other relief that this Court deems just and appropriate.

                              Respectfully Submitted,

                              ANITA ALVAREZ
                              State's Attorney of Cook County


By:      *s/Kevin Frey* _____
                              Kevin Frey
                              Assistant State's Attorney
                              Torts/Civil Rights Litigation Section
                              500 Richard J. Daley Center
                              Chicago, IL 60602
                              (312) 603-6189