IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERRICK HAYNES, THOMAS M. PERCONTI, CHARLES B. HILL, and FRED ROGERS, on behalf of themselves and a class of others similarly situated, ) ) ) ) ) | Civil Action No.: 08 C 4834 |
| Plaintiffs, ) | Suzanne B. Conlon, Judge |
| v. ) | |
| THOMAS DART, *et al.*, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Derrick Haynes, Thomas M. Perconti, Charles B. Hill, and Fred Rogers (collectively "plaintiffs") are mentally ill pre-trial detainees at the Cook County Jail who allegedly have been deprived of mental health treatment, humane confinement conditions, adequate grievance procedures, and access to the courts. In a purported class action, they sue Cook County, Cook County Sheriff Thomas Dart, and ten individuals employed by or affiliated with the Cook County Jail, a department within the Sheriff's Office (collectively "defendants"). Plaintiffs move for sanctions on the ground that defendants' failure to issue a timely litigation hold resulted in the destruction of relevant documents.[1] To remedy this alleged spoliation, plaintiffs seek leave to conduct twelve additional depositions, while reserving the right to pursue further sanctions once

---

[1] Plaintiffs' allegation of spoliation is directed at defendants affiliated with the Cook County Sheriff's Office. Defendant Cook County is not responsible for the practices, policies, or actions of the Cook County Sheriff. *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989). Nevertheless, the court refers to defendants collectively for ease of reference.

their investigation is completed. Defendants would bear the cost of the investigation, including attorneys' fees. For the reasons set forth below, the motion for sanctions is denied.

## I.     BACKGROUND

Until May 2008, plaintiffs were housed in the residential treatment unit ("RTU") of the Cook County Jail ("the jail"). RTU was a dormitory-type facility for detainees with varying degrees of mental health problems. In May 2008, over the objections of mental health specialists working in RTU, defendants closed the unit and began assigning mentally ill detainees to housing divisions based upon their security classification, without regard to their mental health status. As a result, plaintiffs were allegedly deprived of mental health treatment and subjected to the oversight of correctional officers who were unable or unwilling to provide the necessary care.

In August 2008, plaintiffs filed this putative class action claiming that defendants are depriving them of necessary mental health treatment, housing them in unsafe and unsanitary conditions, and obstructing their ability to file grievances and obtain redress from the courts. The complaint has been amended several times and presently consists of twenty claims, including violations of 42 U.S.C. § 1983, the Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*), the Rehabilitation Act (29 U.S.C. § 794), and the Illinois Constitution.[2] They also assert a state law negligence claim against defendant Dart.

A brief review of the discovery history is helpful to provide a context for plaintiffs' present motion. On January 14, 2009, the court issued a scheduling order including a

---

[2] On December 21, 2009, plaintiffs moved for leave to file a fourth amended complaint for the purpose of adding a new defendant. Dkt. 172. The motion is pending.

September 30, 2009 discovery cutoff and a November 2009 trial date. Dkt. 66. Plaintiffs served their first set of written discovery requests on defendants on February 13, 2009. Pl. Mot. at 3. On February 27, 2009, plaintiffs provided defendants their initial Rule 26(a)(1) disclosures, including the names of eighty-nine persons likely to have discoverable information. *Id.* Among those listed was Michael Miller, superintendent of the jail division housing the named plaintiffs. Pl. Mot. Ex. B ¶ 22. Miller is not a defendant; plaintiffs identified him as a person who may have information regarding the conditions of confinement and detainees' mental health treatment. *Id.*

On June 5, 2009, the parties jointly moved to extend all case management dates six months. Dkt. 115. The court partially granted the motion, extending the discovery cutoff until November 30, 2009 and resetting the trial in February 2010. Dkt.119. The parties were advised that no further extensions would be granted except on a showing of good cause. *Id.* The court subsequently denied plaintiffs' motion for class certification without prejudice. *See* July 29, 2009 Order, Dkt. 130. In light of the class certification denial, the court partially granted the parties' second joint motion for an extension, delaying the discovery cutoff three more months and setting the case for trial in May 2010. Dkt. 140. The court advised the parties this would be the final extension. *Id.* Two months later, plaintiffs filed this motion for sanctions and requested another six-month extension of discovery. Dkt. 152. The court denied the extension request, but directed defendants to respond to the sanctions motion. Dkt. 156.

3

### A. Miller's Deposition

Plaintiffs deposed Miller on October 29, 2009. During the deposition, Miller testified he took personal notes during a meeting with his predecessor, defendant Thomas Snooks, and during weekly meetings with other jail administrators. Pl. Ex. C. at 55-57, 77-78. Miller stated that he did not keep these notes, and that he was not told of any obligation to retain documents relevant to the case. *Id.* at 56-57, 77-78. These revelations are the basis for plaintiffs' motion for sanctions.

In January 2009, six months after plaintiffs brought this suit, Miller became superintendent of the jail division housing the named plaintiffs. *Id.* at 16. He is not alleged to have engaged in any wrongdoing underlying plaintiffs' claims. By plaintiffs' own admission, Miller was deposed "because of the potential that he had implemented new policies or procedures that were correcting some of the problem conditions complained of by [p]laintiffs." Pl. Motion at 3. Miller's testimony, however, indicates he did not alter the division's policies, practices, or operations during his tenure. Pl. Ex. C. at 52-55. Miller acknowledged that he met with Snooks in January 2009 to discuss the division's operations and that he "may have taken some notes" during the meeting. *Id.* at 56. When asked if he kept those notes, Miller responded, "No." *Id.* at 57. Miller stated he was never advised to retain any documents relating to this case. *Id.* During Miller's tenure as superintendent, he also took personal notes during weekly meetings with other superintendents and jail administrators. *Id.* at 69-79. The purpose of the weekly preaccountability and accountability

meetings was to discuss issues that arose in the jail the previous week and possible responses.[3] *Id.* at 75, 101-04. Miller did not retain his personal notes, nor was he made aware of any obligation to do so. *Id.* at 110.

## II. LEGAL STANDARD

A district court has discretion to determine the scope of discovery and to resolve discovery disputes. *Giles v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996). The court may sanction a party for spoliation of evidence under either its inherent authority or under Federal Rule of Civil Procedure 37. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991). Sanctions under Rule 37 are limited to circumstances in which a party violates a court order or discovery ruling. *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994). The court's inherent authority, on the other hand, stems from its power to manage and ensure the expeditious resolution of cases on its docket and is not limited to violations of discovery orders. *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993). Plaintiffs do not allege that defendants violated a prior order or discovery ruling. Accordingly, the court considers the motion for sanctions under its inherent authority, though the analysis is essentially the same. *Danis v. USN Communications, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *30 (N.D. Ill. Oct. 23, 2000) (Schenkier, M.J.).

While the court has broad discretion to fashion an appropriate sanction, it must be proportionate to the circumstances surrounding a failure to comply with discovery. *Nat'l*

---

[3] Accountability meetings are attended by 25-30 persons, including the sheriff, his executive staff, and the jail superintendents. Pl. Ex. C. at 92. Preaccountability meetings are held the day prior and attended by the jail superintendents, executive director, assistant director, and a health services representative. *Id.* at 70.

*Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976); *Barnhill*, 11 F.3d at 1367. Because plaintiffs seek a sanction in the form of further discovery (as opposed to a default judgment), they must show by a preponderance of the evidence that a sanction is warranted. *Wells v. Berger, Newmark & Fenchel, P.C.*, No. 07 C 3061, 2008 WL 4365972, at *6 (N.D. Ill. Mar. 18, 2008) (Conlon, J.); *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *9 (N.D. Ill. Aug. 18, 2005) (Denlow, M.J.). Generally, the court's decision to impose sanctions for a failure to preserve documents is guided by the level of culpability for the breach, resulting prejudice, and the ability to ameliorate any prejudice. *Wells*, 2008 WL 4365972, at *6; *Larson*, 2005 WL 4652509, at *10; *Danis*, 2000 WL 1694325, at *31.

## III. DISCUSSION

Plaintiffs argue that the failure to preserve Miller's notes – a result of defendants' failure to issue a timely litigation hold – justifies the requested sanctions. Specifically, plaintiffs seek leave to take twelve additional depositions to investigate the extent of spoliation, with the costs to be borne by defendants. The names of the twelve persons are not disclosed because plaintiffs contend the witnesses will be identified as the investigation unfolds, so that prospective witnesses cannot "anticipate their depositions too far in advance." Pl. Motion at 10-11. Having reviewed the record and the parties' arguments, the court finds the circumstances do not warrant plaintiffs' extraordinary request for sanctions.

The duty to preserve potentially discoverable information does not require a party to retain every scrap of paper in its possession. *Danis*, 2000 WL 1694325, at *32 (citing 7 James Wm. Moore *et al.*, *Moore's Federal Practice* § 37.120 (3d ed. 1999)). But a party must preserve evidence it knows, or should know, is material to a potential legal action. *China*

6

*Ocean Shipping (Group) Co. v. Simone Metals Inc.*, No. 97 C 2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999) (Holderman, J.). The materiality of Miller's notes is entirely speculative; plaintiffs' counsel never questioned Miller about the content of his notes.

Plaintiffs make much of the fact that defendants did not issue a formal litigation hold at the onset of this case. Defendants concede that a litigation hold was not put in place until November 2009, shortly after Miller's deposition. Even so, defendants contend they have actively taken steps to retain and disclose relevant documents throughout the pendency of this case. The steps a party must take to satisfy its obligation to preserve evidence may vary from case to case. *Danis*, 2000 WL 1694325, at *39. The failure to institute a document retention policy, in the form of a litigation hold, is relevant to the court's consideration, but it is not *per se* evidence of sanctionable conduct. *Id.* The court is mindful that this case "is one of approximately 800 lawsuits now pending against the [Cook County] Sheriff's Office," and that the establishment of a formal litigation hold in each case could cause an undue burden. Def. Resp. at 8. Given the breadth of plaintiffs' claims and discovery requests, the court cannot conclude that the absence of a large-scale litigation hold was objectively unreasonable. *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (fault for discovery violation rests on the reasonableness of the party's actions). The court does not excuse defendants' failure to instruct Miller to retain relevant documents – an obligation that arose no later than February 27, 2009 (the date of plaintiffs' Rule 26(a)(1) disclosures). But plaintiffs do not provide a sufficient reason to conclude that defendants failed to comply with their discovery obligations. There is no evidence that relevant documents were destroyed pursuant to a routine destruction policy that defendants failed to curb. At issue here are personal notes

that Miller *may* have jotted down during meetings, and that *may* relate to allegations in plaintiffs' broad complaint. Pl. Ex. C. at 55-56, 78. The court is not persuaded that plaintiffs were deprived of discovery necessary to prosecute their case. Defendants have responded to plaintiffs' written discovery requests, and have produced over 10,000 pages of documents to date. Def. Resp. at 8; *see also* Second Joint Motion to Extend All Case Management Dates, Dkt. 134 at ¶ 8.

Furthermore, plaintiffs do not demonstrate any substantive prejudice from a failure to preserve Miller's notes. Plaintiffs' admitted reason for deposing Miller was to determine whether he "implemented new policies or procedures that were correcting some of the problem conditions" that existed during the tenure of his predecessor, defendant Snooks. Pl. Mot. at 3. But Miller's testimony shows he made no changes to relevant operating policies or procedures while he was superintendent. Pl. Ex. C. at 52-55. Miller was able to answer counsel's pointed questions about the substance of his transition meeting with Snooks. *Id.* at 57-63. Plaintiffs do not present the court with any reason to infer that defendants' failure to preserve Miller's notes caused the loss of responsive documents material to plaintiffs' case. The same is true with respect to notes Miller may have taken during the weekly preaccountability and accountability meetings. Miller testified that he retains copies of written agendas, presentations, and handouts circulated at these meetings. *Id.* at 77-80, 86-87, 104-05, 109-11. He also stated that secretaries from the sheriff's executive staff are present at accountability meetings and that they take handwritten notes. *Id.* at 93-95. There is no evidence the secretarial notes were destroyed, and plaintiffs do not explain why their notes would be insufficient.

Under the circumstances, the court is unpersuaded that plaintiffs' proposed expansion of the scope of discovery is justified. Plaintiffs' motion for sanctions appears to be a thinly-veiled attempt to extend the discovery deadlines previously set and significantly extended twice by this court and to obtain at least twelve more depositions, in addition to the *fifty-five* depositions already conducted or planned. Pl. Mot. at 13. Plaintiffs' third motion for an extension of time was denied. Dkt. 156. Because plaintiffs fail to demonstrate that their request for extensive collateral discovery is appropriate or warranted, their motion for sanctions is denied.

ENTER:

*(signed)* Suzanne B. Conlon

January 11, 2010

Suzanne B. Conlon
United States District Judge